<table>
<tr><td colspan="2">

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

Donald W. Clarke
Leah M. Eisenberg
David E. Sklar
Katherine R. Beilin
**PASHMAN STEIN WALDER HAYDEN, P.C.**
21 Main Street, Suite 200
Hackensack, New Jersey 07601
Telephone: (201) 488-8200
Email:  dclarke@pashmanstein.com
   leisenberg@pashmanstein.com
   dsklar@pashmanstein.com
   kbeilin@pashmanstein.com

*Withdrawing Counsel to the Debtor*

</td></tr>
<tr><td>

In Re:

MICHAEL A. SHABSELS,

     Debtor.

</td><td>

Chapter 11

Case Number: 26-16529 (CMG)

</td></tr>
</table>

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF PASHMAN STEIN WALDER HAYDEN, P.C. TO WITHDRAW AS COUNSEL TO THE DEBTOR

Pashman Stein Walder Hayden, P.C. ("Pashman") hereby moves (the "Motion") to withdraw as counsel to Michael A. Shabsels, the above-captioned debtor (the "Debtor"), under D.N.J. LBR ("Local Rule") 9010-2.  In support of its motion to withdraw as counsel to the Debtor (the "Motion"), Pashman relies on the certification of Donald W. Clarke and its related exhibit (the "Clarke Cert.") and respectfully represents the following:

### JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b) and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered on July 23, 1984, and amended on June 6, 2025 (Bumb, C.J.) (the "Standing Order").

2.     This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Debtor consents to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.     Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.     The statutory and legal predicates for the relief requested herein are section 105(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), Local Rule 9010-2, and N.J. R. Prof. Conduct 1.7 and 1.16(b)(1) & (7).

## BACKGROUND

5.     On June 4, 2026 (the "Petition Date"), the Debtor commenced the above-captioned case (this "Chapter 11 Case") by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in this Court [ECF No. 1]. No official committee has been appointed in this Chapter 11 Case.

6.     Concurrent with the filing of this Chapter 11 Case, the Debtor's brother, David A. Shabsels (the "Debtor's Brother", collectively with the Debtor, the "Shabsels"), filed his own voluntary petition for relief under Chapter 11 of the Bankruptcy Code in this Court (together with this Chapter 11 Case, the "Shabsels' Cases"). *See In re David A. Shabsels*, Case No. 26-16530 (CMG) (Bankr. D.N.J. Jun. 4, 2026).

7.     Pashman was first contacted about the Shabsels on the evening of June 1, 2026, by the firm Otterbourg, PC ("Otterbourg"). Pashman was asked to serve as co-counsel and local counsel in a concurrent representation of the Debtor and the Debtor's Brother in their respective chapter 11 bankruptcy cases. *See Clarke Cert., ¶ 3.*

8.      On June 3, 2026, after an initial conflict check using a list of known parties to affiliated corporate entities (the "Affiliated Entities' Conflict Party List"), Pashman engaged in discussions with Otterbourg, who was communicating with the Shabsels about the terms of Pashman's engagement. It was understood that Otterbourg was in contact with the Debtor, and the law firm of Cole Schotz, PC. for the purpose of gathering the best diligence available to generate the Debtor's and the Debtor's Brother's top 20 creditors lists, and the Affiliated Entities Conflict Party List which Cole Schotz was filing immediately preceding the Debtor's and the Debtor's Brother's respective petitions. *See Clarke Cert., ¶ 4.*

9.      On June 4, 2026, Pashman was retained under separate retainer agreements by the Debtor and the Debtor's Brother and received a wire from the Debtor in the amount of $28,475.00, which comprised the retainer and filing fees for each petition. *See Clarke Cert., ¶ 5.*

10.     On the evening of June 4th (the "Petition Date"), Otterbourg forwarded the executed petitions for the Debtor and the Debtor's Brother. Pashman filed same once confirmation was received that Cole Schotz completed the corporate filings. *See Clarke Cert., ¶ 6.*

11.     On June 15, 2026, Otterbourg wired to Pashman $105, 966.76 with a memorandum note stating same was for "David Shabel's Petition." *See Clarke Cert., ¶ 7.*

12.     Immediately after the Petition Date, a press report was published making various allegations relating to funds borrowed by the entities. The nature of the allegations raised a question about whether a concurrent representation of the Shabsels in the Shabsels' Cases was permissible. In an abundance of caution, the Shabsels were instructed that they would need separate counsels. Otterbourg withdrew as counsel for the Shabsels. Pashman was told that the Shabsels agreed that the Debtor's Brother would continue to be represented by Pashman and that the Debtor would retain new counsel. *See Clarke Cert., ¶ 8.*

13. Before it was recognized that joint representation would not be the most prudent course of action, Pashman received no privileged information from nor gave privileged advice to either the Shabsels concerning the allegations made public in the press, or the facts and circumstances that might support claims between or amongst the Brothers. Immediately after advising the Shabsels that they could not both be represented by Pashman, the Shabsels confirmed that the Debtor would seek new counsel and that the Debtor's Brother would continue to be represented by Pashman. From that point forward, Pashman committed to only communicating with the Debtor through his new attorney after receiving a conflict waiver from the Shabsels. *See Clarke Cert., ¶ 9.*

14. The Shabsels each executed conflict waivers giving their informed consent to Pashman's continued representation of both individuals pending Pashman's withdrawal. *See Clarke Cert., ¶ 10 with its related exhibit.*

15. Prior to the filing of this Chapter 11 Case, the work performed by Pashman on behalf of the Debtor was limited to and comprised exclusively of filing the voluntary petition and general bankruptcy obligations. *See Clarke Cert., ¶ 11.*

16. Since the commencement of this Chapter 11 Case and following the Debtor's direction that he will  retain separate counsel, Pashman has not taken any actions on the Debtor's behalf. Upon information and belief, the Debtor is still searching for alternate counsel. *See Clarke Cert., ¶ 12.*

## BASIS FOR RELIEF REQUESTED

17. Pursuant to Local Rule 9010-2(b), "[a] motion is required to withdraw as counsel unless another attorney is substituted." *D.N.J. LBR 9010-2(b)*.

4

18.     In *In re Albert*, a bankruptcy court in the Southern District of New York found that "when a matter is pending before a tribunal from which the attorney intends to withdraw representation, the attorney intends to withdraw the representation, the attorney must "comply with the rules of the tribunal regarding withdrawal," and receive the tribunal's permission before withdrawing." *In re Albert*, 277 B.R. 38, 47 (Bankr. S.D.N.Y. 2002).

19.     N.J. R. Prof. Conduct 1.16(b)(1) and (7) provide that "(b) Except as stated in paragraph (c), a lawyer may withdraw from representing a client if: (1) withdrawal can be accomplished without material adverse effect on the interest of the client…or (7) other good cause for withdrawal exists." *N.J. R. Prof. Conduct 1.16(b)(1) and (7)*.

20.     N.J. R. Prof. Conduct 1.7 provides that

**(a)** Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

> (1) the representation of one client will be directly adverse to another client; or
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer.

**(b)** Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

> (1) each affected client gives informed consent, confirmed in writing, after full disclosure and consultation, provided, however, that a public entity cannot consent to any such representation. When the lawyer represents multiple clients in a single matter, the consultation shall include an explanation of the common representation and the advantages and risks involved;
> (2) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
> (3) the representation is not prohibited by law; and
> (4) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal.

*N.J. R. Prof. Conduct 1.7.*

21.     Pashman was first contacted regarding the filing of the Shabsels' Cases to be co-counsel to the Debtor and local counsel to Otterbourg three days before the Petition Date. *See Clarke Cert., ¶¶ 3 & 6.*

22.     In the time leading to the Petition Date, Otterbourg was in contact with the Debtor, the Debtor's brother, and Cole Schotz, PC. for the purpose of gathering the best diligence available to generate the Debor's and the Debtor's Brother's top 20 creditors lists, and the list of the Affiliated Entities Conflict Party List which Cole Schotz was filing immediately preceding the Shabsels' respective petitions. *See Clarke Cert., ¶ 4.*

23.     Pashman was only retained by the Debtor on the Petition Date and Pashman filed the executed petitions on behalf of the Shabsels upon receiving them from Otterbourg. *See Clarke Cert., ¶ ¶ 5 & 6.*

24.     As soon as Pashman became aware of the press report and the potential conflict that may arise from the concurrent representation of the Shabsels, Pashman acted diligently to address the issue with the Shabsels and informed the Shabsels that they would need to retain separate counsels. *See Clarke Cert., ¶ 8.*

25.     The Shabsels made the decision that Pashman would continue to represent the Debtor and the Shabsels executed appropriate conflict waivers with adequate disclosure. *See Clarke Cert., ¶ ¶ 9 & 10.*

*26.*     Based on the early nature of the Chapter 11 Case and that the Debtor will not be materially prejudiced by Pashman's withdrawal from the Chapter 11 Case, Pashman's withdrawal as counsel to the Debtor is appropriate under N.J. R. Prof. Conduct 1.16(b)(1) and (7). *See N.J. R. Prof. Conduct 1.16(b)(1) and (7)*; *In re Albert*, 277 B.R. at 47.

6

27.     Furthermore, given Pashman's limited involvement in representing the Debtor, that at present there is no actual conflict in the concurrent representations of the Shabsels, and that the Shabsels have each individually fully informed conflict waivers, Pashman's withdrawal as counsel is appropriately limited to Pashman's representation of the Debtor and Pashman can continue to represent the Debtor's Brother in his chapter 11 bankruptcy proceeding. *See N.J. R. Prof. Conduct 1.7.*

## CONCLUSION

WHEREFORE, Pashman respectfully requests the Court enter an order approving Pashman's withdrawal as counsel to the Debtor.

Dated: June 18, 2026

**PASHMAN STEIN WALDER HAYDEN, P.C.**

*/s/ Donald W. Clarke*
Donald W. Clarke
Leah M. Eisenberg
David E. Sklar
Katherine R. Beilin
21 Main Street, Suite 200
Hackensack, New Jersey 07601
Telephone: (201) 488-8200
Email:  dclarke@pashmanstein.com
        leisenberg@pashmanstein.com
        dsklar@pashmanstein.com
        kbeilin@pashmanstein.com

*Withdrawing Counsel to the Debtor*