SHAPIRO CROLAND REISER APFEL & DI IORIO, LLP
Glenn R. Reiser (Attorney Id. 021481990)
411 Hackensack Avenue
Hackensack, NJ 07601
Phone: (201) 488-3900
Email: greiser@shapirocroland.com

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Case No.: 26–16529 (CMG) |
| MICHAEL AARON SHABSELS, | Chapter 11 |
| Debtor. | Honorable Christine M. Gravelle |
| ___/ | |
| CASHERA PRIVATE CREDIT, INC., a Utah corporation, and FUNDERS APP, LLC dba FUNDERS WEST, a Utah limited liability company, | |
| Plaintiffs. | |
| v. | Adv. Proc. No. |
| MICHAEL AARON SHABSELS, | |
| Defendant. | |
| ___/ | |

**ADVERSARY COMPLAINT TO DETERMINE**
**DISCHARGEABILITY OF DEBTS**

Plaintiffs, Cashera Private Credit, Inc. ("Cashera") and Funders App, LLC dba Funders West ("Funders") (together, "Plaintiffs"), sue Michael Aaron Shabsels (the "Debtor") as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. On June 4, 2026 (the “Petition Date”), the Debtor filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy

Code") in the United States Bankruptcy Court for the District of New Jersey (the "Court"), thereby initiating the above-captioned bankruptcy case.

2. Cashera is a Utah corporation.

3. Funders is a Utah limited liability company.

4. Plaintiffs are each a creditor of the Debtor within the meaning of 11 U.S.C. § 101(10).

5. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b). The is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

6. Venue is proper pursuant to 28 U.S.C. § 1409 because the bankruptcy case of the Debtor is pending in this district.

7. All conditions precedent to this action have been performed, have occurred or have been waived.

**GENERAL ALLEGATIONS**

**The Cashera Agreement**

8. In or around April 2026 the Debtor and his brother, David Arthur Shabsels (together, the "Shabsels"), engaged in discussions with Plaintiffs regarding the potential issuance of loans for an insider entity, Island Lake Compo, LLC dba Island Lake Campco ("Island Lake").

9. Plaintiffs engaged in due diligence regarding the potential loans. This due diligence included, without limitation, reviewing bank records and public filings regarding Island Lake.

10. Less than 60 days prior to the Petition ate, on or about April 7, 2026, Cashera and Island Lake entered into a business loan and security agreement (the "Cashera Agreement"). Debtor and his brother David Arthur Shabsels

11. A true and correct redacted copy of the Cashera Agreement is attached hereto as **EXHIBIT "A"** and is incorporated herein.

12. The Cashera Agreement provides for Cashera to issue a loan in the principal amount of $2 million to Island Lake, to be repaid (with interest) in 32 monthly payments of $93,687.50 each.

13. The Shabsels are each named guarantors under the Cashera Agreement and executed the Agreement.

14. A number of other entities owned and controlled by the Shabsels are also named as guarantors under the Cashera Agreement and executed the Cashera Agreement (together, the "Shabsel Entities").

15. Section 18 of the Cashera Agreement states in relevant part:

> …neither Borrower [Island Lake] nor Guarantor [the Shabsels and Shabsel Entities] intends to file, nor has any notice or reason to believe that another Person intends to file against Borrower or Guarantor, for reorganization or liquidation under the bankruptcy or reorganization laws of any jurisdiction within six (6) months after the date hereof, and Borrower and Guarantor shall notify Lender in writing (a) at least ten (10) days before filing for such reorganization or liquidation or (b) immediately if another Person has filed for such reorganization or liquidation against Borrower or Guarantor; and…neither Borrower nor Guarantor is presently, nor has any reasonable expectation that it will become, insolvent or bankrupt within the meaning of, as applicable, the UCC as well as the Bankruptcy Code…

16. Following execution of the Cashera Agreement, Plaintiff funded the net loan amount, $1.96 million, to Island Lake.

**The Funders Agreement**

17. On or about May 26, 2026, Funders and Island Lake entered into a business loan and security agreement (the "Funders Agreement").

18. A true and correct redacted copy of the Funders Agreement is attached hereto as **EXHIBIT "B"** and is incorporated herein.

19. The Funders Agreement provides for Funders to issue a loan in the principal amount of $4.5 million to Island Lake, to be repaid (with interest) in eight monthly payments of $843,750.00 each.

20. The Shabsels are each named guarantors under the Funders Agreement and executed the Funders Agreement.

21. A number of other entities owned and controlled by the Shabsels are also named as guarantors under the Funders Agreement and executed the Funders Agreement (together, the "Shabsel Entities").

22. Section 18 of the Funders Agreement states in relevant part:

> …neither Borrower [Island Lake] nor Guarantor [the Shabsels and Shabsel Entities] intends to file, nor has any notice or reason to believe that another Person intends to file against Borrower or Guarantor, for reorganization or liquidation under the bankruptcy or reorganization laws of any jurisdiction within six (6) months after the date hereof, and Borrower and Guarantor shall notify Lender in writing (a) at least ten (10) days before filing for such reorganization or liquidation or (b) immediately if another Person has filed for such reorganization or liquidation against Borrower or Guarantor; and…neither Borrower nor Guarantor is presently, nor has any reasonable expectation that it will become, insolvent or bankrupt within the meaning of, as applicable, the UCC as well as the Bankruptcy Code…

23. Following execution of the Funders Agreement, Plaintiff funded the net loan amount, $4.41 million, to Island Lake.

**Insolvency and Bankruptcy Filings**

24. Notwithstanding the representations of the Shabsels, the Debtor filed for bankruptcy weeks after the Cashera Agreement and Funders Agreement (together, the "Agreements") were executed.

25. The Debtor has not yet filed schedules in his bankruptcy case. Upon information and belief, at such time the Debtor does file schedules, the schedules will demonstrate that he was hopelessly insolvent at all relevant times, including from April 2026 forwards.

26. The Debtor's brother, David Arthur Shabsels, also filed for a voluntary Chapter 11 bankruptcy petition in this Court on June 4, 2026, initiating Case No. 26–16530–CMG.

27. Upon information and belief, the Debtor's brother, David Arthur Shabsels, was also hopelessly insolvent at all relevant times, including from April 2026 forwards.

28. Various Shabsels-controlled entities, including Simad Holdings, LLC (collectively the Shabsel Entities"), also filed Chapter 11 bankruptcy cases in this Court on or about June 4, 2026. The foregoing cases are jointly administered under *In re Simad Holdings, LLC*, Lead Case No. 26–16388–CMG (together, the "SIMAD Cases").

29. Upon information and belief, the Shabsel Entities were each hopelessly insolvent at all relevant times, including from April 2026 forwards.

30. For example, the declaration of the Chief Restructuring Officer in the SIMAD Cases, Assad Ravid, states that the Debtor and Shabsel Entities owed certain Israeli certificates of indebtedness in the approximate amount of $211.6 million, which were secured by collateral, at that the Shabsel Entities defaulted in making the first interest payment due on May 31, 2026. Dkt. No. 7-1 in Case No. 26–16388–CMG. Thus, the Debtor and Shabsel Entities defaulted on over $211 million in debt on May 31, 2026, just weeks after executing the Agreements with Plaintiffs.

31. The representations made by the Debtor in § 19 of the Agreements were false. The Shabsels and Shabel Entities were each insolvent and contemplating filing for bankruptcy as of April and May 2026.

32. Indeed, the retainer letter for Cole Schotz, general bankruptcy counsel for the Shabsel Entities in the SIMAD Cases, is dated May 28, 2026—two days after the Funders Agreement. Dkt. No. 308 in Case No. 26–16388–CMG. It is impossible for the Debtor to have reasonably believed that he, his brother and the Shabsel Entities did not intend to file for bankruptcy as of May 26, 2026, when the Shabsel Entities engagement agreement with bankruptcy counsel is dated two days later.

33. The Debtors executed the Agreements without having any intent to repay Plaintiffs, either through Island Lake or otherwise.

34. The Agreements are each in default, and the Plaintiffs cannot collect on the amounts owing because, upon information and belief, all borrowers and guarantors thereunder have filed for bankruptcy.

35. Schedules listing the amounts owing under the Agreements as of the Petition Date are attached as **EXHIBIT "C"**.

**Count 1 (Dischargeability of Debts Under 11 U.S.C. § 523(a)(2)(A))**

36. Plaintiffs adopt and re-allege the allegations set forth in paragraphs 1 through 35 as if fully stated fully herein.

37. The Debtor made false representations with intent to deceive Plaintiffs.

38. The Debtor knew such representations were false at the time they were made.

39. The Debtor made the representations with the intent and purpose of deceiving Plaintiff so as to obtain loans for Island Lake.

40. Plaintiffs reasonably relied on the Debtor's representations in agreeing to loan millions of dollars to Island Lake, an entity controlled by the Shabsels brothers. .

41. Plaintiffs have sustained damages as a proximate result of the Debtor's misrepresentation.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment against the Debtor (1) determining the debts against the Debtor alleged herein, and in or otherwise related to the Agreements, to be non-dischargeable under 11 U.S.C. §§ 523(a)(2)(A); and (2) granting Plaintiffs such other and further relief as this Court may deem just and proper

**Count 2 (Dischargeability of Debts Under 11 U.S.C. § 523(a)(2)(B))**

42. Plaintiffs adopt and re-allege the allegations set forth in paragraphs 1 through 41 as if fully stated fully herein.

43. Through the Agreements, the Debtor made statements in writing to Plaintiffs.

44. The statements concerned the financial condition of both the Debtor himself and insiders such as the Shabsel Entities and the Debtor's brother.

45. The statements made by the Debtor to Plaintiffs were materially false.

46. The Debtor made the statements with the intent to deceive Plaintiffs.

47. The Debtor made the statements with the intent and purpose of deceiving Plaintiffs so as to obtain loans for Island Lake.

48. Plaintiffs reasonably relied on the statements made by the Debtor.

49. Plaintiffs have sustained damages as a proximate result of the Debtor's materially false statements.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment against the Debtor (1) determining the debts against the Debtors alleged herein, and in or otherwise related to

the Agreements, to be non-dischargeable under 11 U.S.C. §§ 523(a)(2)(B); and (2) granting Plaintiff such other and further relief as this Court may deem just and proper.

SHAPIRO CROLAND REISER APFEL
& DI IORIO, LLP
Attorneys for Plaintiffs

Dated: August 25, 2026

/s/ Glenn R. Reiser____________________
Glenn R. Reiser

# EXHIBIT A

# Business Loan and Security Agreement

| SELLER AND GUARANTOR INFORMATION | | | |
|---|---|---|---|
| Borrower Legal Name(s) | ISLAND LAKE CAMPCO LLC | | |
| DBA | ISLAND LAKE CAMPCO | EIN | 26-4569764 |
| Entity Type | Limited Liability Company | Where Organized | PA |
| Borrower Address | 444 E 58 St New York NY 10022 | | |
| Owners of Borrower, each of whom shall be a Guarantor | Name: MICHAEL SHABSELS | Title: Owner | |
| | SSN: [redacted] | | |
| (Print and fill out this page as many times as needed to include all owners) | Address: 444 E 58 St New York NY 10022 | | |
| | Email: [redacted] | Phone: [redacted] | |
| Additional Guarantor(s) | MICHAEL SHABSELS | SSN/EIN: [redacted] | |
| | DAVID SHABSELS | SSN/EIN: [redacted] | |
| | 1000 ACRES HOLDINGS LLC | SSN/EIN: 81-1043826 | |
| | 1101 EAST GLENDALE BOULEVARD REAL ESTATE LLC | SSN/EIN: 83-3351215 | |
| | 1101 EAST GLENDALE BOULEVARD LEASING LLC | SSN/EIN: 83-3351243 | |
| | 11200 WEST FLORISSANT AVENUE LEASING LLC | SSN/EIN: 82-4905809 | |
| | 11200 WEST FLORISSANT AVE REALTY LLC | SSN/EIN: 82-4905886 | |
| | 1133 NORTHWEST L STREET LEASING LLC | SSN/EIN: 82-2625014 | |
| | 1133 NORTHWEST L STREET REAL ESTATE | SSN/EIN: 82-2624981 | |
| | 1135 EAST CHOCOLATE AVENUE LEASING LLC | SSN/EIN: 84-2579201 | |
| | 1135 EAST CHOCOLATE AVENUE REAL ESTATE LLC | SSN/EIN: 84-2579163 | |
| | 12 CAMBRIDGE DRIVE LEASING LLC | SSN/EIN: 81-5175776 | |
| | 12 CAMBRIDGE DRIVE REALTY LLC | SSN/EIN: 81-5175680 | |
| | 1323 AUGUSTA WEST PARKWAY LEASING LLC | SSN/EIN: 92-1244710 | |
| | 1323 AUGUSTA WEST PARKWAY REAL ESTATE LLC | SSN/EIN: 92-1244773 | |
| | 1401 US HIGHWAY 49B REAL ESTATE LLC | SSN/EIN: 82-5066304 | |
| | 149 EMERALD STREET LEASING LLC | SSN/EIN: 82-5343959 | |
| | 149 EMERALD STREET REAL ESTATE LLC | SSN/EIN: 82-5327417 | |
| | 1600 EASTCHASE PARKWAY LEASING LLC | SSN/EIN: 93-1789816 | |
| | 1600 EASTCHASE PARKWAY REAL ESTATE LLC | SSN/EIN: 93-1789866 | |
| | 1750 WELLS REAL ESTATE LLC | SSN/EIN: 82-0826890 | |
| | 1800 & 4215 OKLAHOMA REALTY LLC | SSN/EIN: | |
| | 1912 MEMORIAL DRIVE REAL ESTATE LLC | SSN/EIN: 82-5010662 | |
| | 194 WASHINGTON AVE. REAL ESTATE LLC | SSN/EIN: 82-4850880 | |
| | 194 WASHINGTON AVENUE LEASING LLC | SSN/EIN: 82-4850936 | |

| | | |
|---|---|---|
| | 200 GREAT POND DRIVE LEASING LLC | SSN/EIN: 87-3560779 |
| | 200 GREAT POND DRIVE REAL ESTATE LLC | SSN/EIN: 87-3560686 |
| | 201 CENTRE DRIVE LEASING LLC | SSN/EIN: 83-2737540 |
| | 201 CENTRE DRIVE REAL ESTATE LLC | SSN/EIN: 83-2737614 |
| | 2195 HARLEM ROAD LEASING LLC | SSN/EIN: 99-3056050 |
| | 2195 HARLEM ROAD REAL ESTATE LLC | SSN/EIN: 99-3056110 |
| | 2203 GRAND CANAL BOULEVARD LEASING LLC | SSN/EIN: 83-0753729 |
| | 2203 GRAND CANAL BOULEVARD REAL ESTATE LLC | SSN/EIN: 83-0753696 |
| | 2302 WINDSONG DRIVE LEASING LLC | SSN/EIN: 99-4945653 |
| | 2302 WINDSONG DRIVE REAL ESTATE LLC | SSN/EIN: 99-4945747 |
| | 2434 SOUTH INTERSTATE 35E LEASING LLC | SSN/EIN: 84-2592802 |
| | 2434 SOUTH INTERSTATE 35E REAL ESTATE LLC | SSN/EIN: 84-2592795 |
| | 250 PROGRESSIVE LEASING LLC | SSN/EIN: 81-4072305 |
| | 250 PROGRESSIVE REAL ESTATE LLC | SSN/EIN: 81-4067118 |
| | 2547 BRINDLE DRIVE LEASING LLC | SSN/EIN: 83-3369349 |
| | 2547 BRINDLE DRIVE REAL ESTATE LLC | SSN/EIN: 83-3369313 |
| | 2974 COPPERCREEK ROAD LEASING LLC | SSN/EIN: 93-3000296 |
| | 2974 COPPERCREEK ROAD REAL ESTATE LLC | SSN/EIN: 93-3000380 |
| | 3385 NEWMARK DRIVE LLC | SSN/EIN: 82-2145036 |
| | 3413 TITTABAWASSEE ROAD LEASING LLC | SSN/EIN: 87-3059813 |
| | 3413 TITTABAWASSEE ROAD REAL ESTATE LLC | SSN/EIN: 87-3059715 |
| | 348 MORRIS AVENUE REAL ESTATE LLC | SSN/EIN: 33-1350652 |
| | 400 GREENS ROAD LEASING LLC | SSN/EIN: 92-3694982 |
| | 400 GREENS ROAD REAL ESTATE LLC | SSN/EIN: 92-3695109 |
| | 4328 BAY ROAD REAL ESTATE LLC | SSN/EIN: 88-4053416 |
| | 4328 BAY ROAD LEASING LLC | SSN/EIN: 88-4053346 |
| | 44 SOUTHPOINT DRIVE LEASING LLC | SSN/EIN: 92-3855357 |
| | 44 SOUTHPOINT DRIVE REAL ESTATE LLC | SSN/EIN: 92-3855416 |
| | 45 COMMERCE DRIVE LEASING LLC | SSN/EIN: 87-4536719 |
| | 45 COMMERCE DRIVE REAL ESTATE LLC | SSN/EIN: 87-4536789 |
| | 4650 WESTWAY PARK BOULEVARD LEASING LLC | SSN/EIN: 87-4579779 |
| | 4650 WESTWAY PARK BOULEVARD REAL ESTATE LLC | SSN/EIN: 87-4612298 |
| | 4800 USH 280 LEASING LLC | SSN/EIN: 82-1961191 |
| | 4800 USH 280 REAL ESTATE LLC | SSN/EIN: 82-1961263 |
| | 55 MERLINO DRIVE LEASING LLC | SSN/EIN: 93-3069500 |
| | 55 MERLINO DRIVE REAL ESTATE LLC | SSN/EIN: 93-3069577 |

Cashera Private Credit

| | | |
|---|---|---|
| | 5707 MACCORCKLE AVENUE LEASING LLC | SSN/EIN: 84-2606287 |
| | 5707 MACCORKLE AVENUE REAL ESTATE LLC | SSN/EIN: 84-2606261 |
| | 635 GRAVOIS REAL ESTATE LLC | SSN/EIN: 84-2668514 |
| | 635 GRAVOIS ROAD LEASING LLC | SSN/EIN: 84-2668532 |
| | 7335 GLADIOLUS LLC | SSN/EIN: 81-1036615 |
| | 7650 FM 78 LEASING LLC | SSN/EIN: 84-2653914 |
| | 7650 FM 78 REAL ESTATE LLC | SSN/EIN: 84-2653902 |
| | 771 CORPORATE DRIVE LEASING LLC | SSN/EIN: 86-1875920 |
| | 771 CORPORATE DRIVE REAL ESTATE LLC | SSN/EIN: 86-1875981 |
| | 8014 BAYBERRY ROAD REAL ESTATE LLC | SSN/EIN: 82-0841994 |
| | 830 COUNTY ROAD 64 LEASING LLC | SSN/EIN: 99-4233460 |
| | 830 COUNTY ROAD 64 REAL ESTATE LLC | SSN/EIN: 99-4233541 |
| | 9 FARM SPRING LEASING LLC | SSN/EIN: |
| | 9 FARM SPRING REAL ESTATE LLC | SSN/EIN: |
| | 90 PLEASANT VALLEY STREET LEASING LLC | SSN/EIN: 88-1279898 |
| | 90 PLEASANT VALLEY STREET REAL ESTATE LLC | SSN/EIN: 88-1279954 |
| | ACHIM LANDCO LLC | SSN/EIN: 45-5116363 |
| | ACHIM OPERATINGCO LLC | SSN/EIN: 45-5116413 |
| | BAHS HOLDINGS LLC | SSN/EIN: 74-3230074 |
| | BAHS OPERATING INC | SSN/EIN: 74-3230075 |
| | BANNER LANDCO LLC | SSN/EIN: 46-4143422 |
| | BANNER OPERATINGCO LLC | SSN/EIN: 46-4138660 |
| | BAYBERRY WELLS LLC LEASING LLC | SSN/EIN: 82-0826821 |
| | BELGRADE LAKES SUMMER CAMP LLC | SSN/EIN: 45-0949107 |
| | BLUESTAR LANDCO LLC | SSN/EIN: 45-4400233 |
| | BLUESTAR OPERATINGCO LLC | SSN/EIN: 45-4400170 |
| | ~~Camp~~ Med-O-Lark Inc | SSN/EIN: 20-5014808 |
| | Chateaugay Campco LLC | SSN/EIN: 88-2103193 |
| | Chateaugay Landco LLC | SSN/EIN: 88-2103300 |
| | Club Getaway Landco LLC | SSN/EIN: 45-4740807 |
| | Club Getaway Operatingco LLC | SSN/EIN: 45-4740799 |
| | Country Roads Landco LLC | SSN/EIN: 46-3694321 |
| | Country Roads Operatingco LLC | SSN/EIN: 46-3689261 |
| | DAMIS Holdings LLC | SSN/EIN: 26-4569764 |
| | Eagle's Landing Day Camp LLC | SSN/EIN: 45-3645311 |
| | East Hartford Properties Leasing LLC | SSN/EIN: 88-2263382 |

Cashera Private Credit

| | | |
|---|---|---|
| | East Hartford Properties Real Estate LLC | SSN/EIN: 88-2263406 |
| | Fairplain Plaza Leasing LLC | SSN/EIN: 88-4060163 |
| | Fairplain Plaza Real Estate LLC | SSN/EIN: 88-4060184 |
| | Green Lane Landco LLC | SSN/EIN: 45-2798554 |
| | Green Lane Operatingco LLC | SSN/EIN: 45-2798472 |
| | Greenvilleland LLC | SSN/EIN: 26-4101514 |
| | Iafalandco LLC | SSN/EIN: 45-0968508 |
| | Iafaoperatingco LLC | SSN/EIN: 45-0968199 |
| | Island Lake Campco LLC | SSN/EIN: 86-1798046 |
| | Island Lake Landco LLC | SSN/EIN: 86-1798144 |
| | Kiwi Landco LLC | SSN/EIN: 46-2008687 |
| | Kiwi Operatingco LLC | SSN/EIN: 46-2004866 |
| | Lavco LLC | SSN/EIN: 35-2323566 |
| | Lavland LLC | SSN/EIN: 35-2323567 |
| | Maine Wekeela Co LLC | SSN/EIN: 26-3837189 |
| | Malka Operatingco LLC | SSN/EIN: 46-4390589 |
| | Matteson Center Leasing LLC | SSN/EIN: 84-2623061 |
| | Matteson Center Real Estate LLC | SSN/EIN: 84-2623043 |
| | Meadowbrook Landco LLC | SSN/EIN: 81-2291751 |
| | Meadowbrook Operatingco LLC | SSN/EIN: 81-2291099 |
| | Mesorahco LLC | SSN/EIN: 36-4643144 |
| | Mesorahland LLC | SSN/EIN: 36-4643146 |
| | Mill Road Loandco LLC | SSN/EIN: 45-3645276 |
| | Mogenavco LLC | SSN/EIN: 45-3694326 |
| | Mogenavland LLC | SSN/EIN: 27-3389041 |
| | Mohawk Country Home School Inc | SSN/EIN: 13-2565981 |
| | Mohawkcampco LLC | SSN/EIN: 27-1471724 |
| | Mohawkland LLC | SSN/EIN: 27-1471693 |
| | Oklahoma Wilshire Lofts Leasing LLC | SSN/EIN: 87-4428886 |
| | Oklahoma Wilshire Lofts Real Estate LLC | SSN/EIN: 87-4428927 |
| | Pine Forest Campco LLC | SSN/EIN: 88-2442248 |
| | Pine Forest Landco LLC | SSN/EIN: 88-2442329 |
| | Poland Landco LLC dba Camp North Star | SSN/EIN: 47-3844127 |
| | Poland Landco LLC | SSN/EIN: 47-3857131 |
| | RDM Camps LLC | SSN/EIN: 26-1952560 |
| | Rocking Horse Ranch Landco LLC | SSN/EIN: 99-0846675 |



Owner / Guarantor Initials: MS | DS | ______

| | | |
|---|---|---|
| | Rocking Horse Ranch Operatingco LLC | SSN/EIN: 99-0846577 |
| | Rolling Hills Landco LLC | SSN/EIN: 88-2343087 |
| | Rolling Hills Operatingco LLC | SSN/EIN: 88-2342968 |
| | Simad Holdings LLC | SSN/EIN: 46-0781502 |
| | Shab Holdings LLC | SSN/EIN: 74-3230077 |
| | Shab Operating Inc | SSN/EIN: 74-3230078 |
| | South Loop West Leasing LLC | SSN/EIN: 92-1218342 |
| | South Loop West Real Estate LLC | SSN/EIN: 92-1218377 |
| | Splashdown Beach Landco LLC | SSN/EIN: 99-0857798 |
| | Splashdown Beach Operatingco LLC | SSN/EIN: 99-0857769 |
| | Stony Creek Operating Co LLC | SSN/EIN: 81-1822864 |
| | Summit Camp LLC | SSN/EIN: 27-0288081 |
| | Turnpike Road Holdings LLC | SSN/EIN: 92-1191990 |
| | Washington Lake LLC | SSN/EIN: 20-8813633 |
| | Waukeela Landco LLC | SSN/EIN: 46-5389007 |
| | Waukeela Operatingco LLC | SSN/EIN: 46-5388979 |
| | Wekeeland LLC | SSN/EIN: 26-3837359 |
| | Willow Lake Day Camp LLC | SSN/EIN: 45-5167411 |
| | Willow Lake Land Corp | SSN/EIN: 22-3272383 |
| | WM Camp LLC | SSN/EIN: 27-1682216 |
| | WM Land LLC | SSN/EIN: 27-1766957 |
| | Woodlands Eagle Timber Leasing LLC | SSN/EIN: 99-4915326 |
| | Woodlands Eagle Timber Real Estate LLC | SSN/EIN: 99-4915374 |

This Business Loan and Security Agreement (as amended, restated, supplemented, or otherwise modified, this "**Agreement**"), together with all exhibits and other attachments hereto, governs the business loan (the "**Loan**") made by Lender to Borrower as of the Effective Date (defined below).. In this Agreement, the **words** "Borrower", "**you**", "**your**" and similar each mean the Person identified as "Borrower" on the signature page of this Agreement. Each Person identified on the signature page of this Agreement as a "Guarantor", shall be referred to herein individually and collectively (as the context requires) as "**Guarantor**". The words "**Lender**", "**we**", "**us**", "**our**" and similar mean CASHERA PRIVATE CREDIT INC, a Utah corporation with a mailing address of PMB 1216, 2795 E. Cottonwood Parkway, Suite 300, Salt Lake City, UT 84121, and its successors and assigns. "**Person**" means an individual, corporation, association, partnership, an estate, a trust and any other entity or organization.

Cashera
Private Credit

| YOUR LOAN DETAILS | |
|---|---|
| **Loan Amount:** | $ 2,000,000.00 |
| **Origination Fee:** (Deducted at time of disbursement) | $ 40,000.00 |
| **Previous Balance** | |
| **Advance Amount:** (Loan Amount less Origination Fee) Note that the Advance Amount may not be the amount deposited to your Designated Checking Account. The amount that will be deposited to your Designated Checking Account will be reduced by costs, fees and expenses owed to Lender, any amounts owed to Lender from any prior Advance, indebtedness, or loan, and any amounts used to pay off obligations owed by Borrower to a third-party creditor. | $ 1,960,000.00 |
| **Maturity Date:** | 11/06/2026 |
| **Payment Amount:** | $ 93,687.50 |
| **Payment Schedule:** The term "**Business Day**" means any Monday through Friday, except for Federal Reserve holidays or state holidays on which Lender is closed. | 32 payments of $ 93,687.50 due weekly each Friday immediately following the date of disbursement of the Advance Amount from the lender. |
| **Total Interest Expense:** (Does not include any costs, expenses or fees, or default fees or default interest) | $ 998,000.00 |
| **Total Repayment Amount:** (Advance Amount plus Total Interest Expense) | $ 2,998,000.00 |

Cashera Private Credit



Owner / Guarantor Initials: MS | DS | ______

Cashera Private Credit

## INTEREST, FORGIVENESS AND OTHER FEES

**Interest Forgiveness:** Unpaid interest on this Loan may be forgiven by Lender in Lender's sole discretion if: (a) Borrower is current on its scheduled payments with respect to this Loan (including payment of any fees or expenses), and (b) while this Loan is outstanding, Borrower enters into a business loan and security agreement for a new qualifying term loan with Lender, a portion of the proceeds of which are used to repay the remaining portion of the Loan Amount in whole.

**Other Fees:** (with the Origination Fee collectively the "Fees")

| Type of Fee | Amount of Fee | Other Comments |
|---|---|---|
| Underwriting Fee | | |
| Origination Fee | $ 40,000.00 | |
| Returned Payment Fee[1] | $ 35.00 | |
| Funding Fee | | |
| Bank Change Fee | | |
| Non-Sufficient Funds (NSF) Fee | | |
| Monthly Maintenance Fee | | |
| Stopped Payment Fee | | |
| Default Fee | 25% | Twenty Five Percent of Outstanding Balance at Date of Default |
| UCC Filing Fee | $ 150.00 | |
| Late Fee | $ 35.00 | |

## CERTAIN DISCLOSURES

**Loan Pricing Disclosure:** Lender uses a system of risk-based pricing to determine interest charges and fees. Risk-based pricing is a system that evaluates the risk factors of your application and adjusts the interest rate up or down based on this risk evaluation. This Loan may be a higher-cost loan than loans that may be available through other lenders. Borrower understands that Lender may make loans to other Persons on other terms, at other amounts and interest rates, and with other fees in its sole discretion, subject only to applicable law.

**Loan For Specific Purposes Only:** The proceeds of the requested Loan may solely be used for commercial purposes, as set forth and certified and affirmed by Borrower in the Commercial Purpose Affidavit and Waiver of Federal and State Truth-in-Lending Disclosures attached hereto as Exhibit A (the "**Commercial Purpose Affidavit**"). IN ADDITION, THE LOAN WILL NOT BE USED FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES. Borrower understands that Borrower's agreement not to use the Loan proceeds for personal, family or household purposes means that certain important duties imposed upon entities making loans for personal, family or household purposes, and certain important rights conferred upon Persons obtaining such loans, pursuant to federal or state law will not apply to the Loan or the Agreement.

[1]To be paid automatically if any electronic payment processed on Borrower's Loan is returned unpaid or dishonored for any reason.



Owner / Guarantor Initial: MS | DS | ______

Cashera Private Credit

The calculations below involve certain key assumptions about the Loan, including that the Loan is paid off in its entirety according to the agreed Payment Schedule and that no payments are missed. These calculations are provided as a convenience only, and Lender's records will, absent manifest error, be conclusively presumed to be correct and accurate and constitute an account stated between Borrower and Lender. To the extent Lender's records differ from the below metric calculations and metric explanations, Lender's records shall control. The amounts below may vary from the actual amounts.

| Loan Amount | Advance Amount (minus Fees and other expenses withheld)[2] | Repayment Amount | Maturity Date |
|---|---|---|---|
| $ 2,000,000.00 | $ 1,960,000.00 | $ 2,998,000.00 | 11/06/2026 or such earlier date on which (i) the Loan is accelerated pursuant to the terms of this Agreement or otherwise, or (ii) the term of the Loan terminates or expires. |

| METRIC | METRIC CALCULATION | | METRIC EXPLANATION |
|---|---|---|---|
| **Total Cost of Capital** | Interest Expense: | $ 998,000.00 | This is the total amount that you will pay in interest and certain required fees incurred in connection with the making of the Loan, but this amount does not include fees and other charges you can avoid, such as late payment fees, returned Total Cost of Capital payment fees, and Default Fees. |
| | Loan Fee: | | |
| | Origination Fee: | $ 40,000.00 | |
| | Other Fees: | | |
| | ***Total Cost of Capital*** | $ 1,038,000.00 | |
| **Annual Percentage Rate (APR)** | Your Loan will have 32 payments paid on a weekly basis of: | $ 93,687.50 | This is the cost of the Loan, including total interest, Fees, and other fees, expressed as a yearly rate. APR takes into account the amount and timing of capital you receive, fees you pay, and the periodic payments you make. This is provided as a convenience only. While APR can be used for comparison purposes, it is not an interest rate and is not used to calculate the Total Interest Expense. |
| | ***APR*** | *148.68 %* | |
| **Average Monthly** | Repayment Amount: | $ 2,998,000.00 | This is the average monthly repayment amount of the Loan, which does not include fees and other charges you can avoid, such as late payment fees, returned payment fees and the default fee.[2] The actual repayment frequency for the Loan will be weekly. This is an estimate for comparison purposes only. |
| | | ÷ | |
| | | | |
| **Cents on the Dollar** (excluding fees) | Interest Expense or Loan Fee: | $ 998,000.00 | This is the total amount of Interest or Loan Fee paid per dollar borrowed. This amount is exclusive of fees. This is provided as a convenience only. |
| | Loan Amount: | ÷ $ 2,000,000.00 | |
| | ***Cents on the Dollar: (excluding fees)*** | 49¢ | |
| Prepayment | **Does prepayment of this Loan result in any new fees or charges?** | | No *(see "Prepayment" below)* |
| | **Does prepayment of this Loan decrease the total interest or Loan Fees owed?** | | Yes - Prepayment within the following times are as follows, reduced by all weekly payments previously made (see table below) *(see "Prepayment" above for the interest or fee reduction amount)* |

| | |
|---|---|
| 30 Days | $2,240,000.00 |
| 60 Days | $2,340,000.00 |
| 90 Days | $2,440,000.00 |
| | |

[2] The Advance Amount is the amount of capital that Borrower receives and may be different from the Loan Amount. The Advance Amount is net of Fees and other expenses withheld from the Loan Amount. A portion of the Advance Amount may be used to pay Fees and other expenses owed to Lender, any amounts owed to Lender from any prior Advance, indebtedness, or loan, and any amounts used to pay off obligations owed by Borrower to a third-party creditor APR should be considered in conjunction with the Total Cost of Capital. APR may be most useful when comparing financing solutions of similar expected duration. APR is calculated here according to the principles of 12 C.F.R. § 1026 ("Regulation Z"), using 52 payment periods of equal length and 52 payment dates per year for weekly pay products, and 252 payment dates per year for daily pay products. Neither the inclusion of APR nor reference to Regulation Z herein subjects this Agreement or the Loan thereto, but such reference is provided as a courtesy only.

Cashera Private Credit

1. **EFFECTIVE DATE**. This Agreement begins on the date that corresponds with Lender's signature on the signature page of the Agreement (the "**Effective Date**"). Borrower understands and agrees that Lender may postpone, without penalty, the disbursement of amounts to Borrower until all required security interests have attached and been validly perfected and Lender has received all required personal guarantees or other documentation reasonably required by Lender.

2. **AUTHORIZATION**. Borrower agrees that the Loan made by Lender to Borrower shall be conclusively deemed to have been authorized by Borrower and to have been made pursuant to a duly authorized request on its behalf.

3. **LOAN FOR SPECIFIC PURPOSES ONLY**. The proceeds of the requested Loan may solely be used for specific commercial purposes, and not for any other purposes. In addition, as set forth and certified and affirmed by Borrower in the Commercial Purpose Affidavit, the Loan will not be used for personal, family or household purposes, and Borrower and Guarantor are forever estopped from taking the position that such Loan (including Advances) are or were used for such personal, family or household purposes. Borrower understands that Borrower's agreement not to use the Loan proceeds for personal, family or household purposes means that certain important duties imposed upon entities making loans for personal, family or household purposes, and certain important rights conferred upon Persons obtaining such loans, pursuant to federal or state law will not apply to the Loan or the Agreement. Borrower also understands that Lender will be unable to confirm whether Borrower's use or intended use of the Loan has or will have a commercial or business purpose. Borrower agrees that a breach by Borrower of the provisions of this section will not affect Lender's right to (i) enforce Borrower's promise to pay to Lender all amounts owed thereto under this Agreement, regardless of the purpose for which the Loan is in fact obtained or (ii) exercise any right, remedy, privilege, or power set forth in this Agreement or otherwise available to Lender at law or in equity, even if such right, remedy, privilege, or power would not have been available had the Loan been obtained for personal, family or household purposes.

4. **DISBURSEMENT OF LOAN PROCEEDS AND MAINTENANCE OF BORROWER'S BANK ACCOUNT**. Borrower's Loan will be disbursed as provided in the Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits) attached as Exhibit B attached to this Agreement (the "**ACH Authorization Form**"). Borrower agrees to maintain Direct Payments (ACH Debits) in the account that was reviewed in conjunction with the underwriting and approval of this Loan (including keeping such account open until the Total Repayment Amount has been indefeasibly repaid in full).

5. **PROMISE TO PAY**. Borrower agrees to pay Lender the Total Repayment Amount in lawful money of the United States of America in payment, in accordance with the Payment Schedule shown in the table entitled "Your Loan Details" in this Agreement. Borrower authorizes Lender to collect required payments in the manner provided in the ACH Authorization Form.

6. **ALTERNATIVE PAYMENT METHODS**. If Borrower knows that for any reason Lender will be unable to process a payment under the Automatic Payment Plan, or if Lender is unable to process a payment under the Automatic Payment Plan, then Borrower must either restore sufficient funds such that the missed payment can be collected as provided in the ACH Authorization Form or other recoupment method as directed by Lender. If Borrower elects to send payments to Lender by postal mail, then Borrower agrees to send such payments via certified mail, return receipt requested, to PMB 1216, 2795 E. Cottonwood Parkway, Suite 300, Salt Lake City, UT 84121. All alternative payments must be made by check, money order, wire transfer, automatic transfer from an account at an institution offering such service, or other instrument in lawful money of the United States of America constituting legal tender in payment of all debts and dues, public and private. If Borrower makes a payment on Borrower's Loan by any means other than the Automatic Payment Plan that Lender makes available, Lender may treat such payment as an additional payment and continue to process Borrower's scheduled payments made through the Automatic Payment Plan or may reduce any scheduled payment to be made through the Automatic Payment Plan by the amount of any such payment received through alternative means. Failure by Lender to process a payment under the Automatic Payment Plan does not relieve Borrower from making any such payment, and each payment shall still be due and payable in accordance with the terms of this Agreement, including any additional interest, cost or fees due because of such missed or late payment.

7. **APPLICATION OF PAYMENTS**. Subject to applicable law, Lender reserves the right to allocate and apply payments received on Borrower's Loan between principal, interest and fees in any manner Lender chooses in Lender's sole discretion, it being understood and agreed that any fees and interest may be paid during the earlier portion of the term of the Loan. Lender's books and records of payments shall be conclusive proof of the same absent manifest error.

8. **POSTDATED CHECKS, RESTRICTED ENDORSEMENT CHECKS AND OTHER DISPUTED OR QUALIFIED PAYMENTS**. Lender can accept late, postdated or partial payments without losing any of Lender's rights under this Agreement, it being understood by Borrower that a postdated check is a check dated later than the day it was presented for payment. Lender is under no obligation to hold a

Cashera Private Credit

postdated check, and Lender reserves the right to process every item presented as if dated the same date that such item was received by Lender or Lender's check processor. Borrower may not hold Lender liable for depositing any postdated check. Borrower agrees not to send Lender partial payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, including (without limitation) Lender's right to full repayment of the Total Repayment Amount. All notices and written communications concerning postdated checks, restricted endorsement checks (including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount) or any other disputed, nonconforming or qualified payments, must be mailed or delivered to PMB 1216, 2795 E. Cottonwood Parkway, Suite 300, Salt Lake City, UT 84121.

9. **PREPAYMENT**. Borrower may prepay Borrower's Loan in whole on any Business Day prior to the Maturity Date by paying Lender the amounts specified in the Prepayment section above.

10. **SECURITY INTEREST.** Borrower and Guarantor hereby grant to Lender a security interest in and to any and all Collateral (as hereinafter defined) to secure the prompt and indefeasible payment and performance in full when due of all debts, liabilities and obligations of Borrower and Guarantor to Lender hereunder, including (without limitation) the Loan and all amounts, fees, and expenses due hereunder and under any and all renewals, extensions or substitutions for this Agreement, and also any and all other debts, liabilities and obligations of Borrower and Guarantor to Lender or any affiliate of Lender of every kind and nature, direct or indirect, absolute or contingent, primary or secondary, due or to become due, now existing or hereafter arising, including, without limitation, all indebtedness, interest, leases, debts and liabilities arising under or in connection with any note, guaranty (including the Guaranty, as hereinafter defined), surety agreement, or any other document, agreement, or instrument creating indebtedness, obligations, or liabilities owed by Borrower or Guarantor to Lender or any affiliate of Lender (including principal, interest, late charges, collection costs, attorney fees and the like) (collectively, the "Obligations"). The "Collateral" means all of Borrower's, and all of each Secured Guarantor's assets and personal property, whether now owned by or owing to, or hereafter acquired by or arising in favor of Borrower and each Secured Guarantor, and whether owned or consigned by or to, or leased from or to Borrower and each Secured Guarantor, regardless of where located, which shall include, without limitation: (a) any and all amounts owing to Borrower now or in the future from any merchant processor(s) processing charges made by customers of Borrower via credit card or debit card transactions; (b) cash and cash equivalents, (c) inventory, (d) equipment, (e) investment property, including certificated and uncertificated securities, securities accounts, security entitlements, commodity contracts and commodity accounts, (f) instruments, including promissory notes, (g) chattel paper, including tangible chattel paper and electronic chattel paper, (h) documents, (i) letter of credit rights, (j) accounts, including health-care insurance receivables, (k) deposit accounts with any bank or other financial institution, (l) commercial tort claims, (m) general intangibles, including payment intangibles and software, (n) copyrights, patents and trademarks and all other intellectual property, (o) fixtures, (p) goods, (q) letters of credit, letter-of-credit rights, and supporting obligations. The preceding terms used in defining the term "Collateral" not otherwise defined in this Agreement shall have the meaning as such terms may from time to time be defined in the Uniform Commercial Code in effect in the State of Utah ("UCC"). The security interest Borrower and each Secured Guarantor grants herein includes all accessions to, substitutions for and replacements, proceeds (including stock rights), insurance proceeds and products of the foregoing subsections (a) through (r), together with all books and records, customers lists, credit files, computer files, programs, printouts, and other computer materials and records related thereto and any general intangibles (as defined in the UCC) at any time evidencing or relating to any of the foregoing. Lender disclaims any security interest in household goods in which Lender is forbidden by applicable law from taking a security interest.

11. **PROTECTING THE SECURITY INTEREST.** Borrower and Guarantor agree that Lender or Lender's Representative may, following Borrower's failure to make a weekly payment when due (a "Payment Default") file any financing statement, lien entry form, springing DACA (attached hereto as Exhibit F) or other document, agreement, or instrument Lender or Lender's Representative requires in order to perfect, maintain the perfection of, amend, or continue Lender's security interest in the Collateral, and Borrower and Guarantor agree to cooperate with Lender and Lender's Representative as may be necessary to accomplish said filing.

Cashera

Borrower and Guarantor each agree that, if Guarantor is a corporate entity, then Lender or Lender's Representative may file any financing statement, lien entry form or other document against Guarantor or its property that Lender and/or Lender's Representative requires in order to perfect, amend or continue Lender's security interest in the Collateral. Guarantor agrees to cooperate with Lender and Lender's Representative as may be necessary to accomplish said filing and to do whatever Lender or Lender's Representative deems necessary to protect Lender's security interest in the Collateral. "Lender's Representative" means any Person that is or Persons that are designated by Lender to act on its behalf in any authorized capacity. BORROWER AND EACH GUARANTOR EACH EXPRESSLY ACKNOWLEDGE AND AGREE BY SIGNING THIS AGREEMENT THAT, LENDER'S COLLATERAL AS DESCRIBED IN SECTION 10 INCLUDES ALL OF BORROWER'S AND EACH SECURED GUARANTOR'S PERSONAL PROPERTY AND ASSETS.

Following a Payment Default, Borrower hereby irrevocably constitutes and appoints Lender, or designated agent, with full power of substitution, as its true and lawful attorney-in-fact with full irrevocable power and authority in place and stead of Borrower, for the purpose of carrying out the terms of this Agreement, to take any and all appropriate action and to execute any and all documents and instruments that may be necessary to accomplish the purposes of this Agreement and, without limiting the generality of the foregoing, hereby gives said attorney the power and right, on behalf of Borrower without notice to or assent by Borrower, to, upon the occurrence and during the continuance of an Event of Default, (a) endorse Borrower's name on any checks, notes, drafts or other forms of payment or security that may come into the possession of Lender or any affiliate of Lender, to sign Borrower's name on invoices or bills-of-lading, drafts against customers, notices of assignment, verifications and schedules, (b) sell, transfer, pledge, make any arrangement with respect to or otherwise dispose of or deal with any of the Collateral consistent with the UCC and (c) do acts and things which Lender reasonably deems necessary to protect, preserve or realize upon the Collateral and Lender's security interest therein. The powers granted herein, being coupled with an interest, are irrevocable until the date this Agreement and the Obligations evidenced hereby is repaid in full in accordance with its terms. The powers conferred on Lender hereunder are solely to protect its interests in the Collateral and shall not impose any duty upon it to exercise any such powers. Neither Lender nor any other attorney-in-fact shall be liable for any act or omission, error in judgment or mistake of law.

12. **LOCATION OF COLLATERAL; TRANSACTIONS INVOLVING COLLATERAL**. Unless Lender has agreed otherwise in writing, Borrower and Guarantor represent, warrant, and covenant, as appliable, that (i) all Collateral (or records of the Collateral in the case of accounts, chattel paper, and general intangibles) shall at all times be located at Borrower's and Guarantor's respective address as shown on the first page of this Agreement or, if not shown thereon, then as set forth elsewhere in this Agreement; (ii) except for inventory sold or accounts collected in the ordinary course of Borrower's or Guarantor's business, Borrower and Guarantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral or any portion thereof; (iii) Borrower and Guarantor shall not (a) dissolve, cease operations, liquidate, merge, consolidate or divide with or into any other Person, (b) turn over the management or operation of all or substantially all of its property, assets or business to any other Person, or (c) engage in any business activities substantially different than those in which Borrower or Guarantor is presently engaged; (iv) Borrower and Guarantor shall defend Lender's rights in the Collateral against the claims and demands of all other Persons, as may be directed by Lender; (v) Borrower and Guarantor shall make no alterations, additions, subtractions, upgrades or improvements to the Collateral or any portion thereof, provided that any such alterations, additions, subtractions, upgrades or improvements shall automatically become a part of the Collateral whether or not made with Lender's prior written consent; and (vi) Borrower and Guarantor shall not use or move the Collateral or any portion thereof outside of the United States of America. All proceeds from any unauthorized disposition of the Collateral shall be held in trust for Lender, shall not be commingled with any other funds and shall immediately be delivered to Lender. This requirement, however, does not constitute consent by Lender to any such disposition.

13. **TAXES, ASSESSMENTS AND LIENS**. Following a Payment Default, Borrower and Guarantor will complete and timely file all necessary federal, state and local tax returns and will pay and perform in full when due all taxes, assessments, levies and liens upon the Collateral and provide evidence of such upon Lender's request.

14. **INSURANCE**. *Section Removed*

15. **DAMAGE OR LOSS; REPAIRS AND MAINTENANCE**. Borrower and Guarantor bear the entire risk of loss, theft, damage or destruction of Collateral in whole or in part from any reason whatsoever. Borrower and Guarantor agree to keep and maintain, and cause others to keep and maintain, the Collateral in good order, repair and condition at all times (normal wear and tear excepted). Borrower and Guarantor further agree to pay in full when due all claims for work done on, or services rendered or material furnished in connection with, the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral, and any such lien or encumbrance shall be immediately discharged.

16. **INSPECTION OF COLLATERAL AND PLACE OF BUSINESS; USE OF PHOTOGRAPHS AND TESTIMONIALS**. Lender and Lender's Representative shall have the right to examine the Collateral wherever located and the interior and exterior of Borrower's and Guarantor's place of business, upon reasonable notice.

17. **LENDER'S EXPENDITURES**. Following a Payment Default, Lender on Borrower's or Guarantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. To the extent permitted by applicable law, all such expenses will become a part of the Obligations.

18. **BORROWER'S AND GUARANTOR'S REPRESENTATIONS, WARRANTIES, AND COVENANTS**. Borrower and Guarantor, each for itself, represent, warrant, and covenant that: (i) Borrower's and Guarantor's principal place of business and the office where Borrower and Guarantor keep its records concerning its accounts, contract rights and other property, is the address provided for Borrower and Guarantor in this Agreement; (ii) each of Borrower and Guarantor is duly organized, licensed, validly existing, and each of Borrower and Guarantor is and shall hereafter remain duly licensed and in good standing under, if Borrower or Guarantor is an individual, the laws of the state of its domicile, or, if Borrower or Guarantor is a legal entity, the laws of the state of its formation, organization, or incorporation, as applicable, and each of Borrower and Guarantor is duly qualified, licensed and in good standing in every other state in which it is doing business and in which the failure to qualify or become licensed could have a material adverse effect on the financial condition, business or operations of Borrower and Guarantor; (iii) the true and correct legal name of each of Borrower and Guarantor is set forth in this Agreement; (iv) the aggregate ownership percentage of the Signatories is greater than or equal to fifty percent (50%) of Borrower; (v) Following a Payment Default, Borrower and Guarantor shall notify Lender in writing at least thirty (30) days before, and obtain Lender's written consent prior to, any of the following actions: (a) change in the location of Borrower's or Guarantor's principal place of business,
(b) change in Borrower's or Guarantor's name, (c) change in Borrower's or Guarantor's type of organization, (d) change in Borrower's or Guarantor's jurisdiction of organization, and (e) change in Borrower's or Guarantor's corporate structure or ownership structure; (vi) each of Borrower and Guarantor is and will continue to be (or with respect to after-acquired property, will be when acquired) the legal and beneficial owner of the Collateral; (vii) the execution, delivery and performance of this Agreement, and any other document, agreement, and instrument executed in connection herewith, are within Borrower's and Guarantor's powers, have been duly authorized, and are not in contravention of applicable law or the terms of Borrower's or Guarantor's governing documents or of any indenture, agreement or undertaking to which Borrower or Guarantor is a party; (viii) all governing or organizational documents and all amendments thereto of Borrower and Guarantor have been duly filed and are in proper order and any capital stock issued by Borrower and Guarantor and outstanding was and is properly issued and all books and records of Borrower and Guarantor are accurate and up to date and will be so maintained;



Owner / Guarantor Initials: MS ____ | DS | ____

Cashera

(ix) all information provided by Borrower and Guarantor as part of the application process for the Loan was true and complete; (x) neither Borrower nor Guarantor intends to file, nor has any notice or reason to believe that another Person intends to file against Borrower or Guarantor, for reorganization or liquidation under the bankruptcy or reorganization laws of any jurisdiction within six (6) months after the date hereof, and Borrower and Guarantor shall notify Lender in writing (a) at least ten (10) days before filing for such reorganization or liquidation or (b) immediately if another Person has filed for such reorganization or liquidation against Borrower or Guarantor; and (xvi) neither Borrower nor Guarantor is presently, nor has any reasonable expectation that it will become, insolvent or bankrupt within the meaning of, as applicable, the UCC as well as the Bankruptcy Code (as hereinafter defined).

**19. INTEREST AND FEES.** *Section Removed.*

**20. FINANCIAL INFORMATION AND REEVALUATION OF CREDIT.** Borrower and Guarantor authorize Lender to obtain business and personal credit bureau reports in Borrower's and Guarantor's name, respectively, from time to time for purposes of deciding whether to approve the requested Loan or for any update, renewal, extension of credit or other lawful purpose. Upon Borrower's or Guarantor's request, Lender will advise Borrower or Guarantor if Lender obtained a credit report, and identify the credit bureau. Borrower and Guarantor agree to submit current financial information, a new credit application, or both, in Borrower's name and in the name of Guarantor, respectively, at any time promptly upon Lender's request. Following a Payment Default, Borrower authorizes Lender to act as Borrower's agent for purposes of accessing and retrieving transaction history information regarding Borrower from Borrower's designated merchant processor(s). Lender may report Lender's credit experiences with Borrower and Guarantor of Borrower's Loan to third parties as permitted by law, including with respect to any natural-Person Guarantor to consumer credit reporting agencies. Borrower and Guarantor also agree that Lender may release information to comply with governmental reporting or legal process that Lender believes may be required, whether or not such is in fact required, or when necessary or helpful in completing a transaction, or when investigating a loss or potential loss. Borrower and Guarantor are hereby notified that a negative credit report reflecting on Borrower's or Guarantor's credit record may be submitted to a credit reporting agency (including with respect to Guarantor to consumer credit reporting agencies) if Borrower or Guarantor fails to fulfill the terms of their respective credit obligations hereunder. Guarantor acknowledges that any credit reporting on the Loan shall be at the sole discretion of Lender (subject to applicable law) and that Lender has the right to report the Loan to Guarantor's personal credit file should Guarantor not pay any Obligation pursuant to the guaranty set forth in this Agreement. Borrower shall give access via Plaid or the like for Lender to access Borrower's bank accounts as requested by Lender.

**21. ATTORNEYS' FEES AND COLLECTION COSTS.** Upon discretion of Lender, and to the extent not prohibited by applicable law, following a Payment Default, Borrower shall pay to Lender on demand any and all expenses, including, but not limited to, collection costs, all attorneys' fees and expenses, and all other expenses of like or unlike nature which may be expended by Lender to obtain or enforce payment of Obligations either as against Borrower or Guarantor or surety of Borrower, including, without limitation, Guarantor, or in the prosecution or defense of any action or concerning any matter arising out of or connected with the subject matter of this Agreement, the Obligations or the Collateral or any of Lender's rights or interests therein or thereto, including, without limiting the generality of the foregoing, any counsel fees or expenses incurred in connection with any amendment, restatement, supplement, or modification hereof or in any bankruptcy or insolvency proceedings and all costs and expenses (including search fees) incurred or paid by Lender in connection with the administration, supervision, protection or realization on any security held by Lender for the Obligations, whether such security was granted by Borrower, Guarantor, or any other Person primarily or secondarily liable (with or without recourse) with respect to the Obligations, and all costs and expenses incurred by Lender in connection with the defense, settlement or satisfaction of any action, claim or demand asserted against Lender in connection therewith, which amounts shall be considered advances to protect Lender's security, and shall be secured hereby. To the extent permitted by applicable law, all such expenses will become a part of the Obligations. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon an Event of Default.

**22.** BORROWER'S REPORTS. Following a Payment Default, Promptly upon Lender's written request, Borrower and Guarantor agree to provide Lender with such information about the financial condition and operations of Borrower or Guarantor as Lender may, from time to time, reasonably request. Borrower also agrees promptly upon becoming aware of any Event of Default, or the occurrence or existence of any event or circumstance which, with the passage of time or the giving of notice or both, would constitute an Event of Default hereunder, to promptly provide notice thereof to Lender in writing. Borrower and Guarantor agree to furnish a quarterly report of their financial condition, including balance sheet, income statement, and statement of cash flows, as well as a Compliance Certificate in the form of Exhibit E, every 90 days from the date of execution of this Agreement. Following a Payment Default, Borrower and Guarantor agree to inform Lender, within five days of any material

Cashera Private Credit

22. change in financial condition, ownership, or management, or the bank accounts of the Borrower or Guarantor fall below thirty three percent of the balance represented by financial statements provided at funding.

23. **TELEPHONE COMMUNICATIONS**. Borrower and Guarantor hereby expressly consent to receiving calls and messages, including autodialed and pre-recorded message calls, SMS messages (including text messages), and other forms of electronic communication from Lender, its affiliates, marketing partners, agents and other Persons calling at Lender's request or on behalf, at any telephone numbers that Borrower and Guarantor have provided or may provide in the future or that are otherwise in Lender's or such other Persons' possession (including any cellular or mobile telephone numbers). Borrower and Guarantor agree that such communications may be initiated using an automated telephone dialing system.

24. **INDEMNIFICATION**. Borrower and Guarantor assume all risk and liability for, and shall defend, indemnify and keep Lender harmless on an after-tax basis from, any and all liabilities, obligations, losses, damages, penalties, claims, actions, suits, costs and expenses, including reasonable attorney fees and expenses, of whatsoever kind and nature imposed on, incurred by or asserted against Lender, in any way relating to or in respect to the Collateral or any part thereof, or relating to or arising out of Lender's security interest in the Collateral or the priority or perfection of such security interest, enforcing the Obligations, or in the prosecution or defense of any action or proceeding concerning any matter arising out of or in connection with this Agreement or any other document, agreement, or instrument between Borrower and Lender. Neither Borrower nor Guarantor shall be obligated to indemnify Lender under this Section for loss or liability caused directly and solely by the gross negligence or willful misconduct of Lender, as determined by a court of competent jurisdiction. In this Section 25, "Lender" also includes any of Lender's Representatives and any director, officer, employee, agent, successor or assign of Lender. Borrower's and Guarantor's obligations under this Section 25 shall survive the expiration, cancellation or termination of this Agreement.

25. **MERGERS, CONSOLIDATIONS OR SALES**. Borrower and Guarantor represent and agree that Borrower will not (i) merge or consolidate with or into any other business entity nor sell all or substantially all of its assets, or (ii) enter into any joint venture or partnership with any Person. Borrower further agrees not to alter its ownership without prior written permission from Lender.

26. **DEFAULT**. The occurrence of any one or more of the following events (each, an "Event of Default") shall constitute, without notice or demand, a default and an Event of Default under this Agreement and all other documents, agreements, instruments, and papers between Lender and Borrower and instruments and papers given Lender by Borrower, whether such documents, agreements, instruments, or papers now exist or hereafter arise: (i) Lender is unable to collect any payment through the Automatic Payment Plan on two consecutive due dates due, or Borrower fails to timely pay any Obligations on two consecutive dates due; (ii) Borrower or Guarantor, fails to fully comply with or promptly, punctually and faithfully perform or observe any term, covenant, condition, agreement, or promise within this Agreement, or does not notify Lender within reasonable time upon knowledge of a failure; (iii) any representation or warranty heretofore, now or hereafter made by Borrower or Guarantor to Lender herein or in any other document, instrument, agreement, application or paper proves to have been untrue or misleading when given in any material respect (except for representations or warranties qualified by materiality, then in any respect), as determined by Lender in its sole discretion; (iv) the occurrence of any event or circumstance creating a reasonable expectation that: (a) any obligation or indebtedness of Borrower to a creditor or lender other than Lender (including a landlord or lessor) could be accelerated, or (b) a creditor or lender other than Lender (including a landlord or lessor) has reason to enforce its security interest in or foreclose or collect upon the Collateral, notwithstanding that such acceleration or enforcement, foreclosure, or collection has not taken place; (v) the occurrence of any event or circumstance that would cause a lien creditor, as that term is defined in Chapter 9a-102 of the UCC (other than Lender), to take priority over Lender's security interest in the Collateral securing the Loan or any other Obligation; (vi) a filing against or relating to Borrower or Guarantor (unless consented to in writing by Lender) of (a) a federal tax lien in favor of the United States of America or any political subdivision of the United States of America, or (b) a state tax lien in favor of any state of the United States of America or any political subdivision of any such state; (vii) the occurrence of any event of default or event or circumstances that would, with the passage of time or the giving of notice or both, give rise to an event of default under any other document, agreement, or instrument between Lender and Borrower or instrument or paper given Lender by Borrower, whether such document, agreement, instrument, or paper now exists or hereafter arises (notwithstanding that Lender may not have exercised its rights upon default under any such other document, agreement, instrument or paper); (viii) any act by, against, or relating to Borrower or Guarantor, or either of their property or assets, which act constitutes the application for, consent to, or sufferance of the appointment of a receiver, trustee or other person, pursuant to court action or otherwise, over all, or any part of Borrower's or Guarantor's property; (ix) the granting of any deed of trust, mortgage, or execution of an assignment for the benefit of the creditors of Borrower or Guarantor, or the occurrence of any other voluntary or involuntary liquidation for Borrower or Guarantor or extension of debt agreement for Borrower; (x) Borrower or Guarantor becomes insolvent or bankrupt, or admits

its inability to pay its debts as they mature, or makes an assignment for the benefit of creditors, or applies for, institutes or consents to the appointment of a receiver, trustee or similar official for it or any substantial part of its property or any such official is appointed without its consent, or applies for, institutes or consents to any bankruptcy, or similar proceeding relating to it or any substantial part of its property under the laws of any jurisdiction or any such proceeding is instituted against it without stay or dismissal for more than sixty (60) days, or it commences any act amounting to a business failure or a winding up of its affairs, or it ceases to do business as a going concern; (xi) Borrower or Guarantor fails to pay any final judgment for the payment of money in an amount equal to or in excess of $25,000.00 unless and to the extent such is being appealed and Borrower or Guarantor, as applicable, has set aside adequate reserves as required by Lender; (xii) any levy or execution upon, or judicial seizure of, any portion of any item of Collateral, or any part or portion of the Collateral is seized or taken by a governmental body; (xiii) the filing of any complaint, application or petition by or against Borrower or Guarantor initiating any matter in which Borrower or Guarantor is or may be granted any relief from the debts of Borrower or Guarantor, as applicable, pursuant to the Bankruptcy Code or any other insolvency statute or procedure; (xvi) the offering by or entering into by Borrower or Guarantor of any composition, extension or any other arrangement seeking relief or extension for the debts of Borrower or Guarantor, or the initiation of any other judicial or non-judicial proceeding or agreement by, against or including Borrower or Guarantor that seeks or intends to accomplish a reorganization or arrangement with creditors; (xvii) the institution of any legal action or proceedings to enforce any Lien upon any portion of the Collateral that is not dismissed within fifteen (15) days after Borrower or Guarantor becomes aware thereof; (xviii) the occurrence of any event or circumstance with respect to Borrower or Guarantor such that Lender shall believe in good faith that the prospect of payment of all or any part of the Obligations or the performance by Borrower or Guarantor under this Agreement or any other document, agreement, or instrument between Lender and Borrower is impaired or there shall occur any material adverse change in the business or financial condition of Borrower or Guarantor (such event specifically includes, but is not limited to, taking additional financing from a credit card advance, cash advance company or an additional working capital loan without the prior written consent of Lender); (xix) the entry of any court order that enjoins, restrains or in any way prevents Borrower from conducting all or any part of its business affairs in the ordinary course of business; (xx) the occurrence of any uninsured loss, theft, damage or destruction to any Collateral that, individually or in the aggregate, has a fair market value in excess of $10,000.00, as determined by Lender in its reasonable discretion; (xxi) any act by, against, or relating to Borrower or Guarantor or either of their assets pursuant to which any creditor of Borrower or Guarantor seeks to reclaim or repossess or reclaims or repossesses all or a portion of Borrower's or Guarantor's assets; (xxii) the termination of existence, dissolution or liquidation of Borrower or Guarantor or the ceasing to carry on actively any substantial part of Borrower's or Guarantor's current business; (xxiii) this Agreement shall, at any time after its execution and delivery and for any reason, cease to be in full force and effect or shall be declared null and void, or the validity or enforceability hereof shall be contested by Borrower or Guarantor denies it has any further liability, indebtedness, or obligation hereunder prior to such time that the Obligations are indefeasibly paid and performed in full; (xxiv) Guarantor or any other Person signing a guaranty or support agreement in favor of Lender shall repudiate, purport to revoke or fail to perform its, his, or her obligations under such guaranty or support agreement in favor of Lender, or any non-natural Person Guarantor shall cease to exist; (xxv) any material change occurs in Borrower's ownership or organizational structure (acknowledging that any change in ownership will be deemed material when ownership is closely held); (xxvi) if Borrower is: (a) a sole proprietorship, the owner dies, (b) a trust, a trustor dies, (c) a partnership, any general or managing partner dies, (d) a corporation, any principal officer or 10% or greater shareholder dies, (e) a limited liability company, any manager or managing member dies, (f) any other form of business entity, any person(s) directly or indirectly controlling 10% or more of the ownership interests of such entity dies, unless Borrower or Guarantor provide a replacement for any such decedent who is satisfactory to Lender, in Lender's sole discretion, within thirty (30) days after the date on which such Person died, provided, however, that Borrower and Guarantor shall not have such thirty (30)-day period if such death has had or is reasonably expected to have a material adverse effect on Borrower's business, financial condition, results of operations, or prospects; (xxvii) Borrower fails to provide financial statements or bank access to Lender within 72 hours of request by Lender. Notwithstanding anything to the contrary set forth above in this Section, Lender's rights and remedies shall only be exercisable if there is a Payment Default.

27. **RIGHTS AND REMEDIES UPON DEFAULT**. Subject to applicable law, if there is a Payment Default at any time thereafter, Lender may exercise any one or more of the following rights and remedies:

Cashera
Private Credit

A. **Refrain from Disbursing Loan Proceeds**: Lender may refrain from disbursing Borrower's Loan proceeds to Borrower's Designated Checking Account.

B. **Debit Amounts Due From Borrower's Designated Checking Account**: Lender may debit through the Automatic Payment Plan from Borrower's Designated Checking Account all payments that Lender was unable to collect and/or the amount of any other Obligations that Borrower failed to pay.

C. **Accelerate Indebtedness**: Lender may declare the entire Obligations immediately due and payable, without notice to or consent from Borrower of any kind.

D. **Assemble Collateral**: Lender may require Borrower and/or Guarantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Borrower and/or Guarantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Borrower and/or Guarantor to take possession of and remove the Collateral, all in accordance with applicable law, including (without limitation) the UCC. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Borrower and Guarantor agree Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Borrower and Guarantor after repossession.

E. **Sell the Collateral**: Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Borrower or Guarantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Borrower, Guarantor and other Persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. Lender, Borrower, and Guarantor agree that ten (10) calendar days' prior notice is reasonable notice. However, no notice need be provided to any Person who, after an Event of Default occurs, enters into and authenticates an agreement waiving that Person's right to notification of sale. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Obligations secured by this Agreement. To the extent permitted by applicable law, all such expenses will become a part of the Obligations.

F. **Appoint Receiver**: Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Obligations. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Obligations by a substantial amount. Employment by Lender shall not disqualify a Person from serving as a receiver.

G. **Collect Revenues, Apply Accounts**: Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income and revenues therefrom and hold the same as security for the Obligations or apply it to payment of the Obligations in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose or realize on the Collateral as Lender may determine, whether or not any amount included within the Obligations is then due, as permitted by law. For these purposes, Lender may, on behalf of and in the name of Borrower and Guarantor, receive, open and dispose of mail addressed to Borrower or Guarantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment or storage of any Collateral. To facilitate collections, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

H. **Obtain Deficiency**: If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Borrower and/or Guarantor for any deficiency remaining on the Obligations due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Borrower and Guarantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

I. **Confession of Judgment**: Notwithstanding any other provision set forth in this Agreement, Lender may fill out and file a confession of judgment against Borrower substantially in form and substance attached hereto as Exhibit D (the "**Confession of Judgment Form**"). Borrower hereby agrees, and shall not make any claim to the contrary, that this remedy is permitted pursuant to applicable laws of the State of Utah.

J. **Other Rights and Remedies**: Lender shall have all the rights and remedies of a secured creditor under the provisions of the UCC. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity or otherwise.

K. **Election of Remedies**: Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower under the Agreement, after Borrower's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

28. **CONSENT TO JURISDICTION AND VENUE**. Borrower, Guarantor and Lender agree that any action or proceeding to enforce or arising out of this Agreement may be brought in the Third Judicial District Court, State of Utah or in the federal United States District Court for the District of Utah, and Borrower and Guarantor waive personal service of process. Borrower, Guarantor and Lender agree that venue is proper in such courts.

29. **JURY TRIAL WAIVER**. To the extent not prohibited by applicable law, Borrower, Guarantor, and Lender waive their right to a trial by jury of any claim or cause of action based upon, arising out of or related to this Agreement.

30. **NO WAIVER BY LENDER**. No delay or omission on the part of Lender in exercising any rights, remedies, privileges, or powers under this Agreement, shall be, or be construed or operate as, a waiver of same . Waiver of any right, remedy, privilege, or power on any one occasion shall not be construed as a waiver of the same. All Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently.

31. **ASSIGNMENT**. This Agreement shall bind and inure to the benefit of the respective successors and assigns of each of the parties hereto; *provided, however*, neither Borrower nor Guarantor may assign this Agreement or any rights or duties hereunder without Lender's prior written consent and any assignment attempted to be made without such consent shall be absolutely null and void. Lender may assign this Agreement and its rights and duties hereunder and no consent or approval by Borrower or Guarantor is required in connection with any such assignment. Lender reserves the right to sell, assign, transfer, negotiate or grant participations in all or any part of, or any interest in, Lender's rights and benefits hereunder. In connection with any assignment or participation, Lender may disclose all documents and information that Lender now or hereafter may have relating to Borrower or Guarantor. To the extent that Lender assigns its rights and obligations hereunder to another party, Lender thereupon shall be released from such assigned obligations and such assignment shall affect a novation between Borrower and Guarantor and such other party. Lender, in its capacity as servicer, or a successor servicer (if any), shall, acting solely for this purpose as a non-fiduciary agent of Borrower, maintain at one of its offices in the United States a copy of each assignment agreement delivered to it with respect to this Loan and a register for the recordation of the name of each assignee of this Loan, and principal and interest amount of this Loan owing to, such assignee pursuant to the terms hereof. The entries in such register shall be conclusive, and Borrower, Guarantor, Lender and each such assignee may treat each Person whose name is recorded therein pursuant to the terms hereof as a "Lender" hereunder for all purposes of this Agreement, notwithstanding notice to the contrary. The register maintained for this Loan shall be available for inspection by Borrower and any such assignee of this Loan, at any reasonable time upon reasonable prior notice to Lender, in its capacity as servicer, or the applicable successor servicer (if any). This Section 31 shall be construed so that this Loan is at all times maintained in "registered form" within the meaning of Sections 163(f), 871(h)(2) and 881(c)(2) of the Internal Revenue Code and any related Treasury regulations (or any other relevant or successor provisions of the Internal Revenue Code or of such Treasury regulations).

32. **INTERPRETATION**. Paragraph and section headings used in this Agreement are for convenience only, and shall not affect the construction of this Agreement. Neither this Agreement nor any uncertainty or ambiguity herein shall be construed or resolved against Lender or Borrower, whether under any rule of construction or otherwise. This Agreement has been reviewed by all parties, having had the opportunity to consult legal counsel and, shall be construed and interpreted according to the ordinary meaning of the words used so as to fairly accomplish the purposes and intentions of all parties hereto.

Cashera
Private Credit

33. **SEVERABILITY**. If one or more provisions of this Agreement or the application thereof is determined invalid, illegal or unenforceable in any respect in any jurisdiction, the same shall not invalidate or render illegal or unenforceable such provision or its application in any other jurisdiction nor any other provision of this Agreement or its application in any jurisdiction. If at any time usury laws would render any amounts due under this Agreement usurious under applicable law, then it is the Parties express intention that the Borrower and Guarantor not be required to pay any interest at a rate in excess of the maximum lawful rate, that the excess be deemed a payment of principal, and the provisions hereof shall immediately be reformed and the amounts thereafter decreased or if Obligations paid in full refunded to Borrower, so as to comply with the then applicable usury law, but so as to permit the recovery of the fullest amount otherwise due under this Note.

34. **NOTICES / SERVICE OF PROCESS.** Except as otherwise provided in this Agreement, all communications, requests, and notices required by or permitted under this Agreement must be in writing. Notice will be deemed given, and service of summons and complaint or other required legal documents will be deemed served: (i) when deposited, if sent in U.S. first-class mail, postage prepaid; (ii) when delivered, if delivered in person; (iii) when sent, if sent by registered mail, certified mail, by nationally recognized overnight courier, or electronic mail. Notice delivered hereunder to Borrower and Guarantor shall be sent to Borrower's or Guarantor's address or electronic mail address listed on the Signature Page of this Agreement that corresponds with such Person's signature, or to any other address as updated by Borrower or Guarantor, as applicable, in writing in accordance with this Section. Notice to Lender shall be sent to: PMB 1216, 2795 E. Cottonwood Parkway, Suite 300, Salt Lake City, UT 84121. Lender, Borrower, and Guarantor irrevocably consent to service of process in the manner provided above, which may differ from any manner expressly required or permitted by the Utah Rules of Civil Procedure, in addition to service. in accordance with Utah Rules of Civil Procedure. It shall be sufficient for Lender's counsel to file affirmation of service attesting to service in accordance with this Section.

35. **RECORDKEEPING AND AUDIT REQUIREMENTS**. Lender shall have no obligation to maintain any electronic records or any documents, or any other paper delivered to Lender by Borrower or Guarantor in connection with this Agreement other than as required by law. Borrower and Guarantor shall at all times keep accurate and complete records of Borrower's financial statements and accounts and the Collateral. At Lender's request, Borrower shall deliver to Lender: (i) current, complete, and accurate financial statements and schedules of accounts and general intangibles; and (ii) such other information regarding the Collateral as Lender may request. Lender, or any of Lender's Representatives, shall have the right to call any telephone numbers that Borrower has provided or may provide in the future or otherwise in Lender's possession (including any cellular or mobile telephone numbers) at intervals to be determined by Lender, and without hindrance or delay, to inspect, audit, check, and make extracts from any copies of the books, records, journals, orders, receipts, correspondence that relate to Borrower's financial statements and accounts and Collateral or other transactions between the parties thereto and the general financial condition of Borrower.

36. **GOVERNING LAW**. This Agreement and any claim, dispute or controversy (whether in contract, tort, or otherwise) at any time arising from or relating to this Agreement is governed by, and this Agreement will be construed in accordance with, applicable federal law and (to the extent not preempted by federal law) Utah law without regard to internal principles of conflict of laws. The legality, enforceability and interpretation of this Agreement and the amounts contracted for, charged and reserved under this Agreement will be governed by such laws.

37. **WAIVER OF NOTICES AND OTHER TERMS**. Except for any notices provided for in this Agreement, Borrower, Guarantor, and any other Person who has obligations pursuant to this Agreement, to the extent not prohibited by applicable law, hereby waive demand, notice of nonpayment, notice of intention to accelerate, notice of acceleration, presentment, protest, notice of dishonor and notice of protest. To the fullest extent permitted by applicable law, Borrower, Guarantor, and any other Person who has obligations pursuant to this Agreement also agrees: Lender is not required to file suit, show diligence in or evidence of enforcement or collection against Borrower, Guarantor, or any other Person who has obligations pursuant to this Agreement, or proceed against any Collateral; Lender may, but shall not be obligated to, substitute, exchange or release any Collateral; Lender may release any Collateral, or fail to realize upon or perfect Lender's security interest in any Collateral; Lender may, but shall not be obligated to, sue one or more Persons without joining or suing others; all, in each case of the foregoing, without impairing or losing Lender's security interest in the Collateral and without impairing, losing, forfeiting, or waiving any of Lender's other rights, remedies, privileges, or powers under this Agreement, under any other document, agreement, or instrument between Lender and Borrower or Guarantor, at law or in equity, or otherwise.

38. **MONITORING, RECORDING AND ELECTRONIC COMMUNICATIONS**. In order to ensure a high quality of service for Lender's customers, Lender may monitor and record telephone calls between Borrower or Guarantor, on the one hand, and Lender's employees or agents, on the other hand. Borrower and Guarantor acknowledge that Lender may do so and agree in advance to

Cashera Private Credit

any such monitoring or recording of telephone calls. Borrower and Guarantor also agree that Lender may communicate with Borrower and Guarantor electronically by e-mail.

39. **CONFIDENTIALITY**. Neither Borrower nor Guarantor shall make, publish or otherwise disseminate in any manner a copy of this Agreement or any public statement or description of the terms of this Agreement, except to its employees, advisors and similar Persons who have a legitimate need to know its contents.

40. **ENTIRE AGREEMENT**. Any application Borrower signed or otherwise submitted in connection with the Loan and all exhibits and other attachments to this Agreement, any other documents, agreements, and instruments required by Lender now or in the future in connection with this Agreement and Borrower's Loan are hereby incorporated into and made a part of this Agreement. This Agreement is the entire agreement of Borrower, Guarantor, and Lender with respect to the subject matter hereof and supersedes any prior written or verbal communications or instruments relating thereto.

41. **COUNTERPARTS; ELECTRONIC SIGNATURES**. This Agreement may be executed in one or more counterparts, each of which counterparts shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument. For purposes of the execution of this Agreement, signatures delivered by electronic or fax transmission shall be treated in all respects as original signatures.

42. **CUSTOMER SERVICE CONTACT INFORMATION**. If you have questions or comments about your Loan, you may contact us by (i) email at office@funderswest.com or (ii) mail sent to PMB 1216, 2795 E. Cottonwood Parkway, Suite 300, Salt Lake City, UT 84121.

43. **GRANT OF LICENSE TO USE LENDER'S WEBSITES**. Subject to Borrower's compliance with this Agreement and any terms of use policy with respect to Lender's website(s), Lender grants Borrower a nonexclusive, revocable, non-transferable, non-sublicensable, limited right and royalty-free license to use such website(s), effective solely during the term of the Loan and so long as an Event of Default has not occurred. The license granted to Borrower hereunder is personal, and no rights thereof may be transferred by Borrower to any Person without the express written approval of Lender. Lender may terminate the license granted hereunder without notice at any time after an Event of Default has occurred.

44. **GUARANTY**. Guarantor, jointly and severally (if more than one), absolutely and unconditionally guarantee the indefeasible, full, and prompt payment to Lender, including its successors and assignees, of (i) any and all Obligations incurred by Borrower pursuant to this Agreement, (ii) the full and prompt payment and performance when due of any and all additional obligations of Borrower to Lender under this Agreement, together with any replacements, supplements, renewals, modifications, consolidations, restatements and extensions thereof, and (iii) the full and prompt payment and performance of any and all other obligations of Borrower to Lender under any other agreements, documents or instruments now or hereafter evidencing, securing or otherwise relating to the Obligations (this **"Guaranty"**). Guaranty is a guarantee of payment and not of collection. Guarantor further agrees to repay the Obligations on demand, without requiring Lender first to enforce or collect or exercise any rights, remedies, privileges, or powers against Borrower. This is a guarantee of payment and performance, and not of collection. This is an absolute, unconditional, primary, and continuing obligation and will remain in full force and effect until all of the Obligations have been indefeasibly paid in full and Lender has terminated this Guaranty. This Guaranty shall be construed in accordance with the laws of the State of Utah, and shall inure to the benefit of Lender and its successors and assigns. To the extent not prohibited by applicable law, Guarantor waives its right to a trial by jury of any claim or cause of action based upon, arising out of or related to this Guaranty, this Agreement and all other documentation evidencing the Obligations, in any legal action or proceeding. Any such claim or cause of action shall be tried by court sitting without a jury. For each Guarantor that resides in a community property state, including, without limitation Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Texas, Washington and Wisconsin, or as otherwise requested by Lender, the spouse of such Guarantor shall execute, at any time upon demand, and agree to a Spousal Consent to Loan form. So long as any of the Obligations hereby guaranteed remain indefeasibly unpaid or undischarged (other than indemnification obligations which by their terms survive the indefeasible payment of the Obligations and the release of any Collateral) or Lender has any obligation to make the Loan, (i) Guarantor will not, by paying any sum recoverable hereunder (whether or not demanded by Lender) or by any means or on any other ground, claim any set off or counterclaim against Borrower in respect of any liability of Guarantor to Borrower, or (ii) in proceedings under federal bankruptcy law or insolvency proceedings of any nature, prove in competition with Lender in respect of any payment hereunder, or be entitled to have the benefit of, any counterclaim or proof of claim or dividend or payment by or on behalf of Borrower or the benefit of any other security for any of the Obligations which, now or hereafter, Lender may hold or in which it may have any share. Guarantor hereby expressly waives any right of contribution or reimbursement from or indemnity against Borrower or any other guarantor, whether at law or in equity, arising from any payments made by Guarantor, and Guarantor acknowledges that Guarantor has no right whatsoever to

proceed against Borrower or any other guarantor for reimbursement of any such payments for so long as any of the Obligations remain indefeasibly unpaid or undischarged (other than indemnification obligations which by their terms survive the indefeasible payment of the Obligations and the release of any Collateral).

45. **TRANSFERS TO TRUSTS**. Neither Borrower nor Guarantor shall transfer any assets into a trust, including any actual or purported spendthrift trust, asset protection trust or any other trust intended by its terms or purpose (or having the effect) to protect assets from creditors or to limit the rights of existing or future creditors, without the prior written consent of Lender, and any such transfer (i) shall constitute an Event of Default under this Agreement, (ii) shall have the effect of, and shall be deemed as a matter of law, regardless of that settlor's solvency, of having been made by that settlor with the actual intent of hindering and delaying and defrauding Lender as that settlor's creditor, and (iii) shall constitute a fraudulent transfer that is unenforceable and void (not merely voidable) as against Lender.

46. **CERTIFICATION AND SIGNATURES**. By executing this Agreement or authorizing the applicable Signatory below to execute on its behalf, Borrower and Guarantor independently certify that Borrower and Guarantor have received a copy of this Agreement and that Borrower and Guarantor have read, understood and agreed to be bound by its terms. Each Signatory below certifies that it is signing on behalf of Borrower or Guarantor, as applicable, in the capacity indicated below such Signatory's (and if Borrower or Guarantor is a sole proprietorship, in the capacity of the owner of such sole proprietorship) and that such Signatory is authorized to execute this Agreement on behalf of or in the stated relation to Borrower or Guarantor.

47. **USA PATRIOT ACT NOTIFICATION**. The following notification is provided to Borrower and Guarantor pursuant to Section 326 of the USA Patriot Act of 2001, 31 U.S.C. Section 5318:

> IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT. To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person or entity that opens an account, including any deposit account, treasury management account, loan, other extension of credit, or other financial services product. What this means for Borrower and Guarantor: When Borrower and Guarantor open an account, if Borrower or Guarantor is an individual, Lender will ask for Borrower's or Guarantor's name, taxpayer identification number, residential address, date of birth, and other information that will allow Lender to identify Borrower or Guarantor, and if Borrower or Guarantor is not an individual, Lender will ask for Borrower's or Guarantor's name, taxpayer identification number, business address, and other information that will allow Lender to identify Borrower or Guarantor. Lender may also ask, if Borrower or Guarantor is an individual, to see Borrower's or Guarantor's driver's license or other identifying documents, and if Borrower or Guarantor is not an individual, to see Borrower's or Guarantor's legal organizational documents or other identifying documents.

<u>**[Signatures Begin on Next Page]**</u>

Cashera Private Credit

# Signature Page

I, as a duly authorized agent of Borrower, and/or in my capacity as Guarantor, hereby affirm that I have read and understand the terms, covenants, conditions, agreements, and promises of, consent to, and agree to be bound by, this Agreement (inclusive of the Guaranty set forth therein) and the exhibits and attachments thereto.

**Borrower**

SIGNATURE: *Michael Shabsels*

**Name** MICHAEL SHABSELS

**Title** Owner

**Date** 07/04/26

**Guarantor #1:**

SIGNATURE: *Michael Shabsels*

**Name** MICHAEL SHABSELS

**Title** Individually, and on behalf of all Additional Guarantor Entities

**Date** 07/04/26

**Borrower**

SIGNATURE: *David Shabsels*

**Name** DAVID SHABSELS

**Title** Owner

**Date** 07/04/26

**Guarantor #2:**

SIGNATURE: *David Shabsels*

**Name** DAVID SHABSELS

**Title** Individually, and on behalf of all Additional Guarantor Entities

**Date** 07/04/26

**Borrower**

SIGNATURE

**Name**

**Title**

**Date**

**Guarantor #3:**

SIGNATURE

**Name**

**Title**

**Date**

*For Lender's Use Only: This Agreement has been received and accepted by Lender.*

**CASHERA PRIVATE CREDIT INC,**
a Utah corporation

SIGNATURE

**Name**

**Title**

**Date**

Cashera Private Credit

# Exhibit A

**Commercial Purpose Affidavit**
**and**
**Waiver of Federal and State Truth-in-Lending Disclosures**

In consideration of Lender granting the Loan secured by the Collateral, Borrower, on behalf of itself and Guarantor, hereby certifies and affirms to Lender that the proceeds of the Loan, and any and all documents, agreements, and instruments which are executed in connection therewith, are for business and commercial purposes only and not at all for any personal, family, household or other noncommercial purposes.

Borrower, on behalf of itself and Guarantor, hereby acknowledges its understanding that Federal and State Truth-in-Lending and Notice of Right of Rescission disclosures are not required for transactions in which the Loan proceeds are used solely for business and commercial purposes. Borrower, on behalf of itself and Guarantor, further acknowledges its understanding that by certifying that the Loan is entirely and solely for business and commercial purposes and not at all for any personal, family, household or other noncommercial purposes. Borrower, on behalf of itself and Guarantor, is waiving all rights to Federal and State Truth-in-Lending disclosures and a Notice of Right of Rescission to which it might otherwise have had if any part of the proceeds were to have been used for any personal, family, household or other noncommercial purposes.

IN WITNESS WHEREOF, Borrower, on behalf of itself and Guarantor, executes this Commercial Purpose Affidavit and Waiver of Federal and State Truth-in-Lending Disclosures as of the Effective Date.

| | | | |
|---|---|---|---|
| **Borrower:** | ISLAND LAKE CAMPCO LLC | | |
| **Name:** | DAVID ARTHUR SHABSELS | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 07/04/26 |

# Exhibit B

**AUTHORIZATION AGREEMENT FOR DIRECT DEPOSIT (ACH CREDIT) AND DIRECT PAYMENTS (ACH DEBITS)**

**This Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits) (this "ACH Authorization Form") is part of (and incorporated by reference into) the Business Loan and Security Agreement (as amended, restated, supplemented, or otherwise modified from time to time, the "Loan Agreement"). Borrower should keep this important legal document for Borrower's records. Terms used but not defined herein have the same meanings assigned to such terms in the Loan Agreement.**

**DISBURSEMENT OF LOAN PROCEEDS.** By executing this ACH Authorization Form, Borrower authorizes Lender to disburse the Loan proceeds less the amount of any applicable fees and in accordance with the Loan Agreement, if any, upon Loan approval by initiating an ACH credit, wire transfer or similar means to the checking account indicated herein (or a substitute checking account Borrower later identifies and is acceptable to Lender) (hereinafter referred to as the "**Designated Checking Account**") in the disbursal amount set forth in the table entitled "Your Loan Details" in the Loan Agreement less any fees and expenses owed to Lender, any amounts owed to Lender from any prior Advance, Disbursement, indebtedness, or loan, and any amounts used to pay off obligations owed by Borrower to a third-party creditor. This authorization is to remain in full force and effect until Lender has received written notification from Borrower of its termination in such time and in such manner as to afford Lender and Borrower's depository bank a reasonable opportunity to act on it.

**AUTOMATIC PAYMENT PLAN.** By executing this Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits), Borrower authorizes Lender: (i) to collect payments by initiating automated clearing house ("**ACH**") debit entries (each, an "**ACH Debit**") to the Designated Checking Account in the amounts and on the dates provided in the Payment Schedule set forth in the table entitled "Your Loan Details" in the Loan Agreement, and (ii) to resubmit any returned or failed ACH Debits for any previously scheduled payment(s) that was not paid as provided in the Payment Schedule, as permitted by law and NACHA rules of the Electronic Payments Association ("**NACHA Rules**"). This authorization constitutes Borrower's enrollment in Lender's "**Automatic Payment Plan**" and is to remain in full force and effect until Lender has received written notification from Borrower of its termination no less than three (3) Business Days before a scheduled payment. Lender may suspend or terminate Borrower's enrollment in the Automatic Payment Plan immediately if Borrower fails to keep Borrower's Designated Checking Account in good standing or if there are insufficient funds in Borrower's checking account to process any payment, or if Lender is otherwise unable to collect any amounts by ACH Debits that are owed to Lender under the Loan or under any other loan or extension of credit by Lender to Borrower. If Borrower revokes the authorization or Lender suspends or terminates Borrower's enrollment in the Automatic Payment Plan, Borrower still will be responsible for making timely payments pursuant to the alternative payment methods described in the Loan Agreement.

**PROVISIONAL PAYMENT.** Credit given by us to you with respect to an ACH credit entry (each, an "ACH Credit") is provisional until we receive final settlement for such entry through a Federal Reserve Bank. If we do not receive such final settlement, you are hereby notified and agree that we are entitled to a refund of the amount credited to you in connection with such entry, and the party making such entry to you (i.e., the originator of the entry) shall not be deemed to have paid you in the amount of such entry.

**ACH AUTHORIZATION FOR MATERIAL MISREPRESENTATIONS.** In the event that we determine that you made any material misrepresentation in your application (including, but not limited to, misrepresenting your business revenue, altering bank statements, misrepresenting the purpose of the funds, etc.) you authorize Lender to debit the Designated Checking Account the full Loan Amount less such amounts that have already been paid or debited thereunder. In the event that Lender exercises this option and debits such amount from your Designated Checking Account, you agree that all other terms of the Loan Agreement shall remain in full force and effect.

**NOTICE OF RECEIPT OF ENTRY.** Under the NACHA Rules, which are applicable to ACH transactions involving your account, we are not required to give next-day notice to you of receipt of an ACH item and we may not elect to do so. However, we will continue to notify you of the receipt of payments in the periodic statement we provide to you.

**BUSINESS PURPOSE ACCOUNT.** By executing this ACH Authorization Form, Borrower attests that the Designated Checking Account was established for business and commercial purposes and not primarily for personal, family or household purposes.

**ACCOUNT CHANGES.** Borrower agrees to promptly notify Lender in writing if there are any changes to the Designated Checking Account or to the routing numbers of the Designated Checking Account.

**MISCELLANEOUS.** Lender is not responsible for any fees, expenses, charges, or penalties directly or indirectly charged or imposed by Borrower's bank as the result of the ACH Credits or ACH Debits initiated under this ACH Authorization Form. The origination of ACH transactions to Borrower's account must comply with the provisions of applicable United States federal and state law. Borrower agrees to be bound by the NACHA Rules.

| Bank Information: BANK OF AMERICA, N.A. | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | [redacted] |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| Bank Information: TD BANK NA | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | [redacted] |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| Bank Information: Chase | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| Bank Information: Southern States Bank | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| Bank Information: TD Bank | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| Bank Information: Bank of America | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |

| | | | |
|---|---|---|---|
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: Bank of America | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: Bank of America | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: TD BANK NA | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | [redacted] |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: Bank of America | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: Unknown | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: Unknown | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: Unknown | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |

| | | | |
|---|---|---|---|
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: Bank of America | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: Busey Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: bankESB | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: Wayne Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: bankESB | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: FirstBank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: Bank of America | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |

| | | | |
|---|---|---|---|
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: bankESB** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: bankESB** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: First Carolina Bank** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: Addison Avenue Investment Svcs** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: Addison Avenue Investment Svcs** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: Ascend Bank** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: First Carolina Bank** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |

| | | | |
|---|---|---|---|
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: Arrow Bank** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: Windsor Federal Savings** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: Windsor Federal Savings** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: Bank of Clarke County Retail** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: Bank of New Hampshire** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: Bank of America** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: Bank of America** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |

| | | | |
|---|---|---|---|
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: FM Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: TFNB | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: First Merchants Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: ST Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: ST Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: First Financial Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: First Financial Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |

| | | | |
|---|---|---|---|
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: First Merchants Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: First Financial Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: Bank Iowa | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: Bank Iowa | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: First Financial Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: Fidelity Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: Fidelity Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |

| | | | |
|---|---|---|---|
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | Date | |

| **Bank Information: Fidelity Bank** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | Routing Number | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: Kennebec Savings Bank** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: Woodforest** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: MAX Credit Union** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: MAX Credit Union** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: Chase** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: First Financial Bank** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |

| | | | |
|---|---|---|---|
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: First Financial Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: Illinois National Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: Busey Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: First Financial Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: Hancock Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: TriState Capital Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: TriState Capital Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |

| | | | |
|---|---|---|---|
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | Date | |

| **Bank Information: Bank of America** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | Routing Number | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: Kennebec Savings Bank** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: Northern Bank Trust** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: Bank of America** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: Byline Bank** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: Old National** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: Byline Bank** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |

| | | | |
|---|---|---|---|
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: Old National | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: HomeTrust Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: Bank of New Hampshire | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: Community Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: Community Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: Bank of America | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: First National Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |

| | | | |
|---|---|---|---|
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: First National Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: First National Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: Union Savings Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: Bank of America | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: Bank of America | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: Addison Avenue Investment Svcs | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: Addison Avenue Investment Svcs | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |

| | | | |
|---|---|---|---|
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: Addison Avenue Investment Svcs** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: Bank of America** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: Addison Avenue Investment Svcs** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: Addison Avenue Investment Svcs** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: Addison Avenue Investment Svcs** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: First Carolina Bank** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: First Carolina Bank** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |

| | | | |
|---|---|---|---|
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: Bank of America | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: Bank of New Hampshire | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: PCSB Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: unknown | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: PCSB Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: Bank of America | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: Wayne Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |

| | | | |
|---|---|---|---|
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: Bank of America | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: Wayne Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: Bank of America | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: Heartland Bank and Trust Company | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: Peapack Private Bank Trust | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: Bank of America | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | |

| Bank Information: Bank of America | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |

| | | | |
|---|---|---|---|
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | Date | |

| **Bank Information: Bank of New Hampshire** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | Routing Number | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: Bank of America** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: Wayne Bank** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: Bank of America** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: First Carolina Bank** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: Bank of America** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: First Carolina Bank** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |

| | | | |
|---|---|---|---|
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: First Carolina Bank** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | Routing Number | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: First Carolina Bank** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: Bank of New Hampshire** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: Bank of New Hampshire** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: TFNB** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: NBT Bank** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: Berkshire Bank** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |

| | | | |
|---|---|---|---|
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | Date | |

| **Bank Information: Berkshire Bank** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | Routing Number | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: NBT Bank** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: NBT Bank** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: NBT Bank** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: Bank of America** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: Bank of America** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: NBT Bank** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |

| | | | |
|---|---|---|---|
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: NBT Bank** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: First Financial Bank** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: First Citizens Community Bank** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: Bank of America** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: bankHometown** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: bankHometown** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: unknown** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |

| | | | |
|---|---|---|---|
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | Date | |

| **Bank Information: Bank of New Hampshire** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | Routing Number | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: First Carolina Bank** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: First Carolina Bank** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: Bank of New Hampshire** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: First Carolina Bank** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: Provident Bank** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: Bank of New Hampshire** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |

| | | | |
|---|---|---|---|
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: Bank Iowa** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: Provident Bank** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: Bank Iowa** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: Bank of America** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: Bank of America** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: Hancock Bank** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

| **Bank Information: First Carolina Bank** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |

| | | | |
|---|---|---|---|
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | Date | |

| **Bank Information: First Carolina Bank** | | | |
|---|---|---|---|
| **Account Number** | [redacted] | Routing Number | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | |

**ISKA INVESTMENT AGREEMENT**

$2,998,000.00 March 31, 2026

WHEREAS, the undersigned as Maker has previously undertaken to invest on behalf of DAVID ARTHUR SHABSELS and MICHAEL A. SHABSELS the Participant the sum of $2,998,000.00 which are represented by this Iska Investments agreement.

NOW, THEREFORE, it is agreed that FOR VALUE RECEIVED the undersigned, jointly and severally, promise to PAY TO THE ORDER OF MARK ALLAYEV (the "Lender") the principal sum of TWO MILLION NINE HUNDRED AND NINETY EIGHT THOUSAND DOLLARS AND 00/100 ($2,998,000.00) together with such additional payments as set forth below, all payable in lawful money of the United States of America, to be repaid as set forth below.

The Maker acknowledges that this investment is made in accordance with Jewish Law, in the form of an Iskah Investment Note. The Iskah Investment Agreement is an investment partnership [not a loan] as defined by Jewish Law. Half the money received by the Maker is a standard loan on which the Maker agrees to accept all responsibility for losses, and is entitled to all profits. The remaining half of the money will be the responsibility of the Participant who will accept all losses and receive all profits. The Maker obligates himself to invest the Principal in solid investments (the "Investments") that are likely to produce double the amount of Principal (the "Profits") from which the Maker stipulated below to pay the Participant to free Maker from an oath under Jewish Law. All profits and losses from such Investments will be split equally between Maker and Participant. One half of the Profits or Losses due to the Participant shall be known as "Shared Profits or Losses". The Maker acknowledges that the Maker's anticipation to receive one half of the Profits is the consideration that Maker to undertake the Maker's investment duty as set forth above.

The Maker will not be believed about the loss of principal without the testimony of two witnesses that are valid in a Jewish Orthodox Court of Law. Also, the Maker will not be believed about the amount of Shared Profits without taking an oath, known as a "Shevuak Chamura" in an agreed upon Orthodox Synagogue while holding a Torah Scroll at the time of the reading from the Torah.

The Maker may free himself from all obligations including the taking of an oath and the requirements to bring forth witnesses, by paying the Participant the entire Principal plus a fee of $998,000.00 less any draws previously made. If in the event the Maker fails to make payment of the Principal and Shared Profits or the Fee when same was to have be paid, the Maker shall make pay additional fees calculated as (the Principal times (8 %/360) times the number of days from the Maturity date) until actually paid in anticipation that the Maker will continue to invest any outstanding balance of the Principal in accordance with the above conditions. If in the event the Maker prepays the principal before same becomes due than the fee will be reduced by the same factor (the Principal times (8 %/360) times the number of days from date of payment until the Maturity date).



MS MS

In the event of a conflict or discrepancy in the terms of this Investment Note and any other document between the Maker and Participant, the terms set forth herein shall prevail. This Agreement may be signed in counterpart and facsimile signatures shall be acceptable. This Note shall be governed under applicable Orthodox Jewish Law. The Maker and Participant agree to submit any dispute to a Beth Din to be selected by the Participant in the county in which the Participant resides or has its principal place of business. Either party may bring the applicable action in the court of competent jurisdiction for the State and County where the Participant resides or has its principal place of business to enforce the decision to Bet Din. In the event the Maker elects not to submit himself to the Beth Din as provided herein, then in that event, the Maker shall be deemed to have elected not to take an oath or bring witnesses and has elected to return the Principal, to pay the Fee or Fees, if applicable, and the Participant may proceed without further notice to the Maker to enforce Participants rights hereunder. If any installment of Principal or Fees set forth above is not paid when due, or upon any default in the performance of any of the covenants or agreements of this Investment Note, or of any instrument now or hereafter evidencing or securing this Investment Note, the Principal and Fees remaining unpaid, shall, at the option of the Participant, become immediately due, payable and collectible. Each Maker or endorser severally waives demand, protest and notice of maturity, non-payment or protest and all requirements necessary to hold each of them liable as Makers and endorsers. Each Maker and endorser further agree, jointly and severally, to pay all costs and collection, including reasonable attorney fees in the event of default in any payment due hereunder, or in case it becomes necessary to protect the security, if applicable, whether suit be brought on or not.

Michael Shabsels
____________________________
MICHAEL SHABSELS,
BORROWER/PARTICIPANT

Agreed and accepted

LENDER

David Shabsels
____________________________
DAVID ARTHUR SHABSELS
BORROWER/PARTICIPANT

____________________________
MARK ALLAYEV,
LENDER/MAKER

# 3.31.26 ISLAND LAKE CAMPCO LLC (REVISED_FINAL)_fieldsop_compressed (1)

Final Audit Report 2026-04-07

| | |
|---|---|
| Created: | 2026-04-01 |
| By: | Craig Clark [redacted] |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAmdL_w3t6PW6aAgfKE3phuy4BECU5BpcN |

## "3.31.26 ISLAND LAKE CAMPCO LLC (REVISED_FINAL)_fieldsop_compressed (1)" History

Document created by Craig Clark [redacted]
2026-04-01 - 7:30:47 PM GMT- IP address: 160.72.186.130

Document emailed to Michael Shabsels [redacted] for signature
2026-04-01 - 7:31:14 PM GMT

Document emailed to David Shabsels [redacted] for signature
2026-04-01 - 7:31:14 PM GMT

Email viewed by David Shabsels [redacted]
2026-04-01 - 7:39:47 PM GMT- IP address: 104.28.32.105

Email viewed by Michael Shabsels [redacted]
2026-04-02 - 12:07:38 PM GMT- IP address: 71.117.86.250

Email viewed by Michael Shabsels [redacted]
2026-04-07 - 3:55:00 PM GMT- IP address: 173.70.18.192

Email viewed by David Shabsels [redacted]
2026-04-07 - 4:29:30 PM GMT- IP address [redacted]

Document e-signed by David Shabsels [redacted]
Signature Date: 2026-04-07 - 4:59:28 PM GMT - Time Source: server- IP address: 173.70.18.192

Document e-signed by Michael Shabsels [redacted]
Signature Date: 2026-04-07 - 5:02:44 PM GMT - Time Source: server- IP address: 173.70.18.192

Agreement completed.
2026-04-07 - 5:02:44 PM GMT

# EXHIBIT B

# Business Loan and Security Agreement

| BORROWER AND GUARANTOR INFORMATION | | | |
|---|---|---|---|
| Borrower Legal Name(s) | ISLAND LAKE CAMPCO LLC | | |
| **DBA** | ISLAND LAKE CAMPCO | **EIN** | 26-4569764 |
| **Entity Type** | Limited Liability Company | **Where Organized** | NY |
| **Borrower Address** | 200 OLD TARRYTOWN RD , WHITE PLAINS, NY 10603 | | |
| **Owners of Borrower, each of whom shall be a Guarantor** (Print and fill out this page as many times as needed to include all owners) | **Name: DAVID ARTHUR SHABSELS** | **Title:** Owner | |
| | **SSN:** [redacted] | | |
| | **Address:** 60 CARTHAGE ROAD, SCARSDALE, NY, 10583 | | |
| | **Email:** [redacted] | **Phone:** [redacted] | |
| | Name: MICHAEL A SHABSELS | Title: Owner | |
| | SSN: [redacted] | | |
| | **Address:** 444 EAST 58TH STREET, NEW YORK, NY, 10022 | | |
| | **Email:** [redacted] | **Phone:** [redacted] | |
| **Additional Guarantor(s)** | DAVID ARTHUR SHABSELS | SSN: [redacted] | |
| | MICHAEL A SHABSELS | SSN: [redacted] | |
| | 1000 ACRES HOLDINGS LLC | EIN: 81-1043826 | |
| | 1101 EAST GLENDALE BOULEVARD REAL ESTATE LLC | EIN: 83-3351215 | |
| | 1101 EAST GLENDALE BOULEVARD LEASING LLC | EIN: 83-3351243 | |
| | 11200 WEST FLORISSANT AVENUE LEASING LLC | EIN: 82-4905809 | |
| | 11200 WEST FLORISSANT AVE REALTY LLC | EIN: 82-4905886 | |
| | 1133 NORTHWEST L STREET LEASING LLC | EIN: 82-2625014 | |
| | 1133 NORTHWEST L STREET REAL ESTATE | EIN: 82-2624981 | |
| | 1135 EAST CHOCOLATE AVENUE LEASING LLC | EIN: 84-2579201 | |
| | 1135 EAST CHOCOLATE AVENUE REAL ESTATE LLC | EIN: 84-2579163 | |
| | 12 CAMBRIDGE DRIVE LEASING LLC | EIN: 81-5175776 | |
| | 12 CAMBRIDGE DRIVE REALTY LLC | EIN: 81-5175680 | |
| | 1323 AUGUSTA WEST PARKWAY LEASING LLC | EIN: 92-1244710 | |
| | 1323 AUGUSTA WEST PARKWAY REAL ESTATE LLC | EIN: 92-1244773 | |
| | 1401 US HIGHWAY 498 REAL ESTATE LLC | EIN: 82-5066304 | |
| | 149 EMERALD STREET LEASING LLC | EIN: 82-5343959 | |
| | 149 EMERALD STREET REAL ESTATE LLC | EIN: 82-5327417 | |
| | 1600 EASTCHASE PARKWAY LEASING LLC | EIN: 93-1789816 | |
| | 1600 EASTCHASE PARKWAY REAL ESTATE LLC | EIN: 93-1789866 | |
| | 1750 WELLS REAL ESTATE LLC | EIN: 82-0826890 | |
| | 1800 & 4215 OKLAHOMA REALTY LLC | EIN: | |



(PV-05272026 -V1) Owner / Guarantor Initial: DS | MS | ________

| | | |
|---|---|---|
| | 1912 MEMORIAL DRIVE REAL ESTATE LLC | EIN: 82-5010662 |
| | 194 WASHINGTON AVE. REAL ESTATE LLC | EIN: 82-4850880 |
| | 194 WASHINGTON AVENUE LEASING LLC | EIN: |
| | 200 GREAT POND DRIVE LEASING LLC | EIN: 87-3560779 |
| | 200 GREAT POND DRIVE REAL ESTATE LLC | EIN: 87-3560686 |
| | 201 CENTRE DRIVE LEASING LLC | EIN: 83-2737540 |
| | 201 CENTRE DRIVE REAL ESTATE LLC | EIN: 83-2737614 |
| | 2195 HARLEM ROAD LEASING LLC | EIN: 99-3056050 |
| | 2195 HARLEM ROAD REAL ESTATE LLC | EIN: 99-3056110 |
| | 2203 GRAND CANAL BOULEVARD LEASING LLC | EIN: 83-0753729 |
| | 2203 GRAND CANAL BOULEVARD REAL ESTATE LLC | EIN: 83-0753696 |
| | 2302 WINDSONG DRIVE LEASING LLC | EIN: 99-4945747 |
| | 2434 SOUTH INTERSTATE 35E LEASING LLC | EIN: 84-2592802 |
| | 2434 SOUTH INTERSTATE 35E REAL ESTATE LLC | EIN: 84-2592795 |
| | 250 PROGRESSIVE LEASING LLC | EIN: 81-4072305 |
| | 250 PROGRESSIVE REAL ESTATE LLC | EIN: 81-4067118 |
| | 2547 BRINDLE DRIVE LEASING LLC | EIN: 83-3369349 |
| | 2547 BRINDLE DRIVE REAL ESTATE LLC | EIN: 83-3369313 |
| | 2974 COPPERCREEK ROAD LEASING LLC | EIN: 93-3000296 |
| | 2974 COPPERCREEK ROAD REAL ESTATE LLC | EIN: 93-3000380 |
| | 3385 NEWMARK DRIVE LLC | EIN: 82-2145036 |
| | 3413 TITTABAWASSEE ROAD LEASING LLC | EIN: 87-3059813 |
| | 3413 TITTABAWASSEE ROAD REAL ESTATE LLC | EIN: 87-3059715 |
| | 348 MORRIS AVENUE REAL ESTATE LLC | EIN: 33-1350652 |
| | 400 GREENS ROAD LEASING LLC | EIN: 92-3694982 |
| | 400 GREENS ROAD REAL ESTATE LLC | EIN: 92-3695109 |
| | 4328 BAY ROAD REAL ESTATE LLC | EIN: 88-4053416 |
| | 4328 BAY ROAD LEASING LLC | EIN: 88-4053346 |
| | 44 SOUTHPOINT DRIVE LEASING LLC | EIN: 92-3855357 |
| | 44 SOUTHPOINT DRIVE REAL ESTATE LLC | EIN: 92-3855416 |
| | 45 COMMERCE DRIVE LEASING LLC | EIN: 87-4536719 |
| | 45 COMMERCE DRIVE REAL ESTATE LLC | EIN: 87-4536789 |
| | 4650 WESTWAY PARK BOULEVARD LEASING LLC | EIN: 87-4579779 |
| | 4650 WESTWAY PARK BOULEVARD REAL ESTATE LLC | EIN: 87-4612298 |
| | 4800 USH 280 LEASING LLC | EIN: 82-1961191 |
| | 4800 USH 280 REAL ESTATE LLC | EIN: 82-1961263 |



Owner / Guarantor Initial: ______ | ______ | ______

| | | |
|---|---|---|
| | 55 MERLINO DRIVE LEASING LLC | EIN: 93-3069500 |
| | 55 MERLINO DRIVE REAL ESTATE LLC | EIN: 93-3069577 |
| | 5707 MACCORCKLE AVENUE LEASING LLC | EIN: 84-2606287 |
| | 5707 MACCORKLE AVENUE REAL ESTATE LLC | EIN: 84-2606261 |
| | 635 GRAVOIS REAL ESTATE LLC | EIN: 84-2668514 |
| | 635 GRAVOIS ROAD LEASING LLC | EIN: 84-2668532 |
| | 7335 GLADIOLUS LLC | EIN: 81-1036615 |
| | 7650 FM 78 LEASING LLC | EIN: 84-2653914 |
| | 7650 FM 78 REAL ESTATE LLC | EIN: 84-2653902 |
| | 771 CORPORATE DRIVE LEASING LLC | EIN: 86-1875920 |
| | 771 CORPORATE DRIVE REAL ESTATE LLC | EIN: 86-1875981 |
| | 8014 BAYBERRY ROAD REAL ESTATE LLC | EIN: 82-0841994 |
| | 830 COUNTY ROAD 64 LEASING LLC | EIN: 99-4233460 |
| | 830 COUNTY ROAD 64 REAL ESTATE LLC | EIN: 99-4233541 |
| | 9 FARM SPRING LEASING LLC | EIN: 83-0921416 |
| | 9 FARM SPRING REAL ESTATE LLC | EIN: 83-0921353 |
| | 90 PLEASANT VALLEY STREET LEASING LLC | EIN: 88-1279898 |
| | 90 PLEASANT VALLEY STREET REAL ESTATE LLC | EIN: 88-1279954 |
| | ACHIM LANDCO LLC | EIN: 45-5116363 |
| | ACHIM OPERATINGCO LLC | EIN: 45-5116413 |
| | BAHS HOLDINGS LLC | EIN: 74-3230074 |
| | BAHS OPERATING INC | EIN: 74-3230075 |
| | BANNER LANDCO LLC | EIN: 46-4143422 |
| | BANNER OPERATINGCO LLC | EIN: 46-4138660 |
| | BAYBERRY WELLS LLC LEASING LLC | EIN: 82-0826821 |
| | BELGRADE LAKES SUMMER CAMP LLC | EIN: 45-0949107 |
| | BLUESTAR LANDCO LLC | EIN: 45-4400233 |
| | BLUESTAR OPERATINGCO LLC | EIN: 45-4400170 |
| | Camp Med-O-Lark Inc | EIN: 20-5014808 |
| | Chateaugay Campco LLC | EIN: 88-2103193 |
| | Chateaugay Landco LLC | EIN: 88-2103300 |
| | Club Getaway Landco LLC | EIN: 45-4740807 |
| | Club Getaway Operatingco LLC | EIN: 45-4740799 |
| | Country Roads Landco LLC | EIN: 46-3694321 |
| | Country Roads Operatingco LLC | EIN: 46-3689261 |
| | DAMIS Holdings LLC | EIN: 26-4569764 |
| | Eagle's Landing Day Camp LLC | EIN: 45-3645311 |

| | | |
|---|---|---|
| | East Hartford Properties Leasing LLC | EIN: 88-2263382 |
| | East Hartford Properties Real Estate LLC | EIN: 88-2263406 |
| | Fairplain Plaza Leasing LLC | EIN: 88-4060163 |
| | Fairplain Plaza Real Estate LLC | EIN: 88-4060184 |
| | Green Lane Landco LLC | EIN: 45-2798554 |
| | Green Lane Operatingco LLC | EIN: 45-2798472 |
| | Greenvilleland LLC | EIN: 26-4101514 |
| | Iafalandco LLC | EIN: 45-0968508 |
| | Iafaoperatingco LLC | EIN: 45-0968199 |
| | Island Lake Campco LLC | EIN: 86-1798046 |
| | Island Lake Landco LLC | EIN: 86-1798144 |
| | Kiwi Landco LLC | EIN: 46-2008687 |
| | Kiwi Operatingco LLC | EIN: 46-2004866 |
| | Lavco LLC | EIN: 35-2323566 |
| | Lavland LLC | EIN: 35-2323567 |
| | Maine Wekeela Co LLC | EIN: 26-3837189 |
| | Malka Operatingco LLC | EIN: 46-4390589 |
| | Matteson Center Leasing LLC | EIN: 84-2623061 |
| | Matteson Center Real Estate LLC | EIN: 84-2623043 |
| | Meadowbrook Landco LLC | EIN: 81-2291751 |
| | Meadowbrook Operatingco LLC | EIN: 81-2291099 |
| | Mesorahco LLC | EIN: 36-4643144 |
| | Mesorahland LLC | EIN: 36-4643146 |
| | Mill Road Loandco LLC | EIN: 45-3645276 |
| | Mogenavco LLC | EIN: 45-3694326 |
| | Mogenavland LLC | EIN: 27-3389041 |
| | Mohawk Country Home School Inc | EIN: 13-2565981 |
| | Mohawkcampco LLC | EIN: 27-1471724 |
| | Mohawkland LLC | EIN: 27-1471693 |
| | Oklahoma Wilshire Lofts Leasing LLC | EIN: 87-4428886 |
| | Oklahoma Wilshire Lofts Real Estate LLC | EIN: 87-4428927 |
| | Pine Forest Campco LLC | EIN: 88-2442248 |
| | Pine Forest Landco LLC | EIN: 88-2442329 |
| | Poland Landco LLC dba Camp North Star | EIN: 47-3844127 |
| | Poland Landco LLC | EIN: 47-3857131 |
| | RDM Camps LLC | EIN: 26-1952560 |
| | Rocking Horse Ranch Landco LLC | EIN: 99-0846675 |

| | | |
|---|---|---|
| | Rocking Horse Ranch Operatingco LLC | EIN: 99-0846577 |
| | Rolling Hills Landco LLC | EIN: 88-2343087 |
| | Rolling Hills Operatingco LLC | EIN: 88-2342968 |
| | Simad Holdings LLC | EIN: 46-0781502 |
| | Shab Holdings LLC | EIN: 74-3230077 |
| | Shab Operating Inc | EIN: 74-3230078 |
| | South Loop West Leasing LLC | EIN: 92-1218342 |
| | South Loop West Real Estate LLC | EIN: 92-1218377 |
| | Splashdown Beach Landco LLC | EIN: 99-0857798 |
| | Splashdown Beach Operatingco LLC | EIN: 99-0857769 |
| | Stony Creek Operating Co LLC | EIN: 81-1822864 |
| | Summit Camp LLC | EIN: 27-0288081 |
| | Turnpike Road Holdings LLC | EIN: 92-1191990 |
| | Washington Lake LLC | EIN: 20-8813633 |
| | Waukeela Landco LLC | EIN: 46-5389007 |
| | Waukeela Operatingco LLC | EIN: 46-5388979 |
| | Wekeeland LLC | EIN: 26-3837359 |
| | Willow Lake Day Camp LLC | EIN: 45-5167411 |
| | Willow Lake Land Corp | EIN: 22-3272383 |
| | Willow Lake Land Corp | EIN: 22-3272383 |
| | WM Camp LLC | EIN: 27-1682216 |
| | WM Land LLC | EIN: 27-1766957 |
| | Woodlands Eagle Timber Leasing LLC | EIN: 99-4915326 |
| | Woodlands Eagle Timber Real Estate LLC | EIN: 99-4915374 |

Funders West

This Business Loan and Security Agreement (as amended, restated, supplemented, or otherwise modified, this "**Agreement**"), together with all exhibits and other attachments hereto, governs the business loan (the "**Loan**") made by Lender to Borrower effective 05/27/2026. Please read this Agreement and keep it for your reference. In this Agreement, the words "**Borrower**", "**you**", "**your**" and other words of similar import each mean the Person or Persons, collectively and individually, jointly and severally, identified as "Borrower" on the signature page of this Agreement. Each Person identified on the signature page of this Agreement as a "Guarantor", and all such Persons, shall be referred to herein individually and collectively (as the context requires) as "**Guarantor**". The words "**Lender**", "**we**", "**us**", "**our**" and other words of similar import each mean Funders App, LLC dba Funders West, a Utah limited liability company with a mailing address of 30 E. Broadway, Suite 203-1216, Salt Lake City, UT 84111, and its successors and assigns. "**Person**" means an individual, corporation, association, partnership, an estate, a trust and any other entity or organization. Each disbursement of the Loan is an "**Advance**."

| YOUR LOAN DETAILS | |
|---|---|
| **Loan Amount:** | $4,500,000.00 |
| **Origination Fee:**<br>(Deducted at time of disbursement) | $90,000.00 |
| **Previous Balance** | |
| **Advance Amount:**<br>(Loan Amount less Origination Fee) Note that the Advance Amount may not be the amount deposited to your Designated Checking Account. The amount that will be deposited to your Designated Checking Account will be reduced by costs, fees and expenses owed to Lender, any amounts owed to Lender from any prior Disbursement, indebtedness, or loan, and any amounts used to pay off obligations owed by Borrower to a third-party creditor. | $4,410,000.00 |
| **Maturity Date:** | 01/07/2027 |
| **Payment Amount:** | *(See payment schedule addendum.)* |
| **Payment Schedule:**<br>The term "**Business Day**" means any Monday through Friday, except for Federal Reserve holidays or state holidays on which Lender is closed. | *(See payment schedule addendum.)* |
| **Total Interest Expense:**<br>(Does not include any costs, expenses or fees, or default fees or default interest) | $2,250,000.00 |
| **Total Repayment Amount:**<br>(Disbursement Amount plus Total Interest Expense) | $6,750,000.00 |

Funders West



Owner / Guarantor Initial: DS | MS | ______

| INTEREST, FORGIVENESS AND OTHER FEES | | | |
|---|---|---|---|
| **Interest Forgiveness:** | Unpaid interest on this Loan may be forgiven by Lender in Lender's sole discretion if: (a) Borrower is current on its scheduled payments with respect to this Loan (including payment of any fees or expenses), and (b) while this Loan is outstanding, Borrower enters into a business loan and security agreement for a new qualifying term loan with Lender, a portion of the proceeds of which are used to repay the remaining portion of the Loan Amount in whole. | | |
| **Other Fees:** (with the Origination Fee collectively the "Fees") | **Type of Fee** | **Amount of Fee** | **Other Comments** |
| | **Underwriting Fee** | $0 | |
| | **Processing Fee** | $90,000.00 | |
| | **Returned Payment Fee**[1] | $35.00 | |
| | **Monthly Maintenance Fee** | | |
| | **Default Fee** | 25% | Twenty Five Percent of Outstanding Balance at Date of Default |
| | **UCC Filing Fee** | $150.00 | |
| | **Late Fee** | 35% | |
| | **Stacking Fee** | 10% | - Equaling ten (10) percent of the Loan Amount for each incidence of stacking. |

| CERTAIN DISCLOSURES | |
|---|---|
| **Loan Pricing Disclosure** | Lender uses a system of risk-based pricing to determine interest charges and fees. Risk-based pricing is a system that evaluates the risk factors of your application and adjusts the interest rate up or down based on this risk evaluation. This Loan may be a higher-cost loan than loans that may be available through other lenders. Borrower understands that Lender may make loans to other Persons on other terms, at other amounts and interest rates, and with other fees in its sole discretion, subject only to applicable law. |
| **Loan For Specific Purposes Only** | The proceeds of the requested Loan may solely be used for commercial purposes, as set forth and certified and affirmed by Borrower in the Commercial Purpose Affidavit and Waiver of Federal and State Truth-in-Lending Disclosures attached hereto as Exhibit A (the "**Commercial Purpose Affidavit**"). IN ADDITION, THE LOAN WILL NOT BE USED FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES. Borrower understands that Borrower's agreement not to use the Loan proceeds for personal, family or household purposes means that certain important duties imposed upon entities making loans for personal, family or household purposes, and certain important rights conferred upon Persons obtaining such loans, pursuant to federal or state law will not apply to the Loan or the Agreement. |

[1]To be paid automatically if any electronic payment processed on Borrower's Loan is returned unpaid or dishonored for any reason, including insufficient funds or stop payment on account.



Owner / Guarantor Initial: DS | MS | ________

The calculations below involve certain key assumptions about the Loan, including that the Loan is paid off in its entirety according to the agreed Payment Schedule and that no payments are missed. These calculations are provided as a convenience only, and Lender's records will, absent manifest error, be conclusively presumed to be correct and accurate and constitute an account stated between Borrower and Lender. To the extent Lender's records differ from the below metric calculations and metric explanations, Lender's records shall control. The amounts below may vary from the actual amounts.

| Loan Amount | Advance Amount (minus Fees and other expenses withheld)[2] | Repayment Amount | Maturity Date |
|---|---|---|---|
| $4,500,000.00 | $4,410,000.00 | $6,750,000.00 | 01/07/2027 or such earlier date on which (i) the Loan is accelerated pursuant to the terms of this Agreement or otherwise, or (ii) the term of the Loan terminates or expires. |

| METRIC | METRIC CALCULATION | | METRIC EXPLANATION |
|---|---|---|---|
| Total Cost of Capital | Interest Expense: | $2,250,000.00 | This is the total amount that you will pay in interest and certain required fees incurred in connection with the making of the Loan, but this amount does not include fees and other charges you can avoid, such as late payment fees, returned Total Cost of Capital payment fees, and Default Fees. |
| | Loan Fee: | | |
| | Origination Fee: | $90,000.00 | |
| | Other Fees: | | |
| | ***Total Cost of Capital*** | ***$2,340,000.00*** | |
| Annual Percentage Rate (APR) | Your Loan will have 32 payments paid on a weekly basis of: | *(See payment schedule addendum.)* | This is the cost of the Loan, including total interest, Fees, and other fees, expressed as a yearly rate. APR takes into account the amount and timing of capital you receive, fees you pay, and the periodic payments you make. This is provided as a convenience only. While APR can be used for comparison purposes, it is not an interest rate and is not used to calculate the Total Interest Expense. |
| | *APR* | *145.13%* | |
| Average Monthly | Repayment Amount: | $6,750,000.00 | This is the average monthly repayment amount of the Loan, which does not include fees and other charges you can avoid, such as late payment fees, returned payment fees and the default fee.[2] The actual repayment frequency for the Loan will be weekly. This is an estimate for comparison purposes only. |
| | Term (in months): | ÷ 8 months | |
| | *Average Monthly Payment:* | *$843,750.00* | |
| Cents on the Dollar (excluding fees) | Interest Expense or Loan Fee: | $2,250,000.00 | This is the total amount of interest or Loan Fee paid per dollar borrowed. This amount is exclusive of fees. This is provided as a convenience only. |
| | Loan Amount: | ÷ $4,500,000.00 | |
| | *Cents on the Dollar: (excluding fees)* | *50¢* | |
| Prepayment | Does prepayment of this Loan result in any new fees or charges? | | *Yes* *(see "Prepayment" below)* |
| | Does prepayment of this Loan decrease the total interest or Loan Fees owed? | | **Prepayment within the following times are calculated at the following factor rates:** **7 calendar days: $4,860,000.00**; **14 calendar days: $6,120,000.00** *(see "Prepayment" above for the interest or fee reduction amount)* |

[2] The Disbursement Amount is the amount of capital that Borrower receives and may be different from the Loan Amount. The Disbursement Amount is net of Fees and other expenses withheld from the Loan Amount. A portion of the Disbursement Amount may be used to pay Fees and other expenses owed to Lender, any amounts owed to Lender from any prior Disbursement, indebtedness, or loan, and any amounts used to pay off obligations owed by Borrower to a third-party creditor APR should be considered in conjunction with the Total Cost of Capital. APR may be most useful when comparing financing solutions of similar expected duration. APR is calculated here according to the principles of 12 C.F.R. § 1026 ("Regulation Z"), using 52 payment periods of equal length and 52 payment dates per year for weekly pay products, and 252 payment dates per year for daily pay products. Neither the inclusion of APR nor reference to Regulation Z herein subjects this Agreement or the Loan thereto, but such reference is provided as a courtesy only.



(PV-05272026 -V1) Owner / Guarantor Initial: DS | MS | ________

1. **EFFECTIVE DATE**. This Agreement begins on the date that corresponds with Lender's signature on the signature page of the Agreement (the **"Effective Date"**). Borrower understands and agrees that Lender may postpone, without penalty, the disbursement of amounts to Borrower until all required security interests have attached and been validly perfected and Lender has received all required personal guarantees or other documentation reasonably required by Lender.

2. **AUTHORIZATION**. Borrower agrees that the Loan made by Lender to Borrower shall be conclusively deemed to have been authorized by Borrower and to have been made pursuant to a duly authorized request on its behalf.

3. **LOAN FOR SPECIFIC PURPOSES ONLY.** The proceeds of the requested Loan may solely be used for specific commercial purposes, and not for any other purposes. In addition, as set forth and certified and affirmed by Borrower in the Commercial Purpose Affidavit, the Loan will not be used for personal, family or household purposes, and Borrower and Guarantor are forever estopped from taking the position that such Loan (including Advances/Disbursements) are or were used for such personal, family or household purposes. Borrower understands that Borrower's agreement not to use the Loan proceeds for personal, family or household purposes means that certain important duties imposed upon entities making loans for personal, family or household purposes, and certain important rights conferred upon Persons obtaining such loans, pursuant to federal or state law will not apply to the Loan or the Agreement. Borrower also understands that Lender will be unable to confirm whether Borrower's use or intended use of the Loan has or will have a commercial or business purpose. Borrower agrees that a breach by Borrower of the provisions of this section will not affect Lender's right to (i) enforce Borrower's promise to pay to Lender all amounts owed thereto under this Agreement, regardless of the purpose for which the Loan is in fact obtained or (ii) exercise any right, remedy, privilege, or power set forth in this Agreement or otherwise available to Lender at law or in equity, even if such right, remedy, privilege, or power would not have been available had the Loan been obtained for personal, family or household purposes.

4. **DISBURSEMENT OF LOAN PROCEEDS AND MAINTENANCE OF BORROWER'S BANK ACCOUNT**. Borrower's Loan will be disbursed as provided in the Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits) attached as Exhibit B attached to this Agreement (the **"ACH Authorization Form"**). Borrower agrees to maintain Direct Payments (ACH Debits) in the account that was reviewed in conjunction with the underwriting and approval of this Loan (including keeping such account open until the Total Repayment Amount has been indefeasibly repaid in full).

5. **PROMISE TO PAY.** Borrower agrees to pay Lender the Total Repayment Amount in lawful money of the United States of America in payment, in accordance with the Payment Schedule shown in the table entitled "Your Loan Details" in this Agreement. Borrower authorizes Lender to collect required payments in the manner provided in the ACH Authorization Form.

6. **ALTERNATIVE PAYMENT METHODS**. If Borrower knows that for any reason Lender will be unable to process a payment under the Automatic Payment Plan, or if Lender is unable to process a payment under the Automatic Payment Plan, then Borrower must either restore sufficient funds such that the missed payment can be collected as provided in the ACH Authorization Form or other recoupment method as directed by Lender. If Borrower elects to send payments to Lender by postal mail, then Borrower agrees to send such payments via certified mail, return receipt requested, to 30 E. Broadway, Suite 203-1216, Salt Lake City, UT 841111. All alternative payments must be made by check, money order, wire transfer, automatic transfer from an account at an institution offering such service, or other instrument in lawful money of the United States of America constituting legal tender in payment of all debts and dues, public and private. If Borrower makes a payment on Borrower's Loan by any means other than the Automatic Payment Plan that Lender makes available, Lender may treat such payment as an additional payment and continue to process Borrower's scheduled payments made through the Automatic Payment Plan or may reduce any scheduled payment to be made through the Automatic Payment Plan by the amount of any such payment received through alternative means. Failure by Lender to process a payment under the Automatic Payment Plan does not relieve Borrower from making any such payment, and each payment shall still be due and payable in accordance with the terms of this Agreement, including any additional interest, cost or fees due because of such missed or late payment.

7. **APPLICATION OF PAYMENTS.** Subject to applicable law, Lender reserves the right to allocate and apply payments received on Borrower's Loan between principal, interest and fees in any manner Lender chooses in Lender's sole discretion, it being understood and agreed that any fees and interest may be paid during the earlier portion of the term of the Loan. Lender's books and records of payments shall be conclusive proof of the same absent manifest error.

8. **POSTDATED CHECKS, RESTRICTED ENDORSEMENT CHECKS AND OTHER DISPUTED OR QUALIFIED PAYMENTS.** Lender can accept late, postdated or partial payments without losing any of Lender's rights under this Agreement, it being understood by Borrower that a postdated check is a check dated later than the day it was presented for payment. Lender is under no obligation to hold a

postdated check, and Lender reserves the right to process every item presented as if dated the same date that such item was received by Lender or Lender's check processor. Borrower may not hold Lender liable for depositing any postdated check. Borrower agrees not to send Lender partial payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, including (without limitation) Lender's right to full repayment of the Total Repayment Amount. All notices and written communications concerning postdated checks, restricted endorsement checks (including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount) or any other disputed, nonconforming or qualified payments, must be mailed or delivered to 30 E. Broadway, Suite 203-1216, Salt Lake City, UT 84111.

9. **PREPAYMENT**. Borrower may prepay Borrower's Loan in whole on any Business Day prior to the Maturity Date by paying Lender the sum total of the Total Repayment Amount, any Returned Payment Fees, any Late Fees, and all other due and unpaid Fees, in each case as described in the table entitled "Interest Forgiveness and Other Fees" in this Agreement or otherwise due under this Agreement, less (i) the amount of any Loan payments made prior to such prepayment and (ii) the aggregate amount of unpaid interest remaining on Borrower's Loan as of such date as determined by Lender's records in accordance with Section 7.

10. **SECURITY INTEREST.** Borrower and Guarantor hereby grant to Lender a security interest in and to any and all Collateral (as hereinafter defined) to secure the prompt and indefeasible payment and performance in full when due of all debts, liabilities and obligations of Borrower and Guarantor to Lender hereunder, including (without limitation) the Loan and all amounts, fees, and expenses due hereunder and under any and all renewals, extensions or substitutions for this Agreement, and also any and all other debts, liabilities and obligations of Borrower and Guarantor to Lender or any affiliate of Lender of every kind and nature, direct or indirect, absolute or contingent, primary or secondary, due or to become due, now existing or hereafter arising, including, without limitation, all indebtedness, interest, leases, debts and liabilities arising under or in connection with any note, guaranty (including the Guaranty, as hereinafter defined), surety agreement, or any other document, agreement, or instrument creating indebtedness, obligations, or liabilities owed by Borrower or Guarantor to Lender or any affiliate of Lender (including principal, interest, late charges, collection costs, attorney fees and the like) (collectively, the "Obligations"). The "Collateral" means all of Borrower's, and all of each Secured Guarantor's assets and personal property, whether now owned by or owing to, or hereafter acquired by or arising in favor of Borrower and each Secured Guarantor, and whether owned or consigned by or to, or leased from or to Borrower and each Secured Guarantor, regardless of where located, which shall include, without limitation: (a) any and all amounts owing to Borrower now or in the future from any merchant processor(s) processing charges made by customers of Borrower via credit card or debit card transactions; (b) cash and cash equivalents, (c) inventory, (d) equipment, (e) investment property, including certificated and uncertificated securities, securities accounts, security entitlements, commodity contracts and commodity accounts, (f) instruments, including promissory notes, (g) chattel paper, including tangible chattel paper and electronic chattel paper, (h) documents, (i) letter of credit rights, (j) accounts, including health-care insurance receivables, (k) deposit accounts with any bank or other financial institution, (l) commercial tort claims, (m) general intangibles, including payment intangibles and software, (n) copyrights, patents and trademarks and all other intellectual property, (o) fixtures, (p) goods, (q) letters of credit, letter-of-credit rights, and supporting obligations, and (r) and any other collateral specified in Schedule C. The preceding terms used in defining the term "Collateral" not otherwise defined in this Agreement shall have the meaning as such terms may from time to time be defined in the Uniform Commercial Code in effect in the State of Utah ("UCC"). The security interest Borrower and each Secured Guarantor grants herein includes all accessions to, substitutions for and replacements, proceeds (including stock rights), insurance proceeds and products of the foregoing subsections (a) through (r), together with all books and records, customers lists, credit files, computer files, programs, printouts, and other computer materials and records related thereto and any general intangibles (as defined in the UCC) at any time evidencing or relating to any of the foregoing. Lender disclaims any security interest in household goods in which Lender is forbidden by applicable law from taking a security interest.

11. **PROTECTING THE SECURITY INTEREST**. Borrower and Guarantor agree that Lender or Lender's Representative may, or upon Lender's request, file any financing statement, lien entry form, springing DACA (which may be attached hereto as an Exhibit) or other document, agreement, or instrument Lender or Lender's Representative requires in order to perfect, maintain the perfection of, amend, or continue Lender's security interest in the Collateral, and Borrower and Guarantor agree to cooperate with Lender and Lender's Representative as may be necessary to accomplish said filing and to do whatever Lender and Lender's Representative deem necessary to protect Lender's security interest in the Collateral. Borrower and Guarantor, at its sole expense, shall protect and defend Lender's first-priority security interest in the Collateral against all claims and demands whatsoever except for Permitted Liens (as hereinafter defined). Borrower and Guarantor each agree that, if Guarantor is a corporate entity, then Lender or Lender's Representative may file any financing statement, lien entry form or other document against Guarantor or its property that Lender and/or Lender's Representative requires in order to perfect, amend or continue Lender's security interest in the Collateral. Guarantor agrees to cooperate with Lender and Lender's Representative as may be necessary to accomplish said filing and to do whatever



 Owner / Guarantor Initial: DS | MS | ________

Lender or Lender's Representative deems necessary to protect Lender's security interest in the Collateral. "Lender's Representative" means any Person that is or Persons that are designated by Lender to act on its behalf in any authorized capacity. BORROWER AND EACH GUARANTOR EACH EXPRESSLY ACKNOWLEDGE AND AGREE BY SIGNING THIS AGREEMENT THAT, LENDER'S COLLATERAL AS DESCRIBED IN SECTION 10 INCLUDES ALL OF BORROWER'S AND EACH SECURED GUARANTOR'S PERSONAL PROPERTY AND ASSETS. Upon the occurrence and during the continuance of an Event of Default (as defined below), Borrower hereby irrevocably constitutes and appoints Lender, or designated agent, with full power of substitution, as its true and lawful attorney-in-fact with full irrevocable power and authority in place and stead of Borrower, for the purpose of carrying out the terms of this Agreement, to take any and all appropriate action and to execute any and all documents and instruments that may be necessary to accomplish the purposes of this Agreement and, without limiting the generality of the foregoing, hereby gives said attorney the power and right, on behalf of Borrower without notice to or assent by Borrower, to, upon the occurrence and during the continuance of an Event of Default, (a) endorse Borrower's name on any checks, notes, drafts or other forms of payment or security that may come into the possession of Lender or any affiliate of Lender, to sign Borrower's name on invoices or bills-of-lading, drafts against customers, notices of assignment, verifications and schedules, (b) sell, transfer, pledge, make any arrangement with respect to or otherwise dispose of or deal with any of the Collateral consistent with the UCC and (c) do acts and things which Lender reasonably deems necessary to protect, preserve or realize upon the Collateral and Lender's security interest therein. The powers granted herein, being coupled with an interest, are irrevocable until the date this Agreement and the Obligations evidenced hereby is repaid in full in accordance with its terms. The powers conferred on Lender hereunder are solely to protect its interests in the Collateral and shall not impose any duty upon it to exercise any such powers. Neither Lender nor any other attorney-in-fact shall be liable for any act or omission, error in judgment or mistake of law.

12. **LOCATION OF COLLATERAL; TRANSACTIONS INVOLVING COLLATERAL.** Unless Lender has agreed otherwise in writing, Borrower and Guarantor represent, warrant, and covenant, as appliable, that (i) all Collateral (or records of the Collateral in the case of accounts, chattel paper, and general intangibles) shall at all times be located at Borrower's and Guarantor's respective address as shown on the first page of this Agreement or, if not shown thereon, then as set forth elsewhere in this Agreement; (ii) except for inventory sold or accounts collected in the ordinary course of Borrower's or Guarantor's business, Borrower and Guarantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral or any portion thereof; (iii) no one else has any interest in or claim to or against the Collateral that Borrower or Guarantor has not disclosed to Lender in writing, and that Lender has not approved of in writing, prior to the date hereof; (iv) Borrower and Guarantor shall not, after the date hereof, pledge, collaterally assign, convey in trust, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance or charge, other than the security interest provided for in this Agreement and Permitted Liens; (v) Borrower and Guarantor shall not (a) dissolve, cease operations, liquidate, merge, consolidate or divide with or into any other Person, (b) turn over the management or operation of all or substantially all of its property, assets or business to any other Person, or (c) engage in any business activities substantially different than those in which Borrower or Guarantor is presently engaged; (vi) Borrower and Guarantor shall defend Lender's rights in the Collateral against the claims and demands of all other Persons, as may be directed by Lender; (vii) Borrower and Guarantor shall make no alterations, additions, subtractions, upgrades or improvements to the Collateral or any portion thereof, provided that any such alterations, additions, subtractions, upgrades or improvements shall automatically become a part of the Collateral whether or not made with Lender's prior written consent; and (viii) Borrower and Guarantor shall not use or move the Collateral or any portion thereof outside of the United States of America. All proceeds from any unauthorized disposition of the Collateral shall be held in trust for Lender, shall not be commingled with any other funds and shall immediately be delivered to Lender. This requirement, however, does not constitute consent by Lender to any such disposition.

13. TAXES, **ASSESSMENTS AND** LIENS. Borrower and Guarantor will complete and timely file all necessary federal, state and local tax returns and will pay and perform in full when due all taxes, assessments, levies and liens upon the Collateral and provide evidence of such upon Lender's request.

14. **INSURANCE.** Borrower and each Secured Guarantor shall procure and maintain such insurance as Lender may require with respect to the Collateral, with commercially reasonable provisions acceptable to Lender, and naming Lender as loss payee. If such insurance is not maintained, Lender may obtain such insurance as Lender deems appropriate at Borrower's sole expense.

15. **DAMAGE OR LOSS; REPAIRS AND MAINTENANCE.** Borrower and Guarantor bear the entire risk of loss, theft, damage or destruction of Collateral in whole or in part from any reason whatsoever. Borrower and Guarantor agree to keep and maintain, and cause others to keep and maintain, the Collateral in good order, repair, and condition at all times (normal wear and tear excepted). Borrower and Guarantor further agree to pay in full when due all claims for work done on, or services rendered or material furnished in connection with, the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral, and any such lien or encumbrance shall be immediately discharged.



 Owner / Guarantor Initial: DS | MS | ________

16. **INSPECTION OF COLLATERAL AND PLACE OF BUSINESS; USE OF PHOTOGRAPHS AND TESTIMONIALS.** Lender and Lender's Representative shall have the right to examine the Collateral wherever located and the interior and exterior of Borrower's and Guarantor's place of business, upon reasonable notice.

17. **LENDER'S EXPENDITURES.** If any action or proceeding is commenced that materially affects, or that creates a reasonable expectation that such action or proceeding would materially affect as determined by Lender, Lender's interest in the Collateral, or if Borrower or Guarantor fails to comply with any provision of this Agreement or any related documents, including but not limited to Borrower's or Guarantor's failure to properly grant or perfect Lender's security interest in the Collateral or to indefeasibly discharge or pay in full when due any amounts Borrower or Guarantor is required to discharge or pay under this Agreement or any related documents, including, without limitation, the Obligations, Lender on Borrower's or Guarantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. To the extent permitted by applicable law, all such expenses will become a part of the Obligations.

18. **BORROWER'S AND GUARANTOR'S REPRESENTATIONS, WARRANTIES, AND COVENANTS.** Borrower and Guarantor, each for itself, represent, warrant, and covenant that: (i) Borrower and Guarantor are in compliance with and will continue to comply with all laws, statutes, regulations and ordinances pertaining to Borrower's or Guarantor's ownership, use, and operation of the Collateral and the conduct of Borrower's or Guarantor's business, and Borrower and Guarantor promise to hold Lender harmless from any damages, liabilities, costs, expenses (including attorneys' fees) or other harm arising out of any violation thereof; (ii) Borrower's and Guarantor's principal place of business and the office where Borrower and Guarantor keep its records concerning its accounts, contract rights and other property, is the address provided for Borrower and Guarantor in this Agreement; (iii) each of Borrower and Guarantor is duly organized, licensed, validly existing, and each of Borrower and Guarantor is and shall hereafter remain duly licensed and in good standing under, if Borrower or Guarantor is an individual, the laws of the state of its domicile, or, if Borrower or Guarantor is a legal entity, the laws of the state of its formation, organization, or incorporation, as applicable, and each of Borrower and Guarantor is duly qualified, licensed and in good standing in every other state in which it is doing business and in which the failure to qualify or become licensed could have a material adverse effect on the financial condition, business or operations of Borrower and Guarantor; (iv) the true and correct legal name of each of Borrower and Guarantor is set forth in this Agreement; (v) the aggregate ownership percentage of the Signatories is greater than or equal to fifty percent (50%) of Borrower; (vi) Borrower and Guarantor shall notify Lender in writing at least thirty (30) days before, and obtain Lender's written consent prior to, any of the following actions: (a) change in the location of Borrower's or Guarantor's principal place of business, (b) change in Borrower's or Guarantor's name, (c) change in Borrower's or Guarantor's type of organization, (d) change in Borrower's or Guarantor's jurisdiction of organization, and (e) change in Borrower's or Guarantor's corporate structure or ownership structure; (vii) each of Borrower and Guarantor is and will continue to be (or with respect to after-acquired property, will be when acquired) the legal and beneficial owner of the Collateral; (viii) Lender's security interest in all the Collateral is or can be perfected by properly filing a UCC financing statement in the applicable office except for Collateral that cannot be perfected by filing a UCC financing statement as set forth in the UCC; (ix) the execution, delivery and performance of this Agreement, and any other document, agreement, and instrument executed in connection herewith, are within Borrower's and Guarantor's powers, have been duly authorized, and are not in contravention of applicable law or the terms of Borrower's or Guarantor's governing documents or of any indenture, agreement or undertaking to which Borrower or Guarantor is a party; (x) Borrower shall not make any loan or advance to or any investment in, whether of cash or property, any other Person, nor shall Borrower or Guarantor incur any obligation as surety or guarantor, nor become liable for any other contingent obligations, other than in the ordinary course of business; (xi) all governing or organizational documents and all amendments thereto of Borrower and Guarantor have been duly filed and are in proper order and any capital stock issued by Borrower and Guarantor and outstanding was and is properly issued and all books and records of Borrower and Guarantor are accurate and up to date and will be so maintained; (xii) each of Borrower and Guarantor (a) is subject to no governing document, agreement, or other legal restriction, or any judgment, award, decree, order, governmental rule or regulation or contractual restriction that could have a material adverse effect on its financial condition, business or prospects, and (b) is in compliance with all governing documents, all contractual requirements by which it may be bound, and all applicable laws, rules and regulations other than laws, rules or regulations the validity or applicability of which Borrower or Guarantor is contesting in good faith, or provisions of any of the foregoing the failure to comply with which cannot create a reasonable expectation of materially adversely affecting Borrower's or Guarantor's financial condition, business or prospects or the value of the Collateral; (xiii) there is no action, suit, proceeding or investigation pending or, to Borrower's or Guarantor's knowledge, threatened, against or affecting Borrower or Guarantor or any of their assets before or by any court or other governmental authority which, if determined adversely to it, would have a material adverse effect on Borrower's or Guarantor's financial condition, business or prospects or the value of the Collateral; (xiv) all information provided by Borrower and Guarantor as part of the application process for the Loan was true and complete, and Borrower and Guarantor shall notify Lender in writing within thirty (30) days after any such information has changed and whether such change is reasonably expected to have a material adverse effect on Borrower's or Guarantor's financial condition, business or

prospects or the value of the Collateral; (xv) neither Borrower nor Guarantor intends to file, nor has any notice or reason to believe that another Person intends to file against Borrower or Guarantor, for reorganization or liquidation under the bankruptcy or reorganization laws of any jurisdiction within six (6) months after the date hereof, and Borrower and Guarantor shall notify Lender in writing (a) at least ten (10) days before filing for such reorganization or liquidation or (b) immediately if another Person has filed for such reorganization or liquidation against Borrower or Guarantor; and (xvi) neither Borrower nor Guarantor is presently, nor has any reasonable expectation that it will become, insolvent or bankrupt within the meaning of, as applicable, the UCC as well as the Bankruptcy Code (as hereinafter defined).

19. **INTEREST AND FEES.** Borrower agrees to pay in full the interest set forth in the table entitled "The Loan Details" in this Agreement.

20. **INTEREST AND FEES EXCEEDING APPLICABLE LAW.** If applicable law is ever judicially interpreted so as to render usurious or illegal any amount of interest, fees, or expenses called for hereunder, or contracted for, charged, taken, reserved or received with respect to the Obligations, or Lender's exercise of the option to accelerate the maturity of the Loan, or any prepayment by Borrower results in Borrower having paid or Lender having received any interest in excess of that permitted by applicable law, then it is Borrower's and Lender's express intent that all excess amounts theretofore collected by Lender be credited on then outstanding Loan Amount and all other Obligations then due hereunder (or, if all Obligations have been or would thereby be paid in full, then refunded to Borrower); provided, however, that Lender shall recover the fullest amount otherwise called for hereunder; provided, however, if the Obligations been paid in full before the Maturity Date, then Borrower and Lender agree that Lender shall, with reasonable promptness after Lender discovers or is advised by Borrower that interest, fees, or expenses were received in an amount in excess of the maximum lawful rate, either refund such excess interest, fees, or expenses to Borrower or credit such excess interest, fees, or expenses against any other Obligations or other indebtedness then owing by Borrower or Guarantor to Lender.

21. **FINANCIAL INFORMATION AND REEVALUATION OF CREDIT.** Borrower and Guarantor authorize Lender to obtain business and personal credit bureau reports in Borrower's and Guarantor's name, respectively, at any time and from time to time for purposes of deciding whether to approve the requested Loan or for any update, renewal, extension of credit or other lawful purpose. Upon Borrower's or Guarantor's request, Lender will advise Borrower or Guarantor if Lender obtained a credit report, and Lender will give Borrower or Guarantor the credit bureau's name and address. Borrower and Guarantor agree to submit current financial information, a new credit application, or both, in Borrower's name and in the name of Guarantor, respectively, at any time promptly upon Lender's request. Borrower authorizes Lender to act as Borrower's agent for purposes of accessing and retrieving transaction history information regarding Borrower from Borrower's designated merchant processor(s). Lender may report Lender's credit experiences with Borrower and Guarantor of Borrower's Loan to third parties as permitted by law, including with respect to any natural-Person Guarantor to consumer credit reporting agencies. Borrower and Guarantor also agree that Lender may release information to comply with governmental reporting or legal process that Lender believes may be required, whether or not such is in fact required, or when necessary or helpful in completing a transaction, or when investigating a loss or potential loss. Borrower and Guarantor are hereby notified that a negative credit report reflecting on Borrower's or Guarantor's credit record may be submitted to a credit reporting agency (including with respect to Guarantor to consumer credit reporting agencies) if Borrower or Guarantor fails to fulfill the terms of their respective credit obligations hereunder. Guarantor acknowledges that any credit reporting on the Loan shall be at the sole discretion of Lender (subject to applicable law) and that Lender has the right to report the Loan to Guarantor's personal credit file should Guarantor not pay any Obligation pursuant to the guaranty set forth in this Agreement. Borrower shall give access via Plaid or the like for Lender to access Borrower's bank accounts as requested by Lender.

22. **ATTORNEYS' FEES AND COLLECTION COSTS.** To the extent not prohibited by applicable law, Borrower shall pay to Lender on demand any and all expenses, including, but not limited to, collection costs, all attorneys' fees and expenses, and all other expenses of like or unlike nature which may be expended by Lender to obtain or enforce payment of Obligations either as against Borrower or Guarantor or surety of Borrower, including, without limitation, Guarantor, or in the prosecution or defense of any action or concerning any matter arising out of or connected with the subject matter of this Agreement, the Obligations or the Collateral or any of Lender's rights or interests therein or thereto, including, without limiting the generality of the foregoing, any counsel fees or expenses incurred in connection with any amendment, restatement, supplement, or modification hereof or in any bankruptcy or insolvency proceedings and all costs and expenses (including search fees) incurred or paid by Lender in connection with the administration, supervision, protection or realization on any security held by Lender for the Obligations, whether such security was granted by Borrower, Guarantor, or any other Person primarily or secondarily liable (with or without recourse) with respect to the Obligations, and all costs and expenses incurred by Lender in connection with the defense, settlement or satisfaction of any action, claim or demand asserted against Lender in connection therewith, which amounts shall be considered advances to protect Lender's security, and shall be secured hereby. To the extent permitted by applicable law, all such expenses will become a part of the Obligations and, at Lender's option, will: (i) be payable on demand; (ii) be added to the balance of the Loan and be apportioned among and be payable with any

installment payments to become due during the remaining term of the Loan; or (iii) be treated as a balloon payment that will be due and payable at the Loan's maturity. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon an Event of Default.

23. **BORROWER'S REPORTS.** Promptly upon Lender's written request, Borrower and Guarantor agree to provide Lender with such information about the financial condition and operations of Borrower or Guarantor as Lender may, from time to time, reasonably request. Borrower also agrees promptly upon becoming aware of any Event of Default, or the occurrence or existence of any event or circumstance which, with the passage of time or the giving of notice or both, would constitute an Event of Default hereunder, to promptly provide notice thereof to Lender in writing. Borrower and Guarantor agree to furnish a quarterly report of their financial condition, including balance sheet, income statement, and statement of cash flows, as well as a Compliance Certificate, every 90 days from the date of execution of this Agreement. Borrower and Guarantor agree to inform Lender, within five days of any material change in financial condition, ownership, or management, or the bank accounts of the Borrower or Guarantor fall below thirty three percent of the balance represented by financial statements provided at funding.

24. **TELEPHONE COMMUNICATIONS.** Borrower and Guarantor hereby expressly consent to receiving calls and messages, including autodialed and pre-recorded message calls, SMS messages (including text messages), and other forms of electronic communication from Lender, its affiliates, marketing partners, agents and other Persons calling at Lender's request or on its behalf, at any telephone numbers that Borrower and Guarantor have provided or may provide in the future or that are otherwise in Lender's or such other Persons' possession (including any cellular or mobile telephone numbers). Borrower and Guarantor agree that such communications may be initiated using an automated telephone dialing system.

25. **INDEMNIFICATION.** Borrower and Guarantor assume all risk and liability for, and shall defend, indemnify and keep Lender harmless on an after-tax basis from, any and all liabilities, obligations, losses, damages, penalties, claims, actions, suits, costs and expenses, including reasonable attorney fees and expenses, of whatsoever kind and nature imposed on, incurred by or asserted against Lender, in any way relating to or arising out of the manufacture, purchase, acceptance, rejection, ownership, possession, use, selection, delivery, storage, operation, condition, sale, return or other disposition of the Collateral or any part thereof (including, without limitation, any claim for latent or other defects, whether or not discoverable by Borrower, Guarantor, or any other Person, any claim for negligence, tort or strict liability, any claim under any environmental protection or hazardous waste law, and any claim for patent, trademark or copyright infringement), or relating to or arising out of Lender's security interest in the Collateral or the priority or perfection of such security interest, enforcing the Obligations, or in the prosecution or defense of any action or proceeding concerning any matter arising out of or in connection with this Agreement or any other document, agreement, or instrument between Borrower and Lender. Neither Borrower nor Guarantor shall be obligated to indemnify Lender under this Section for loss or liability caused directly and solely by the gross negligence or willful misconduct of Lender, as determined by a court of competent jurisdiction. In this Section 25, "Lender" also includes any of Lender's Representatives and any director, officer, employee, agent, successor or assign of Lender. Borrower's and Guarantor's obligations under this Section 25 shall survive the expiration, cancellation or termination of this Agreement.

26. **MERGERS, CONSOLIDATIONS OR SALES.** Borrower and Guarantor represent and agree that Borrower will not (i) merge or consolidate with or into any other business entity nor sell all or substantially all of its assets, or (ii) enter into any joint venture or partnership with any Person. Borrower further agrees not to alter its ownership without prior written permission from Lender.

27. **ORGANIZATIONAL IDENTIFICATION NUMBERS.** If Borrower does not have an organizational identification number and later obtains one, Borrower shall promptly notify Lender of such taxpayer identification number.

28. **DEFAULT.** The occurrence of any one or more of the following events (each, an "Event of Default") shall constitute, without notice or demand, a default and an Event of Default under this Agreement and all other documents, agreements, instruments, and papers between Lender and Borrower and instruments and papers given Lender by Borrower, whether such documents, agreements, instruments, or papers now exist or hereafter arise: (i) Lender is unable to collect any payment through the Automatic Payment Plan, or Borrower fails to timely pay any Obligations when due; (ii) Borrower or Guarantor, fails to fully comply with or promptly, punctually and faithfully perform or observe any term, covenant, condition, agreement, or promise within this Agreement, or does not notify Lender within reasonable time upon knowledge of a failure; (iii) any representation or warranty heretofore, now or hereafter made by Borrower or Guarantor to Lender herein or in any other document, instrument, agreement, application or paper proves to have been untrue or misleading when given in any material respect (except for representations or warranties qualified by materiality, then in any respect), as determined by Lender in its sole discretion; (iv) the occurrence of any event or circumstance creating a reasonable expectation that: (a) any obligation or indebtedness of Borrower to a creditor or lender other than Lender (including a landlord or lessor) could be accelerated, or (b) a creditor or lender other than Lender (including a landlord or lessor) has reason to

 Owner / Guarantor Initial: DS | MS | ________

enforce its security interest in or foreclose or collect upon the Collateral, notwithstanding that such acceleration or enforcement, foreclosure, or collection has not taken place; (v) the occurrence of any event or circumstance that would cause a lien creditor, as that term is defined in Chapter 9a-102 of the UCC (other than Lender), to take priority over Lender's security interest in the Collateral securing the Loan or any other Obligation; (vi) a filing against or relating to Borrower or Guarantor (unless consented to in writing by Lender) of (a) a federal tax lien in favor of the United States of America or any political subdivision of the United States of America, or (b) a state tax lien in favor of any state of the United States of America or any political subdivision of any such state; (vii) the occurrence of any event of default or event or circumstances that would, with the passage of time or the giving of notice or both, give rise to an event of default under any other document, agreement, or instrument between Lender and Borrower or instrument or paper given Lender by Borrower, whether such document, agreement, instrument, or paper now exists or hereafter arises (notwithstanding that Lender may not have exercised its rights upon default under any such other document, agreement, instrument or paper); (viii) any act by, against, or relating to Borrower or Guarantor, or either of their property or assets, which act constitutes the application for, consent to, or sufferance of the appointment of a receiver, trustee or other person, pursuant to court action or otherwise, over all, or any part of Borrower's or Guarantor's property; (ix) the granting of any deed of trust, mortgage, or execution of an assignment for the benefit of the creditors of Borrower or Guarantor, or the occurrence of any other voluntary or involuntary liquidation for Borrower or Guarantor or extension of debt agreement for Borrower; (x) Borrower or Guarantor becomes insolvent or bankrupt, or admits its inability to pay its debts as they mature, or makes an assignment for the benefit of creditors, or applies for, institutes or consents to the appointment of a receiver, trustee or similar official for it or any substantial part of its property or any such official is appointed without its consent, or applies for, institutes or consents to any bankruptcy, or similar proceeding relating to it or any substantial part of its property under the laws of any jurisdiction or any such proceeding is instituted against it without stay or dismissal for more than sixty (60) days, or it commences any act amounting to a business failure or a winding up of its affairs, or it ceases to do business as a going concern; (xi) Borrower or Guarantor fails to pay any final judgment for the payment of money in an amount equal to or in excess of $25,000.00 unless and to the extent such is being appealed and Borrower or Guarantor, as applicable, has set aside adequate reserves as required by Lender; (xii) any levy or execution upon, or judicial seizure of, any portion of any item of Collateral, or any part or portion of the Collateral is seized or taken by a governmental body; (xiii) the filing of any complaint, application or petition by or against Borrower or Guarantor initiating any matter in which Borrower or Guarantor is or may be granted any relief from the debts of Borrower or Guarantor, as applicable, pursuant to the Bankruptcy Code or any other insolvency statute or procedure; (xiv) the offering by or entering into by Borrower or Guarantor of any composition, extension or any other arrangement seeking relief or extension for the debts of Borrower or Guarantor, or the initiation of any other judicial or non-judicial proceeding or agreement by, against or including Borrower or Guarantor that seeks or intends to accomplish a reorganization or arrangement with creditors; (xv) the institution of any legal action or proceedings to enforce any Lien upon any portion of the Collateral that is not dismissed within fifteen (15) days after Borrower or Guarantor becomes aware thereof; (xvi) the occurrence of any event or circumstance with respect to Borrower or Guarantor such that Lender shall believe in good faith that the prospect of payment of all or any part of the Obligations or the performance by Borrower or Guarantor under this Agreement or any other document, agreement, or instrument between Lender and Borrower is impaired or there shall occur any material adverse change in the business or financial condition of Borrower or Guarantor (such event specifically includes, but is not limited to, taking additional financing from a credit card advance, cash advance company or an additional working capital loan without the prior written consent of Lender); (xvii) the entry of any court order that enjoins, restrains or in any way prevents Borrower from conducting all or any part of its business affairs in the ordinary course of business; (xviii) the occurrence of any uninsured loss, theft, damage or destruction to any Collateral that, individually or in the aggregate, has a fair market value in excess of $10,000.00, as determined by Lender in its reasonable discretion; (xix) any act by, against, or relating to Borrower or Guarantor or either of their assets pursuant to which any creditor of Borrower or Guarantor seeks to reclaim or repossess or reclaims or repossesses all or a portion of Borrower's or Guarantor's assets; (xx) the termination of existence, dissolution or liquidation of Borrower or Guarantor or the ceasing to carry on actively any substantial part of Borrower's or Guarantor's current business; (xxi) this Agreement shall, at any time after its execution and delivery and for any reason, cease to be in full force and effect or shall be declared null and void, or the validity or enforceability hereof shall be contested by Borrower or Guarantor denies it has any further liability, indebtedness, or obligation hereunder prior to such time that the Obligations are indefeasibly paid and performed in full; (xxii) Guarantor or any other Person signing a guaranty or support agreement in favor of Lender shall repudiate, purport to revoke or fail to perform its, his, or her obligations under such guaranty or support agreement in favor of Lender, or any non-natural Person Guarantor shall cease to exist; (xxiii) any material change occurs in Borrower's ownership or organizational structure (acknowledging that any change in ownership will be deemed material when ownership is closely held); (xxiv) if Borrower is: (a) a sole proprietorship, the owner dies, (b) a trust, a trustor dies, (c) a partnership, any general or managing partner dies, (d) a corporation, any principal officer or 10% or greater shareholder dies, (e) a limited liability company, any manager or managing member dies, (f) any other form of business entity, any person(s) directly or indirectly controlling 10% or more of the ownership interests of such entity dies, unless Borrower or Guarantor provide a replacement for any such decedent who is satisfactory to Lender, in Lender's sole discretion, within thirty (30) days after the date on which such Person died, provided, however, that Borrower and Guarantor shall not have such thirty (30)-day period if such death has had or is reasonably expected to have a material adverse effect on Borrower's business, financial condition, results

of operations, or prospects; (xxv) Borrower fails to provide financial statements or bank access (via Plaid or the like) to Lender within 72 hours of request by Lender.

29. **RIGHTS AND REMEDIES UPON DEFAULT.** Subject to applicable law, if an Event of Default occurs under this Agreement, at any time thereafter, Lender may exercise any one or more of the following rights and remedies:

A. **Refrain from Disbursing Loan Proceeds**: Lender may refrain from disbursing Borrower's Loan proceeds to Borrower's Designated Checking Account.

B. **Debit Amounts Due From Borrower's Designated Checking Account**: Lender may debit through the Automatic Payment Plan from Borrower's Designated Checking Account (as defined in the ACH Authorization Form) all payments that Lender was unable to collect and/or the amount of any other Obligations that Borrower failed to pay.

C. **Accelerate Indebtedness**: Lender may declare the entire Obligations immediately due and payable, without notice to or consent from Borrower of any kind.

D. **Assemble Collateral**: Lender may require Borrower and/or Guarantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Borrower and/or Guarantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Borrower and/or Guarantor to take possession of and remove the Collateral, all in accordance with applicable law, including (without limitation) the UCC. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Borrower and Guarantor agree Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Borrower and Guarantor after repossession.

E. **Sell the Collateral**: Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Borrower or Guarantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Borrower, Guarantor and other Persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. Lender, Borrower, and Guarantor agree that ten (10) calendar days' prior notice is reasonable notice. However, no notice need be provided to any Person who, after an Event of Default occurs, enters into and authenticates an agreement waiving that Person's right to notification of sale. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Obligations secured by this Agreement. To the extent permitted by applicable law, all such expenses will become a part of the Obligations and, at Lender's option, will: (i) be payable on demand; (ii) be added to the balance of the Loan and be apportioned among and be payable with any installment payments to become due during either (a) the term of any applicable insurance policy or (b) the remaining term of the Loan; or (iii) be treated as a balloon payment that will be due and payable at the Loan's maturity.

F. **Appoint Receiver**: Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Obligations. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Obligations by a substantial amount. Employment by Lender shall not disqualify a Person from serving as a receiver.

G. **Collect Revenues, Apply Accounts**: Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income and revenues therefrom and hold the same as security for the Obligations or apply it to payment of the Obligations in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose or realize on the Collateral as Lender may determine, whether or not any amount included within the Obligations is then due, as permitted by law. For these purposes, Lender may, on behalf of and in the name of Borrower and Guarantor, receive, open and dispose of mail addressed to Borrower or Guarantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment or storage of any Collateral. To facilitate collections, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

H. **Obtain Deficiency**: If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Borrower and/or Guarantor for any deficiency remaining on the Obligations due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Borrower and Guarantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

I. **Confession of Judgment**: Notwithstanding any other provision set forth in this Agreement, Lender may fill out and file a confession of judgment against Borrower substantially in form and substance attached hereto as an Exhibit (the "**Confession of Judgment Form**"). Borrower hereby agrees, and shall not make any claim to the contrary, that this remedy is permitted pursuant to applicable laws of the State of Utah.

J. **Other Rights and Remedies**: Lender shall have all the rights and remedies of a secured creditor under the provisions of the UCC. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity or otherwise.

K. **Election of Remedies**: Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, any related documents, agreements, or instruments, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower under the Agreement, after Borrower's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

30. **CONSENT TO JURISDICTION AND VENUE**. Borrower, Guarantor and Lender agree that any action or proceeding to enforce or arising out of this Agreement may be brought in the Third Judicial District Court, State of Utah or in the federal United States District Court for the District of Utah, and Borrower and Guarantor waive personal service of process. Borrower, Guarantor and Lender agree that venue is proper in such courts.

31. **JURY TRIAL WAIVER**. To the extent not prohibited by applicable law, Borrower, Guarantor, and Lender waive their right to a trial by jury of any claim or cause of action based upon, arising out of or related to this Agreement.

32. **NO WAIVER BY LENDER**. No delay or omission on the part of Lender in exercising any rights, remedies, privileges, or powers under this Agreement, any related document, agreement, or instrument, or applicable law shall be, or be construed or operate as, a waiver of such right, remedy, privilege, or power or any other right, remedy, privilege, or power. Waiver of any right, remedy, privilege, or power on any one occasion shall not be construed as a waiver of the same or any other right, remedy, privilege, or power on any future or other occasion. All Lender's rights and remedies, whether evidenced hereby or by any other document, agreement, instrument or paper, shall be cumulative and may be exercised singularly or concurrently.

33. **ASSIGNMENT**. This Agreement shall bind and inure to the benefit of the respective successors and assigns of each of the parties hereto; *provided, however*, neither Borrower nor Guarantor may assign this Agreement or any rights or duties hereunder without Lender's prior written consent and any assignment attempted to be made without such consent shall be absolutely null and void. No consent to an assignment by Lender shall release Borrower nor Guarantor from their Obligations. Lender may assign this Agreement and its rights and duties hereunder and no consent or approval by Borrower or Guarantor is required in connection with any such assignment. Lender reserves the right to sell, assign, transfer, negotiate or grant participations in all or any part of, or any interest in, Lender's rights and benefits hereunder. In connection with any assignment or participation, Lender may disclose all documents and information that Lender now or hereafter may have relating to Borrower or Guarantor. To the extent that Lender assigns its rights and obligations hereunder to another party, Lender thereupon shall be released from such assigned obligations and such assignment shall affect a novation between Borrower and Guarantor and such other party. Lender, in its capacity as servicer, or a successor servicer (if any), shall, acting solely for this purpose as a non-fiduciary agent of Borrower, maintain at one of its offices in the United States a copy of each assignment agreement delivered to it with respect to this Loan and a register for the recordation of the name of each assignee of this Loan, and principal and interest amount of this Loan owing to, such assignee pursuant to the terms hereof. The entries in such register shall be conclusive, and Borrower, Guarantor, Lender and each such assignee may treat each Person whose name is recorded therein pursuant to the terms hereof as a "Lender" hereunder for all purposes of this Agreement, notwithstanding notice to the contrary. The register maintained for this Loan shall be available for inspection by Borrower and any such assignee of this Loan, at any reasonable time upon reasonable prior notice to Lender, in its capacity as servicer, or the applicable successor servicer (if any). This Section 33 shall be construed so that this Loan is at all times maintained in "registered form" within the meaning of Sections 163(f), 871(h)(2) and 881(c)(2) of the Internal Revenue Code and any related Treasury regulations (or any other relevant or successor provisions of the Internal Revenue Code or of such Treasury regulations).

Funders West


Owner / Guarantor Initial: DS | MS | ________

34. **INTERPRETATION**. Paragraph and section headings used in this Agreement are for convenience only, and shall not affect the construction of this Agreement. Neither this Agreement nor any uncertainty or ambiguity herein shall be construed or resolved against Lender or Borrower, whether under any rule of construction or otherwise. This Agreement has been reviewed by all parties hereto and, unless otherwise set forth herein, shall be construed and interpreted according to the ordinary meaning of the words used so as to fairly accomplish the purposes and intentions of all parties hereto.

35. **SEVERABILITY**. If one or more provisions of this Agreement or the application thereof is determined invalid, illegal or unenforceable in any respect in any jurisdiction, the same shall not invalidate or render illegal or unenforceable such provision or its application in any other jurisdiction nor any other provision of this Agreement or its application in any jurisdiction.

36. **NOTICES / WAIVER OF SERVICE**. Except as otherwise provided in this Agreement, all communications, requests, and notices (individually and collectively referred to in this Section 36 as "**notice**") required by or permitted under this Agreement must be in writing. Notice will be deemed given, and service of summons and complaint or other required legal documents will be deemed served: (i) when deposited, if sent in U.S. first-class mail, postage prepaid; (ii) when delivered, if delivered in person; (iii) when sent, if sent by registered mail, certified mail, by nationally recognized overnight courier, or electronic mail. Notice delivered hereunder to Borrower and Guarantor shall be sent to Borrower's or Guarantor's address or electronic mail address listed on the Signature Page of this Agreement that corresponds with such Person's signature, or to any other address as updated by Borrower or Guarantor, as applicable, in writing in accordance with this Section 36. Notice to Lender shall be sent to: 30 E. Broadway, Suite 203-1216, Salt Lake City, UT 84111. Lender, Borrower, and Guarantor irrevocably consent to service of process in the manner provided above, which may differ from any manner expressly required or permitted by the Utah Rules of Civil Procedure. Borrower, Guarantor, and Lender agree that any service of any action made in accordance with Utah Rules of Civil Procedure shall also be effective as to the delivery of such service notwithstanding this Section 36. It shall be sufficient for Lender's counsel to file affirmation of service attesting to service in accordance with this Section.

37. **RECORDKEEPING AND AUDIT REQUIREMENTS**. Lender shall have no obligation to maintain any electronic records or any documents, or any other paper delivered to Lender by Borrower or Guarantor in connection with this Agreement other than as required by law. Borrower and Guarantor shall at all times keep accurate and complete records of Borrower's financial statements and accounts and the Collateral. At Lender's request, Borrower shall deliver to Lender: (i) current, complete, and accurate financial statements and schedules of accounts and general intangibles; and (ii) such other information regarding the Collateral as Lender may request. Lender, or any of Lender's Representatives, shall have the right to call any telephone numbers that Borrower has provided or may provide in the future or otherwise in Lender's possession (including any cellular or mobile telephone numbers) at intervals to be determined by Lender, and without hindrance or delay, to inspect, audit, check, and make extracts from any copies of the books, records, journals, orders, receipts, correspondence that relate to Borrower's financial statements and accounts and Collateral or other transactions between the parties thereto and the general financial condition of Borrower.

38. **GOVERNING LAW**. This Agreement and any claim, dispute or controversy (whether in contract, tort, or otherwise) at any time arising from or relating to this Agreement is governed by, and this Agreement will be construed in accordance with, applicable federal law and (to the extent not preempted by federal law) Utah law without regard to internal principles of conflict of laws. The legality, enforceability and interpretation of this Agreement and the amounts contracted for, charged and reserved under this Agreement will be governed by such laws.

39. **WAIVER OF NOTICES AND OTHER TERMS**. Except for any notices provided for in this Agreement, Borrower, Guarantor, and any other Person who has obligations pursuant to this Agreement, to the extent not prohibited by applicable law, hereby waive demand, notice of nonpayment, notice of intention to accelerate, notice of acceleration, presentment, protest, notice of dishonor and notice of protest. To the fullest extent permitted by applicable law, Borrower, Guarantor, and any other Person who has obligations pursuant to this Agreement also agrees: Lender is not required to file suit, show diligence in or evidence of enforcement or collection against Borrower, Guarantor, or any other Person who has obligations pursuant to this Agreement, or proceed against any Collateral; Lender may, but shall not be obligated to, substitute, exchange or release any Collateral; Lender may release any Collateral, or fail to realize upon or perfect Lender's security interest in any Collateral; Lender may, but shall not be obligated to, sue one or more Persons without joining or suing others; all, in each case of the foregoing, without impairing or losing Lender's security interest in the Collateral and without impairing, losing, forfeiting, or waiving any of Lender's other rights, remedies, privileges, or powers under this Agreement, under any other document, agreement, or instrument between Lender and Borrower or Guarantor, at law or in equity, or otherwise.

40. **MONITORING, RECORDING AND ELECTRONIC COMMUNICATIONS**. In order to ensure a high quality of service for Lender's customers, Lender may monitor and record telephone calls between Borrower or Guarantor, on the one hand, and Lender's employees or agents, on the other hand. Borrower and Guarantor acknowledge that Lender may do so and agree in advance to any such monitoring or recording of telephone calls. Borrower and Guarantor also agree that Lender may communicate with Borrower and Guarantor electronically by e-mail.

41. **CONFIDENTIALITY**. Neither Borrower nor Guarantor shall make, publish or otherwise disseminate in any manner a copy of this Agreement or any public statement or description of the terms of this Agreement, except to its employees, advisors and similar Persons who have a legitimate need to know its contents.

42. **ENTIRE AGREEMENT**. Any application Borrower signed or otherwise submitted in connection with the Loan and all exhibits and other attachments to this Agreement, any other documents, agreements, and instruments required by Lender now or in the future in connection with this Agreement and Borrower's Loan are hereby incorporated into and made a part of this Agreement. This Agreement is the entire agreement of Borrower, Guarantor, and Lender with respect to the subject matter hereof and supersedes any prior written or verbal communications or instruments relating thereto.

43. **COUNTERPARTS; ELECTRONIC SIGNATURES**. This Agreement may be executed in one or more counterparts, each of which counterparts shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument. For purposes of the execution of this Agreement, signatures delivered by electronic or fax transmission shall be treated in all respects as original signatures.

44. **CUSTOMER SERVICE CONTACT INFORMATION**. If you have questions or comments about your Loan, you may contact us by (i) email at office@funderswest.com or (ii) mail sent to 30 E. Broadway, Suite 203-1216, Salt Lake City, UT 84111.

45. **PERSONAL GUARANTY**. Guarantor, jointly and severally (if more than one), absolutely and unconditionally guarantee the indefeasible, full, and prompt payment to Lender, including its successors and assignees, of (i) any and all Obligations incurred by Borrower pursuant to this Agreement, (ii) the full and prompt payment and performance when due of any and all additional obligations of Borrower to Lender under this Agreement, together with any replacements, supplements, renewals, modifications, consolidations, restatements and extensions thereof, and (iii) the full and prompt payment and performance of any and all other obligations of Borrower to Lender under any other agreements, documents or instruments now or hereafter evidencing, securing or otherwise relating to the Obligations (this "**Guaranty**"). Guarantor further agrees to repay the Obligations on demand, without requiring Lender first to enforce or collect or exercise any rights, remedies, privileges, or powers against Borrower. This is a guarantee of payment and performance, and not of collection. This is an absolute, unconditional, primary, and continuing obligation and will remain in full force and effect until all of the Obligations have been indefeasibly paid in full and Lender has terminated this Guaranty. This Guaranty shall be construed in accordance with the laws of the State of Utah, and shall inure to the benefit of Lender and its successors and assigns. To the extent not prohibited by applicable law, Guarantor waives its right to a trial by jury of any claim or cause of action based upon, arising out of or related to this Guaranty, this Agreement and all other documentation evidencing the Obligations, in any legal action or proceeding. For each Guarantor that resides in a community property state, including, without limitation Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Texas, Washington and Wisconsin, or as otherwise requested by Lender, the spouse of such Guarantor shall execute, at any time upon demand, and agree to a Spousal Consent to Loan form. So long as any of the Obligations hereby guaranteed remain indefeasibly unpaid or undischarged (other than indemnification obligations which by their terms survive the indefeasible payment of the Obligations and the release of any Collateral) or Lender has any obligation to make the Loan, (i) Guarantor will not, by paying any sum recoverable hereunder (whether or not demanded by Lender) or by any means or on any other ground, claim any set off or counterclaim against Borrower in respect of any liability of Guarantor to Borrower, or (ii) in proceedings under federal bankruptcy law or insolvency proceedings of any nature, prove in competition with Lender in respect of any payment hereunder, or be entitled to have the benefit of, any counterclaim or proof of claim or dividend or payment by or on behalf of Borrower or the benefit of any other security for any of the Obligations which, now or hereafter, Lender may hold or in which it may have any share. Guarantor hereby expressly waives any right of contribution or reimbursement from or indemnity against Borrower or any other guarantor, whether at law or in equity, arising from any payments made by Guarantor, and Guarantor acknowledges that Guarantor has no right whatsoever to proceed against Borrower or any other guarantor for reimbursement of any such payments for so long as any of the Obligations remain indefeasibly unpaid or undischarged (other than indemnification obligations which by their terms survive the indefeasible payment of the Obligations and the release of any Collateral).

46. **TRANSFERS TO TRUSTS**. Neither Borrower nor Guarantor shall transfer any assets into a trust, including any actual or purported spendthrift trust, asset protection trust or any other trust intended by its terms or purpose (or having the effect) to protect assets

 Owner / Guarantor Initial: DS | MS | ________

from creditors or to limit the rights of existing or future creditors, without the prior written consent of Lender, and any such transfer (i) shall constitute an Event of Default under this Agreement, (ii) shall have the effect of, and shall be deemed as a matter of law, regardless of that settlor's solvency, of having been made by that settlor with the actual intent of hindering and delaying and defrauding Lender as that settlor's creditor, and (iii) shall constitute a fraudulent transfer that is unenforceable and void (not merely voidable) as against Lender.

47. **CLASS ACTION WAIVER**. THE PARTIES HERETO WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATITVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW AS AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES HEREBY AGREE THAT: (1) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOT WITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT); AND (2) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.

48. **ARBITRATION. IF LENDER, BORROWER OR ANY GUARANTOR REQUESTS, THE OTHER PARTIES AGREE TO ARBITRATE ALL DISPUTES AND CLAIMS ARISING OUT OF OR RELATING TO THIS AGREEMENT. IF LENDER, BORROWER OR ANY GUARANTOR SEEKS TO HAVE A DISPUTE SETTLED BY ARBITRATION, THAT PARTY MUST FIRST SEND NOTICE TO ALL OTHER PARTIES, IN THE MANNER OF SERVICE SPECIFIED ABOVE. LENDER, BORROWER OR ANY GUARANTOR MAY COMMENCE AN ARBITRATION PROCEEDING WITH THE AMERICAN ARBITRATION ASSOCIATION ("AAA") OR LIKE FORUM. LENDER WILL PROMPTLY REIMBURSE BORROWER OR THE GUARANTOR FOR THE AMOUNT BY WHICH ANY ARBITRATION FILING FEE EXCEEDS THE AMOUNT REQUIRED TO FILE A LAWSUIT IN FEDERAL COURT. IF BOTH BORROWER AND GUARANTOR MUST PAY FILING FEES, BUYER WILL ONLY REIMBURSE BORROWER. IF BORROWER COMMENCES THE ARBITRATION, LENDER WILL PAY THE PORTION OF BORROWER'S FILING FEE (IF ANY) THAT EXCEEDS THE AMOUNT REQUIRED TO FILE A LAWSUIT IN FEDERAL COURT. ANY ARBITRATION FEES OTHER THAN FILING FEES WILL BE ALLOCATED ACCORDING TO THE RULES OF THE ORGANIZATION ADMINISTERING THE ARBITRATION, EXCEPT AS PROVIDED IN THE NEXT SENTENCE. IF THE ARBITRATOR FINDS THAT EITHER THE SUBSTANCE OF THE CLAIM RAISED BY BORROWER OR GUARANTOR OR THE RELIEF SOUGHT BY BORROWER OR GUARANTOR IS IMPROPER OR NOT WARRANTED, AS MEASURED BY THE STANDARDS SET FORTH IN FEDERAL RULE OF PROCEDURE 11(B), THEN LENDER WILL PAY ARBITRATION FEES ONLY IF REQUIRED BY THE AAA OR LIKE FORUM RULES. THE ARBITRATOR MAY AWARD ATTORNEY FEES AND OTHER COSTS IN ACCORDANCE WITH THIS AGREEMENT AND APPLICABLE LAW. BORROWER AND GUARANTOR AGREE THAT, BY ENTERING INTO THIS AGREEMENT, THEY ARE WAIVING THE RIGHT TO TRIAL BY JURY. LENDER, BORROWER OR ANY GUARANTOR MAY BRING CLAIMS AGAINST ANY OTHER PARTY ONLY IN THEIR INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING. FURTHER, LENDER, BORROWER AND ANY GUARANTOR AGREE THAT THE ARBITRATOR MAY NOT CONSOLIDATE PROCEEDINGS FOR MORE THAN ONE PERSON'S CLAIMS, AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF A REPRESENTATIVE OR CLASS PROCEEDING, AND THAT IF THIS SPECIFIC PROVISION DEALING WITH THE PROHIBITION ON CONSOLIDATED, CLASS OR AGGREGATED CLAIMS IS FOUND UNENFORCEABLE, THEN THE ENTIRETY OF THIS ARBITRATION CLAUSE SHALL BE NULL AND VOID. THIS AGREEMENT TO ARBITRATE IS GOVERNED BY THE FEDERAL ARBITRATION ACT AND NOT BY ANY STATE LAW REGULATING THE ARBITRATION OF DISPUTES. ANY QUESTION AS TO THE ARBITRABILITY OF THIS AGREEMENT SHALL BE DECIDED SOLELY BY THE ARBITRATOR. THIS AGREEMENT IS FINAL AND BINDING EXCEPT TO THE EXTENT THAT AN APPEAL MAY BE MADE UNDER THE FAA. ANY ARBITRATION DECISION RENDERED PURSUANT TO THIS ARBITRATION AGREEMENT MAY BE ENFORCED IN ANY COURT WITH JURISDICTION. THE TERMS "DISPUTES" AND "CLAIMS" SHALL HAVE THE BROADEST POSSIBLE MEANING.**

49. **RIGHT TO OPT OUT OF ARBITRATION. BORROWER AND GUARANTOR(S) MAY OPT OUT OF THE ARBITRATION PROVISION ABOVE. TO OPT OUT OF THE ARBITRATION CLAUSE, BORROWER AND EACH GUARANTOR MUST SEND LENDER A NOTICE THAT THE BORROWER AND EACH GUARANTOR DOES NOT WANT THE CLAUSE TO APPLY TO THIS AGREEMENT. FOR ANY OPT OUT TO BE EFFECTIVE, BORROWER AND EACH GUARANTOR MUST SEND AN OPT OUT NOTICE TO THE FOLLOWING ADDRESS BY EMAIL, WITHIN 14 DAYS AFTER THE DATE OF THIS AGREEMENT: INFO@FUNDERSWEST.COM.**

50. **CERTIFICATION AND SIGNATURES**. By executing this Agreement or authorizing the applicable Signatory below to execute on its behalf, Borrower and Guarantor independently certify that Borrower and Guarantor have received a copy of this Agreement and that Borrower and Guarantor have read, understood and agreed to be bound by its terms. Each Signatory below certifies that it is signing on behalf of Borrower or Guarantor, as applicable, in the capacity indicated below such Signatory's (and if Borrower or Guarantor is a sole proprietorship, in the capacity of the owner of such sole proprietorship) and that such Signatory is authorized to execute this Agreement on behalf of or in the stated relation to Borrower or Guarantor.

**51. USA PATRIOT ACT NOTIFICATION**. The following notification is provided to Borrower and Guarantor pursuant to Section 326 of the USA Patriot Act of 2001, 31 U.S.C. Section 5318:

> IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT. To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person or entity that opens an account, including any deposit account, treasury management account, loan, other extension of credit, or other financial services product. What this means for Borrower and Guarantor: When Borrower and Guarantor open an account, if Borrower or Guarantor is an individual, Lender will ask for Borrower's or Guarantor's name, taxpayer identification number, residential address, date of birth, and other information that will allow Lender to identify Borrower or Guarantor, and if Borrower or Guarantor is not an individual, Lender will ask for Borrower's or Guarantor's name, taxpayer identification number, business address, and other information that will allow Lender to identify Borrower or Guarantor. Lender may also ask, if Borrower or Guarantor is an individual, to see Borrower's or Guarantor's driver's license or other identifying documents, and if Borrower or Guarantor is not an individual, to see Borrower's or Guarantor's legal organizational documents or other identifying documents.

**[Signatures Begin on Next Page]**

Funders West

# Signature Page

I, as a duly authorized agent of Borrower, and/or in my capacity as Guarantor, hereby affirm that I have read and understand the terms, covenants, conditions, agreements, and promises of, consent to, and agree to be bound by, this Agreement (inclusive of the Guaranty set forth therein) and the exhibits and attachments thereto.

| | | | |
|---|---|---|---|
| **Borrower:** | ISLAND LAKE CAMPCO LLC | | |
| **Name:** | DAVID ARTHUR SHABSELS | Signature: | [signature] |
| **Title:** | Owner | Date: | 05/27/2026 |

| | | | |
|---|---|---|---|
| **Guarantor** | | | |
| Name: | DAVID ARTHUR SHABSELS | Signature: | [signature] |
| Title: | Individually, and on behalf of all Additional Guarantor Entities | Date: | 05/27/2026 |

| | | | |
|---|---|---|---|
| **Guarantor** | | | |
| **Name:** | MICHAEL A SHABSELS | Signature: | [signature] |
| **Title:** | Individually, and on behalf of all Additional Guarantor Entities | **Date:** | 05/27/2026 |

| | | | |
|---|---|---|---|
| **Additional Affiliated Entity Guarantor** | | | |
| **Name:** | 1000 ACRES HOLDINGS LLC | **Signature:** | [signature] |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| Name: | 1101 EAST GLENDALE BOULEVARD REAL ESTATE LLC | **Signature:** | [signature] |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | 1101 EAST GLENDALE BOULEVARD LEASING LLC | Signature: | [signature] |
| Title: | Owner | Date: | 05/27/2026 |
| Name: | 11200 WEST FLORISSANT AVENUE LEASING LLC | Signature: | [signature] |
| Title: | Owner | Date: | 05/27/2026 |
| **Name:** | 11200 WEST FLORISSANT AVE REALTY LLC | **Signature:** | [signature] |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | 1133 NORTHWEST L STREET LEASING LLC | **Signature:** | [signature] |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | 1133 NORTHWEST L STREET REAL ESTATE | **Signature:** | [signature] |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| Name: | 1135 EAST CHOCOLATE AVENUE LEASING LLC | Signature: | [signature] |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | 1135 EAST CHOCOLATE AVENUE REAL ESTATE LLC | **Signature:** | [signature] |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | 12 CAMBRIDGE DRIVE LEASING LLC | **Signature:** | [signature] |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | 12 CAMBRIDGE DRIVE REALTY LLC | **Signature:** | [signature] |
| **Title:** | Owner | **Date:** | 05/27/2026 |



Owner / Guarantor Initial: DS | MS | ________

| | | | |
|---|---|---|---|
| **Name:** | 1323 AUGUSTA WEST PARKWAY LEASING LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | 1323 AUGUSTA WEST PARKWAY REAL ESTATE LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | 1401 US HIGHWAY 498 REAL ESTATE LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | 149 EMERALD STREET LEASING LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | 149 EMERALD STREET REAL ESTATE LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | 1600 EASTCHASE PARKWAY LEASING LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | 1600 EASTCHASE PARKWAY REAL ESTATE LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | 1750 WELLS REAL ESTATE LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | 1800 & 4215 OKLAHOMA REALTY LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | 1912 MEMORIAL DRIVE REAL ESTATE LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | 194 WASHINGTON AVE. REAL ESTATE LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | 194 WASHINGTON AVENUE LEASING LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | 200 GREAT POND DRIVE LEASING LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | 200 GREAT POND DRIVE REAL ESTATE LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | 201 CENTRE DRIVE LEASING LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | 201 CENTRE DRIVE REAL ESTATE LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | 2195 HARLEM ROAD LEASING LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | 2195 HARLEM ROAD REAL ESTATE LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | 2203 GRAND CANAL BOULEVARD LEASING LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |



 Owner / Guarantor Initial: DS | MS | ________

| | | | |
|---|---|---|---|
| **Name:** | 2203 GRAND CANAL BOULEVARD REAL ESTATE LLC | **Signature:** | |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | 2302 WINDSONG DRIVE LEASING LLC | **Signature:** | |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | 2434 SOUTH INTERSTATE 35E LEASING LLC | **Signature:** | |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | 2434 SOUTH INTERSTATE 35E REAL ESTATE LLC | **Signature:** | |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | 250 PROGRESSIVE LEASING LLC | **Signature:** | |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | 250 PROGRESSIVE REAL ESTATE LLC | **Signature:** | |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | 2547 BRINDLE DRIVE LEASING LLC | **Signature:** | |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | 2547 BRINDLE DRIVE REAL ESTATE LLC | **Signature:** | |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | 2974 COPPERCREEK ROAD LEASING LLC | **Signature:** | |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | 2974 COPPERCREEK ROAD REAL ESTATE LLC | **Signature:** | |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | 3385 NEWMARK DRIVE LLC | **Signature:** | |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | 3413 TITTABAWASSEE ROAD LEASING LLC | **Signature:** | |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | 3413 TITTABAWASSEE ROAD REAL ESTATE LLC | **Signature:** | |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | 348 MORRIS AVENUE REAL ESTATE LLC | **Signature:** | |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | 400 GREENS ROAD LEASING LLC | **Signature:** | |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | 400 GREENS ROAD REAL ESTATE LLC | **Signature:** | |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | 4328 BAY ROAD REAL ESTATE LLC | **Signature:** | |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | 4328 BAY ROAD LEASING LLC | **Signature:** | |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | 44 SOUTHPOINT DRIVE LEASING LLC | **Signature:** | |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | 44 SOUTHPOINT DRIVE REAL ESTATE LLC | **Signature:** | |
| **Title:** | Owner | **Date:** | 05/27/2026 |





Owner / Guarantor Initial: DS | MS | ________

| | | | |
|---|---|---|---|
| **Name:** | 45 COMMERCE DRIVE LEASING LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | Date: | 05/27/2026 |
| **Name:** | 45 COMMERCE DRIVE REAL ESTATE LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | 4650 WESTWAY PARK BOULEVARD LEASING LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | 4650 WESTWAY PARK BOULEVARD REAL ESTATE LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | 4800 USH 280 LEASING LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | Date: | 05/27/2026 |
| **Name:** | 4800 USH 280 REAL ESTATE LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | Date: | 05/27/2026 |
| **Name:** | 55 MERLINO DRIVE LEASING LLC | Signature: | David Shabsels |
| **Title:** | Owner | Date: | 05/27/2026 |
| Name: | 55 MERLINO DRIVE REAL ESTATE LLC | Signature: | David Shabsels |
| **Title:** | Owner | Date: | 05/27/2026 |
| **Name:** | 5707 MACCORCKLE AVENUE LEASING LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | 5707 MACCORKLE AVENUE REAL ESTATE LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | Date: | 05/27/2026 |
| **Name:** | 635 GRAVOIS REAL ESTATE LLC | Signature: | David Shabsels |
| **Title:** | Owner | Date: | 05/27/2026 |
| **Name:** | 635 GRAVOIS ROAD LEASING LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| Name: | 7335 GLADIOLUS LLC | Signature: | David Shabsels |
| Title: | Owner | Date: | 05/27/2026 |
| Name: | 7650 FM 78 LEASING LLC | **Signature:** | David Shabsels |
| Title: | Owner | Date: | 05/27/2026 |
| **Name:** | 7650 FM 78 REAL ESTATE LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | 771 CORPORATE DRIVE LEASING LLC | **Signature:** | David Shabsels |
| Title: | Owner | **Date:** | 05/27/2026 |
| **Name:** | 771 CORPORATE DRIVE REAL ESTATE LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | Date: | 05/27/2026 |
| **Name:** | 8014 BAYBERRY ROAD REAL ESTATE LLC | Signature: | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | 830 COUNTY ROAD 64 LEASING LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | 830 COUNTY ROAD 64 REAL ESTATE LLC | Signature: | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |





Owner / Guarantor Initial: DS | MS | ________

| | | | |
|---|---|---|---|
| **Name:** | 9 FARM SPRING LEASING LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | 9 FARM SPRING REAL ESTATE LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | 90 PLEASANT VALLEY STREET LEASING LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | 90 PLEASANT VALLEY STREET REAL ESTATE LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | ACHIM LANDCO LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | ACHIM OPERATINGCO LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | BAHS HOLDINGS LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | BAHS OPERATING INC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | BANNER LANDCO LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | BANNER OPERATINGCO LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | BAYBERRY WELLS LLC LEASING LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | BELGRADE LAKES SUMMER CAMP LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | BLUESTAR LANDCO LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | BLUESTAR OPERATINGCO LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | Camp Med-O-Lark Inc | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | Chateaugay Campco LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | Chateaugay Landco LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | Club Getaway Landco LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | Club Getaway Operatingco LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | Country Roads Landco LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | Country Roads Operatingco LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | DAMIS Holdings LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |

| | | | |
|---|---|---|---|
| **Name:** | Eagle's Landing Day Camp LLC | **Signature:** | |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | East Hartford Properties Leasing LLC | **Signature:** | |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | East Hartford Properties Real Estate LLC | **Signature:** | |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | Fairplain Plaza Leasing LLC | **Signature:** | |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | Fairplain Plaza Real Estate LLC | **Signature:** | |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | Green Lane Landco LLC | **Signature:** | |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | Green Lane Operatingco LLC | **Signature:** | |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | Greenvilleland LLC | **Signature:** | |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | Iafalandco LLC | **Signature:** | |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | Iafaoperatingco LLC | **Signature:** | |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | Island Lake Campco LLC | **Signature:** | |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | Island Lake Landco LLC | **Signature:** | |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | Kiwi Landco LLC | **Signature:** | |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | Kiwi Operatingco LLC | **Signature:** | |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | Lavco LLC | **Signature:** | |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | Lavland LLC | **Signature:** | |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | Maine Wekeela Co LLC | **Signature:** | |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | Malka Operatingco LLC | **Signature:** | |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | Matteson Center Leasing LLC | **Signature:** | |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | Matteson Center Real Estate LLC | **Signature:** | |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | Meadowbrook Landco LLC | **Signature:** | |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | Meadowbrook Operatingco LLC | **Signature:** | |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | Mesorahco LLC | **Signature:** | |

| | | | |
|---|---|---|---|
| Title: | Owner | Date: | 05/27/2026 |
| Name: | Mesorahland LLC | Signature: | David Shabsels |
| Title: | Owner | Date: | 05/27/2026 |
| Name: | Mill Road Loandco LLC | Signature: | David Shabsels |
| Title: | Owner | Date: | 05/27/2026 |
| Name: | Mogenavco LLC | Signature: | David Shabsels |
| Title: | Owner | Date: | 05/27/2026 |
| Name: | Mogenavland LLC | Signature: | David Shabsels |
| Title: | Owner | Date: | 05/27/2026 |
| Name: | Mohawk Country Home School Inc | Signature: | David Shabsels |
| Title: | Owner | Date: | 05/27/2026 |
| Name: | Mohawkcampco LLC | Signature: | David Shabsels |
| Title: | Owner | Date: | 05/27/2026 |
| Name: | Mohawkland LLC | Signature: | David Shabsels |
| Title: | Owner | Date: | 05/27/2026 |
| Name: | Oklahoma Wilshire Lofts Leasing LLC | Signature: | David Shabsels |
| Title: | Owner | Date: | 05/27/2026 |
| Name: | Oklahoma Wilshire Lofts Real Estate LLC | Signature: | David Shabsels |
| Title: | Owner | Date: | 05/27/2026 |
| Name: | Pine Forest Campco LLC | Signature: | David Shabsels |
| Title: | Owner | Date: | 05/27/2026 |
| Name: | Pine Forest Landco LLC | Signature: | David Shabsels |
| Title: | Owner | Date: | 05/27/2026 |
| Name: | Poland Landco LLC dba Camp North Star | Signature: | David Shabsels |
| Title: | Owner | Date: | 05/27/2026 |
| Name: | Poland Landco LLC | Signature: | David Shabsels |
| Title: | Owner | Date: | 05/27/2026 |
| Name: | RDM Camps LLC | Signature: | David Shabsels |
| Title: | Owner | Date: | 05/27/2026 |
| Name: | Rocking Horse Ranch Landco LLC | Signature: | David Shabsels |
| Title: | Owner | Date: | 05/27/2026 |
| Name: | Rocking Horse Ranch Operatingco LLC | Signature: | David Shabsels |
| Title: | Owner | Date: | 05/27/2026 |
| Name: | Rolling Hills Landco LLC | Signature: | David Shabsels |
| Title: | Owner | Date: | 05/27/2026 |
| Name: | Rolling Hills Operatingco LLC | Signature: | David Shabsels |
| Title: | Owner | Date: | 05/27/2026 |
| Name: | Simad Holdings LLC | Signature: | David Shabsels |
| Title: | Owner | Date: | 05/27/2026 |
| Name: | Shab Holdings LLC | Signature: | David Shabsels |
| Title: | Owner | Date: | 05/27/2026 |
| Name: | Shab Operating Inc | Signature: | David Shabsels |
| Title: | Owner | Date: | 05/27/2026 |
| Name: | South Loop West Leasing LLC | Signature: | David Shabsels |
| Title: | Owner | Date: | 05/27/2026 |

Funders First





Owner / Guarantor Initial: DS | MS |

| | | | |
|---|---|---|---|
| **Name:** | South Loop West Real Estate LLC | **Signature:** | |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | Splashdown Beach Landco LLC | **Signature:** | |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | Splashdown Beach Operatingco LLC | **Signature:** | |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | Stony Creek Operating Co LLC | **Signature:** | |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | Summit Camp LLC | **Signature:** | |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | Turnpike Road Holdings LLC | **Signature:** | |
| **Title:** | Owner | **Date:** | 05/27/2026 |

Funders West

| | | | |
|---|---|---|---|
| **Name:** | Washington Lake LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | Waukeela Landco LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | Waukeela Operatingco LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | Wekeeland LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | Willow Lake Day Camp LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | Willow Lake Land Corp | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | Willow Lake Land Corp | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | WM Camp LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | WM Land LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | Woodlands Eagle Timber Leasing LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | Woodlands Eagle Timber Real Estate LLC | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |

*For Lender's Use Only: This Agreement has been received and accepted by Lender.*

SIGNATURE

**FUNDERS APP LLC d/b/a FUNDERS WEST,**
a Utah limited liability company

SIGNATURE ____________________

Name ____________________

Title ____________________

Date ____________________

Funders West

# Exhibit A

Commercial Purpose Affidavit
and
Waiver of Federal and State Truth-in-Lending Disclosures

In consideration of Lender granting the Loan secured by the Collateral, Borrower, on behalf of itself and Guarantor, hereby certifies and affirms to Lender that the proceeds of the Loan, and any and all documents, agreements, and instruments which are executed in connection therewith, are for business and commercial purposes only and not at all for any personal, family, household or other noncommercial purposes.

Borrower, on behalf of itself and Guarantor, hereby acknowledges its understanding that Federal and State Truth-in-Lending and Notice of Right of Rescission disclosures are not required for transactions in which the Loan proceeds are used solely for business and commercial purposes. Borrower, on behalf of itself and Guarantor, further acknowledges its understanding that by certifying that the Loan is entirely and solely for business and commercial purposes and not at all for any personal, family, household or other noncommercial purposes. Borrower, on behalf of itself and Guarantor, is waiving all rights to Federal and State Truth-in-Lending disclosures and a Notice of Right of Rescission to which it might otherwise have had if any part of the proceeds were to have been used for any personal, family, household or other noncommercial purposes.

IN WITNESS WHEREOF, Borrower, on behalf of itself and Guarantor, executes this Commercial Purpose Affidavit and Waiver of Federal and State Truth-in-Lending Disclosures as of the Effective Date.

| | | | |
|---|---|---|---|
| **Borrower:** | ISLAND LAKE CAMPCO LLC | | |
| **Name:** | DAVID ARTHUR SHABSELS | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |

Funders West

# Exhibit B

**AUTHORIZATION AGREEMENT FOR DIRECT DEPOSIT (ACH CREDIT) AND DIRECT PAYMENTS (ACH DEBITS)**

**This Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits) (this "ACH Authorization Form") is part of (and incorporated by reference into) the Business Loan and Security Agreement (as amended, restated, supplemented, or otherwise modified from time to time, the "Loan Agreement"). Borrower should keep this important legal document for Borrower's records. Terms used but not defined herein have the same meanings assigned to such terms in the Loan Agreement.**

**DISBURSEMENT OF LOAN PROCEEDS**. By executing this ACH Authorization Form, Borrower authorizes Lender to disburse the Loan proceeds less the amount of any applicable fees and in accordance with the Loan Agreement, if any, upon Loan approval by initiating an ACH credit, wire transfer or similar means to the checking account indicated herein (or a substitute checking account Borrower later identifies and is acceptable to Lender) (hereinafter referred to as the "**Designated Checking Account**") in the disbursal amount set forth in the table entitled "Your Loan Details" in the Loan Agreement less any fees and expenses owed to Lender, any amounts owed to Lender from any prior Advance, indebtedness, or loan, and any amounts used to pay off obligations owed by Borrower to a third-party creditor. This authorization is to remain in full force and effect until Lender has received written notification from Borrower of its termination in such time and in such manner as to afford Lender and Borrower's depository bank a reasonable opportunity to act on it.

**AUTOMATIC PAYMENT PLAN**. By executing this Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits), Borrower authorizes Lender: (i) to collect payments by initiating automated clearing house ("**ACH**") debit entries (each, an "**ACH Debit**") to the Designated Checking Account in the amounts and on the dates provided in the Payment Schedule set forth in the table entitled "Your Loan Details" in the Loan Agreement, and (ii) to resubmit any returned or failed ACH Debits for any previously scheduled payment(s) that was not paid as provided in the Payment Schedule, as permitted by law and NACHA rules of the Electronic Payments Association ("**NACHA Rules**"). This authorization constitutes Borrower's enrollment in Lender's "**Automatic Payment Plan**" and is to remain in full force and effect until Lender has received written notification from Borrower of its termination no less than three (3) Business Days before a scheduled payment. Lender may suspend or terminate Borrower's enrollment in the Automatic Payment Plan immediately if Borrower fails to keep Borrower's Designated Checking Account in good standing or if there are insufficient funds in Borrower's checking account to process any payment, or if Lender is otherwise unable to collect any amounts by ACH Debits that are owed to Lender under the Loan or under any other loan or extension of credit by Lender to Borrower. If Borrower revokes the authorization or Lender suspends or terminates Borrower's enrollment in the Automatic Payment Plan, Borrower still will be responsible for making timely payments pursuant to the alternative payment methods described in the Loan Agreement.

**PROVISIONAL PAYMENT**. Credit given by us to you with respect to an ACH credit entry (each, an "ACH Credit") is provisional until we receive final settlement for such entry through a Federal Reserve Bank. If we do not receive such final settlement, you are hereby notified and agree that we are entitled to a refund of the amount credited to you in connection with such entry, and the party making such entry to you (i.e., the originator of the entry) shall not be deemed to have paid you in the amount of such entry.

**ACH AUTHORIZATION FOR MATERIAL MISREPRESENTATIONS**. In the event that we determine that you made any material misrepresentation in your application (including, but not limited to, misrepresenting your business revenue, altering bank statements, misrepresenting the purpose of the funds, etc.) you authorize Lender to debit the Designated Checking Account the full Loan Amount less such amounts that have already been paid or debited thereunder. In the event that Lender exercises this option and debits such amount from your Designated Checking Account, you agree that all other terms of the Loan Agreement shall remain in full force and effect.

**NOTICE OF RECEIPT OF ENTRY**. Under the NACHA Rules, which are applicable to ACH transactions involving your account, we are not required to give next-day notice to you of receipt of an ACH item and we may not elect to do so. However, we will continue to notify you of the receipt of payments in the periodic statement we provide to you.

**BUSINESS PURPOSE ACCOUNT**. By executing this ACH Authorization Form, Borrower attests that the Designated Checking Account was established for business and commercial purposes and not primarily for personal, family or household purposes.

**ACCOUNT CHANGES**. Borrower agrees to promptly notify Lender in writing if there are any changes to the Designated Checking Account or to the routing numbers of the Designated Checking Account.





Owner / Guarantor Initial: DS | MS | ________

**MISCELLANEOUS.** Lender is not responsible for any fees, expenses, charges, or penalties directly or indirectly charged or imposed by Borrower's bank as the result of the ACH Credits or ACH Debits initiated under this ACH Authorization Form. The origination of ACH transactions to Borrower's account must comply with the provisions of applicable United States federal and state law. Borrower agrees to be bound by the NACHA Rules.

| Bank Information: BANK OF AMERICA, N.A. | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | [redacted] |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | 05/27/2026 |

| Bank Information: TD BANK NA | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | [redacted] |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | 05/27/2026 |

| Bank Information: CHASE BANK | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | 05/27/2026 |

| Bank Information: FIRST BANK | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | 05/27/2026 |

| Bank Information: TD BANK | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | 05/27/2026 |

| Bank Information: Bank of America | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | 05/27/2026 |



(PV-05272026 -V1) Owner / Guarantor Initial: DS | MS | ________

| Bank Information: Bank of America | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | 05/27/2026 |

| Bank Information: Bank of America | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | 05/27/2026 |

| Bank Information: TD BANK NA | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | 026013673 |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | 05/27/2026 |

| Bank Information: Bank of America | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | 05/27/2026 |

| Bank Information: Unknown | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | 05/27/2026 |

| Bank Information: Unknown | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | 05/27/2026 |

| Bank Information: Unknown | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | 05/27/2026 |



Owner / Guarantor Initial: DS | MS | ________

| Bank Information: Bank of America | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: Busey Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: bankESB | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: Wayne Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: bankESB | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: FirstBank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: Bank of America | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: bankESB | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: bankESB | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: First Carolina Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: Addison Avenue Investment Svcs | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: Addison Avenue Investment Svcs | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: Ascend Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: First Carolina Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

Funders West

| Bank Information: Arrow Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | | Date | 05/27/2026 |

| Bank Information: Windsor Federal Savings | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | | Date | 05/27/2026 |

| Bank Information: Windsor Federal Savings | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | | Date | 05/27/2026 |

| Bank Information: Bank of Clarke County Retail | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | | Date | 05/27/2026 |

| Bank Information: Bank of New Hampshire | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | | Date | 05/27/2026 |

| Bank Information: Bank of America | | | |
|---|---|---|---|
| Account Number | [redacted]7 | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | | Date | 05/27/2026 |

| Bank Information: Bank of America | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | | Date | 05/27/2026 |



Owner / Guarantor Initial: ______ | ______ | ______

| Bank Information: FM Bank | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | 05/27/2026 |

| Bank Information: BANK OF AMERICA | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | 05/27/2026 |

| Bank Information: First Merchants Bank | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | 05/27/2026 |

| Bank Information: ST Bank | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | 05/27/2026 |

| Bank Information: ST Bank | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | 05/27/2026 |

| Bank Information: First Financial Bank | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | 05/27/2026 |

| Bank Information: First Financial Bank | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | 05/27/2026 |



Owner / Guarantor Initial: DS | MS | ______

| Bank Information: First Merchants Bank | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | 05/27/2026 |

| Bank Information: First Financial Bank | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | 05/27/2026 |

| Bank Information: Bank Iowa | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | 05/27/2026 |

| Bank Information: Bank Iowa | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | 05/27/2026 |

| Bank Information: First Financial Bank | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | 05/27/2026 |

| Bank Information: Fidelity Bank | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | 05/27/2026 |

| Bank Information: Fidelity Bank | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | 05/27/2026 |

| Bank Information: Fidelity Bank | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | 05/27/2026 |

| Bank Information: Kennebec Savings Bank | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | 05/27/2026 |

| Bank Information: Woodforest | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | 05/27/2026 |

| Bank Information: MAX Credit Union | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | 05/27/2026 |

| Bank Information: MAX Credit Union | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | 05/27/2026 |

| Bank Information: Chase | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | 05/27/2026 |

| Bank Information: First Financial Bank | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | 05/27/2026 |

| Bank Information: First Financial Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: Illinois National Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: Busey Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: First Financial Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: Hancock Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: TriState Capital Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: TriState Capital Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |





Owner / Guarantor Initial: DS | MS |

| Bank Information: Bank of America | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: Kennebec Savings Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: Northern Bank Trust | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: Bank of America | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: Byline Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: Old National | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: Byline Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |



(PV-05272026 -V1) Owner / Guarantor Initial: DS | MS |

| Bank Information: Old National | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: HomeTrust Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: Bank of New Hampshire | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: Community Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: Community Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: Bank of America | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: First National Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |



(PV-05272026 -V1) Owner / Guarantor Initial: DS | MS | ______

| Bank Information: First National Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: First National Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: Union Savings Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: Bank of America | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: Bank of America | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: FIRST TECH FCU | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: Addison Avenue Investment Svcs | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |





Owner / Guarantor Initial: DS | MS |

| Bank Information: Addison Avenue Investment Svcs | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: BANK OF AMERICA | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: Addison Avenue Investment Svcs | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: Addison Avenue Investment Svcs | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: Addison Avenue Investment Svcs | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: TD BANK | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: TD BANK | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |



(PV-05272026 -V1)

Owner / Guarantor Initial: DS | MS |

| Bank Information: Bank of America | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: BANK OF NEW HAMPSHIRE | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: PCSB Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: WAYNE BANK | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: PCSB BANK | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: BANK OF AMERICA | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: Wayne Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |



Owner / Guarantor Initial: DS | MS |

| Bank Information: Bank of America | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | | Date | 05/27/2026 |

| Bank Information: Wayne Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | | Date | 05/27/2026 |

| Bank Information: Bank of America | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | | Date | 05/27/2026 |

| Bank Information: HEARTLAND BANK AND TRUST COMPANY | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | | Date | 05/27/2026 |

| Bank Information: Peapack Private Bank Trust | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | | Date | 05/27/2026 |

| Bank Information: Bank of America | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | | Date | 05/27/2026 |

| Bank Information: Bank of America | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | | Date | 05/27/2026 |

| Bank Information: BANK OF NEW HAMPSHIRE | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: BANK OF AMERICA | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: Wayne Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: BANK OF AMERICA | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: First Carolina Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: Bank of America | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: TD BANK | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |





Owner / Guarantor Initial: DS | MS | ________

| Bank Information: First Carolina Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: Bank of New Hampshire | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: Bank of New Hampshire | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: TFNB | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: NBT Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: Berkshire Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: Berkshire Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |





Owner / Guarantor Initial: DS | MS |

| Bank Information: NBT Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: NBT Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: NBT Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: Bank of America | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: Bank of America | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: NBT Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: NBT Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |



Owner / Guarantor Initial: DS | MS | ________

| Bank Information: First Financial Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: First Citizens Community Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: Bank of America | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: bankHometown | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: bankHometown | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: unknown | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: Bank of New Hampshire | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |





Owner / Guarantor Initial: DS | MS | ________

| Bank Information: Bank of New Hampshire | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: First Carolina Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: Bank of New Hampshire | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: First Carolina Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: Provident Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | | Date | 05/27/2026 |

| Bank Information: Bank of New Hampshire | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: Bank Iowa | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: Provident Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: Bank Iowa | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: Bank of America | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: Bank of America | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: Hancock Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | | Date | 05/27/2026 |

| Bank Information: TD BANK | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |

| Bank Information: First Carolina Bank | | | |
|---|---|---|---|
| Account Number | [redacted] | Routing Number | |
| Name | DAVID ARTHUR SHABSELS | | |
| Signature | David Shabsels | Date | 05/27/2026 |





Owner / Guarantor Initial: DS | MS | ____

| Bank Information: unknown | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | 05/27/2026 |

| Bank Information: unknown | | | |
|---|---|---|---|
| **Account Number** | [redacted] | **Routing Number** | |
| **Name** | DAVID ARTHUR SHABSELS | | |
| **Signature** | David Shabsels | **Date** | 05/27/2026 |

Funders West

# Exhibit C

## SERVICING AGENT ADDENDUM

This is an Addendum dated 05/27/2026 to the Sale of Future Receipts Agreement ("Agreement") dated 05/27/2026 between FUNDERS WEST and ISLAND LAKE CAMPCO LLC ("Borrower"). This Addendum incorporates the Agreement by reference. The terms of this Addendum will control to the extent they conflict with any of the terms in the Agreement.

Pursuant to the Agreement, please be advised that the following affiliates may service the Agreement:

UCC Filings: ______________________________

Funding of Purchase Price: ______________________________

ACH Debiting of Receivables and Collections: ______________________________

| FOR THE BORROWER / OWNER (#1) : ISLAND LAKE CAMPCO LLC | | | |
|---|---|---|---|
| **By:** | DAVID ARTHUR SHABSELS | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |

Funders West



 Owner / Guarantor Initial: DS | MS | ________

# Exhibit D

**Form of Compliance Certificate**

This Compliance Certificate (this "Certificate") is given by ISLAND LAKE CAMPCO LLC, (the "Borrower"), pursuant to Paragraph 23 of that certain Business Loan and Security Agreement, dated as of 05/27/2026 (the "Agreement"), among Borrower, and FUNDERS APP LLC d/b/a FUNDERS WEST, a Utah corporation ("Lender"). Capitalized terms used herein without definition shall have the meanings set forth in the Note.

The officer executing this Certificate is the Owner of Borrower, and as such is duly authorized to execute and deliver this Certificate. By so executing this Certificate, Borrower hereby certifies to Lender that:

(a) Borrower has reviewed the relevant terms of the Loan Documents and the condition of Borrower;

(b) no Event of Default has occurred or is continuing, except as set forth in Schedule I hereto (which includes a description of the nature and status and period of existence of such Event of Default, if any, and the steps Borrower has taken or proposes to be taken with respect thereto);

(c) the financial statements delivered with this certificate in accordance with Paragraph 23 of the Agreement have been prepared in accordance with GAAP consistently applied with prior periods and present fairly in all material respects the financial position and the results of operations of Borrower and its subsidiaries, on a consolidated basis, as of the dates of and for the periods covered by such financial statements (subject, in the case of interim financial statements, to lack of footnotes and year-end adjustments); and

(d) except as otherwise disclosed in Schedule 1 hereto, Borrower is in compliance with each of the covenants set forth in the Agreement, as demonstrated by the calculation of such covenants in Schedule II hereto.

| **BORROWER: ISLAND LAKE CAMPCO LLC** | | | |
|---|---|---|---|
| **Name:** | DAVID ARTHUR SHABSELS | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |

Funders West

# EXHIBIT E

## DEPOSIT ACCOUNT CONTROL AGREEMENT
## (SPRINGING CONTROL)

THIS DEPOSIT ACCOUNT CONTROL AGREEMENT (SPRINGING CONTROL) (this "**Agreement**") is entered into as of 05/27/2026 by and among the following parties:

| | |
|---|---|
| ("**Creditor**") | FUNDERS APP LLC d/b/a FUNDERS WEST |
| ("**Debtor**") | ISLAND LAKE CAMPCO LLC d/b/a ISLAND LAKE CAMPCO |
| ("**Bank**") | |

Funders West

WHEREAS, Creditor and Debtor have entered into that certain Business Loan and Security Agreement (the "**Security Agreement**") dated on or about _________________ pursuant to which Debtor has granted Creditor a security interest in the Pledged Account (defined below) and in all funds heretofore or hereafter deposited into the Pledged Account, including any interest earned thereon.

WHEREAS, the parties hereto are entering into this Agreement to perfect Creditor's security interest in that account.

NOW, THEREFORE, in consideration of their mutual covenants and promises, the parties agree as follows:

**1. The Pledged Account.**

Bank represents and warrants to Creditor that the deposit account(s) further described in Schedule 1 attached hereto (such account(s), individually and collectively, the "**Pledged Account**") has/have been established for Debtor at Bank and that, as of the date hereof, Bank does not know of any claim to or interest in the Pledged Account, except for claims and interests of the parties referred to in this Agreement.

Pursuant to the Security Agreement, Debtor has granted Creditor a security interest in the Pledged Account and all funds, checks, cash, items, instruments, securities, investment properties and other Financial Assets (as defined below) held in or credited to the Pledged Account from and other things of value at any time paid, deposited, payable or credited to the Pledged Account and all proceeds of the foregoing (the "**Account Collateral**").

Debtor represents and warrants to Creditor and Bank that (a) Debtor has not assigned nor granted a security interest in the Pledged Account or the Account Collateral, except to Creditor and (b) Debtor will not permit the Pledged Account or the Account Collateral to become subject to any other pledge, assignment, lien, charge or encumbrance of any kind, other than Creditor's security interests referred to herein.

Except as otherwise required by law, Bank will not agree with any third party to comply with any request to execute transactions in the Pledged Account (an "**Order**") originated by such third party.

Bank acknowledges that Debtor has granted to Creditor a security interest in the Pledged Account and the Account Collateral. This Agreement is intended to perfect Creditor's security interest in and evidence control (as defined in Section 9-104 of the UCC) over the Pledged Account and the Account Collateral.

2. **Control of Pledged Account.**

Bank shall comply with any Order originated by Creditor as soon as possible, but in any event, within five (5) Business Days, without Debtor's further consent and without regard to any conflicting instructions given by Debtor; provided, however, that Bank may execute transactions in the Pledged Account, at the direction of Debtor unless and until Bank receives from Creditor



 Owner / Guarantor Initial: DS | MS | ________

a written Notice of Exclusive Control in substantially the form of Exhibit A hereto (a "**Notice of Exclusive Control**") along with a fully executed copy of this Agreement.

Upon Bank's receipt of a Notice of Exclusive Control, (a) Debtor shall have no further rights to instruct Bank with respect to the Pledged Account or the Account Collateral or to obtain funds from the Account Collateral, (b) within a reasonable time, not to exceed two (2) Bank Days, after the Bank Day on which the Notice of Exclusive Control is actually received from Creditor, (i) Bank will cease complying with instructions or other directions concerning the Pledged Account originated by Debtor, (ii) Bank shall neither accept nor comply with any instructions from Debtor withdrawing or transferring any funds or other property from the Pledged Account, and (iii) Bank shall not deliver any property in the Pledged Account to Debtor nor pay any free credit balance or other amount owing from Bank to Debtor with respect to the Pledged Account, and (c) Bank shall terminate or unwind any CDARS Deposit Placement Agreement, ICS Deposit Placement Agreement or similar arrangement that at the time may be in place in connection with the Pledged Account, unless otherwise instructed by Creditor to Bank.

Bank may rely on a Notice of Exclusive Control purportedly signed by Creditor and shall have no duty to investigate or make any determination as to the validity, genuineness or propriety thereof, or the facts giving rise thereto. This Agreement does not create or impose any obligation or duty upon Bank other than those expressly set forth herein.

Unless otherwise agreed in writing between Bank and Creditor, Bank will transfer funds from the Pledged Account to Creditor in response to an Order from Creditor in accordance with this Agreement on any day other than a Saturday, Sunday or public holiday on which Bank is open to conduct its regular banking business (each such day a "**Bank Day**"), if Bank receives an Order on such Bank Day before the deadline established by Bank from time to time for such transfer requests, and the amount requested to be transferred does not exceed the collected and available balance in the Pledged Account at the beginning of such Bank Day as determined by Bank after deducting the amount of all Returned Items (as defined in Section 4 below).

3. **UCC Matters**.

For purposes of the Uniform Commercial Code as in effect on the date hereof (the "**UCC**"), the Pledged Account shall be deemed to consist of (a) a "securities account" (within the meaning of Section 8-501(a) of the UCC) with respect to any securities, investment properties and other "financial assets" (within the meaning of Section 8-102(a)(9) of the UCC, the "**Financial Assets**") held in or credited to the Pledged Account from time to time, and (b) a "deposit account" (within the meaning of Section 9-102(a)(29) of the UCC) with respect to any cash deposited in or credited to the Pledged Account from time to time. Creditor, Debtor and Bank each hereby agree that each item of property other than cash (whether investment property, a financial asset, a security or an instrument) credited to the Pledged Account shall be deemed a Financial Asset.

Bank hereby confirms that it is a "securities intermediary" (within the meaning of Section 8-102(a)(14) of the UCC) with respect to the Pledged Account and the Financial Assets credited to such Pledged Account, and, to the extent that the Pledged Account is determined not to be securities accounts, it is a "bank" (within the meaning of 9-102(a)(8) of the UCC) with respect to the Pledged Account and credit balances not constituting Financial Assets credited thereto.

4. **Priority of Creditor's Security Interest; Rights Reserved by Bank.** Bank agrees that all of its present and future rights against the Pledged Account are subordinate to Creditor's security interest therein; provided, however, that Creditor agrees that nothing herein subordinates or waives, and that Bank expressly reserves, all of its present and future rights (whether described as rights of setoff, banker's lien, chargeback or otherwise, and whether available to Bank under the law or under any other agreement between Bank and Debtor concerning the Pledged Account, or otherwise) with respect to: (a) items deposited to the Pledged Account and returned unpaid or with respect to which Bank fails to receive final settlement, whether for insufficient funds or for any other reason, including but not limited to the claim of a forged instrument, and without regard to the timeliness of return of any such items; (b) checks paid, or other payment orders executed in good faith against uncollected funds in the Pledged Account provided Bank does not have reasonable cause to doubt the collectability of such uncollected funds; (c) any ACH entry credited to the Pledged Account and returned unpaid or subject to an adjustment entry under applicable clearing house rules, whether for insufficient funds or for any other reason; (d) any credit to the Pledged Account from a merchant card transaction, against which a contractual demand for chargeback has been made; (e) claims of breach of the transfer or presentment warranties arising under the UCC made against Bank in connection with items deposited to the Pledged Account; (f) any substitute check or purported subject check deposited to the Pledged Account that is the subject of an indemnity claim, including, but not limited to, breach of warranty; (g) any credit to the Pledged Account



 Owner / Guarantor Initial: DS | MS |

made in error; and (h) Bank's usual and customary Charges (defined below) in connection with the Pledged Account. Items, entries and transactions described in clauses (a) through (h) of this paragraph are hereinafter collectively referred to as "**Returned Items**").

5. **Returned Item Amounts**. Debtor and Creditor understand and agree that Bank will collect the amount ("**Returned Item Amount**") of any and each Returned Item by debiting the Pledged Account. Debtor and Creditor further understand and agree that in the event the Returned Item is a substitute check or a purported substitute check, in addition to the Returned Item Amount, Bank may debit the Pledged Account for any further amount to satisfy any indemnity claim. Debtor shall pay the amount of each Returned Item immediately upon demand to the extent there are not sufficient funds in the Pledged Account to cover such amount on the day of the debit. Creditor shall pay to Bank, within twenty (20) days after demand on Creditor by Bank, any such amount that has not been paid in full by Debtor within ten (10) days after demand on Debtor by Bank to the extent that Creditor received proceeds from the corresponding Returned Item; provided, however, that if Bank is stayed from making such demand upon Debtor as a result of a bankruptcy or similar proceeding, then Bank shall be deemed to have made such demand upon Debtor at the commencement of such proceeding.

6. **Statements; Notices of Adverse Claim**. Bank shall disclose to Creditor such information concerning the Pledged Account as Creditor may from time to time reasonably request; provided, however, that Bank shall have no obligation to disclose to Creditor any information which Bank does not ordinarily make available to its depositors. Bank will promptly notify Creditor and Debtor if any other person claims that it has a lien, property interest in or adverse claim against the Pledged Account.

7. **Right to Place Hold; Bankruptcy; Interpleader**. If at any time: (a) Bank, in good faith, is in doubt as to the action it should take under this Agreement, (b) Debtor becomes subject to a voluntary or involuntary bankruptcy, reorganization, receivership or similar proceeding, or (c) Bank is served with legal process which it in good faith believes prohibits the disbursement of the funds deposited in the Pledged Account, then Bank shall have the right to (i) place a hold on the funds in the Pledged Account until such time as it receives an appropriate court order or other assurance satisfactory to it as to the disposition of the funds in the Pledged Account, or (ii) commence, at Debtor's expense, an interpleader action, and otherwise to take no further action except in accordance with joint written instructions from Debtor and Creditor or in accordance with the final order of a competent court, served on Bank.

8. **Bank's Responsibility.**

Except for permitting a withdrawal in violation of Section 2 above, Bank will not be liable to Creditor for complying with Orders from Debtor that are received by Bank before Bank receives and has had a reasonable opportunity to act on a contrary Order from Creditor

Bank will not be liable to Debtor for complying with Orders originated by Creditor, even if Debtor notifies Bank that Creditor is not legally entitled to issue Orders, unless Bank takes the action after it is served with an injunction, restraining order or other legal process enjoining it from doing so, issued by a court of competent jurisdiction, and has had a reasonable opportunity to act on the injunction, restraining order or other legal process.

This Agreement does not create any obligation of Bank except for those expressly set forth in this Agreement. In particular, Bank need not investigate or make any determination as to whether Creditor is entitled under Creditor's agreements with Debtor to give Orders. Bank may rely on notices and communications it believes are given by the appropriate party. Bank makes no representations or warranties, express or implied, concerning the validity, effectiveness, perfection or priority of Creditor's security interest in the Pledged Account.

Bank will not have any liability hereunder for claims, losses, liabilities, damages, costs, expenses, actions, judgements or attorney's fees suffered or incurred as a result of or in connection with this Agreement except to the extent such losses, liabilities, and damages directly result from Bank's gross negligence or willful misconduct. In no event will Bank have any liability hereunder in connection herewith for any consequential, special, punitive or indirect loss or damage whether or not any claim for such damages is based on tort or contract or Bank knew or should have known the likelihood of such damages in any circumstances or Bank was informed of the possibility of such damages.

9. **Compensation**. Debtor hereby agrees to pay to Bank the Bank's usual and customary service charges and fees with respect to the Pledged Account and all services performed for Debtor or Creditor under this Agreement (as such charges and fees

may change from time to time by notice from Bank to Debtor), including without limitation, a set-up fee and a monthly management fee, each of which shall be specified in the fee schedule provided by Bank to Debtor or on before the execution of this Agreement. It is understood and agreed that Debtor shall be responsible for payment of these fees, charges and all reasonable expenses of Bank (collectively, "**Charges**") related to the provision of services under this Agreement. If there are no sufficient funds in the Pledged Account to pay the Charges, and the Charges are not paid by Debtor upon demand of Bank, Creditor agrees to pay them within fifteen (15) days of receipt of Bank's written notice of Creditor so long as (a) a Notice of Exclusive Control has been received by Bank, and (b) Creditor has received proceeds from the Pledged Account.

10. **Indemnity**. Debtor hereby agrees to indemnify Bank, each legal entity, if any, who controls, is controlled by or is under common control with Bank, and each of their respective directors, officers, and employees (each an "**Indemnified Party**"), and to defend and hold each Indemnified Party harmless from and against any and all claims, damages, losses, liabilities, and expenses (including all fees and charges of internal or external counsel with whom Indemnified Party may consult and all expenses of litigation and preparation therefor) which any Indemnified Party may incur or which may be asserted against any Indemnified Party by any person, entity, or governmental authority (including any person or entity claiming derivatively on behalf of Debtor or Creditor), in connection with or arising out of or relating to the matters referred to in this Agreement; provided, however that this Section 10 shall not apply to any claims, damages, losses, liabilities, and expenses solely attributable to an Indemnified Party's gross negligence or willful misconduct. Creditor shall indemnify and hold harmless Bank against all claims, actions, losses, damages, costs and expenses (including reasonable attorney's fees and disbursements) incurred, sustained or payable by Bank arising from Bank's remittance of funds pursuant to instructions from Creditor, except to the extent directly caused by Bank's gross negligence or willful misconduct. The provisions contained in this Section 10 shall survive the termination of this Agreement, payment of any advance hereunder and the assignment of any rights hereunder, or entry of judgment hereon. Debtor and Creditor may participate at their expense in the defense of any such action or claim.

11. **Termination; Survival**. Bank may terminate this Agreement on thirty (30) days' notice to Creditor and Debtor. This Agreement shall terminate upon Bank's receipt of written notice from Creditor expressly stating that Creditor no longer claims any security interest in the Pledged Account; provided, however, that Section 5 (*Returned Item Amounts*), Section 8 (*Bank's Responsibility*) and Section 10 (*Indemnity*) will survive termination of this Agreement. Debtor may not unilaterally terminate this Agreement or close the Pledged Account. Bank shall not cause or permit the Pledged Account to be closed during the term hereof unless Bank has received the prior written consent of Creditor.

12. **Entire Agreement**. This Agreement, the exhibits hereto and the agreements and instruments required to be executed and delivered thereunder set forth the entire agreement of the parties with respect to the subject matter hereof and supersede and discharge all other contemporaneous or prior agreements (written or oral) and negotiations and all contemporaneous oral agreements concerning such subject matter and negotiations. There are no oral conditions precedent to the effectiveness of this Agreement.

13. Amendments. No amendment of, modification of, or waiver of a right under, this Agreement nor consent to any departure by Debtor or Creditor shall be effective unless the same is in writing and signed by the party to be charged and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

14. **Severability**. The provisions of this Agreement are severable, and if any provision shall be held invalid or unenforceable in whole or in part in any jurisdiction, then such invalidity or unenforceability shall not in any manner affect such provision in any other jurisdiction or any other provision of this Agreement in any jurisdiction.

15. **Representations**. Each party represents and warrants to other parties that (a) this Agreement constitutes its duly authorized, legal, valid, binding and enforceable obligation; (b) the performance of its obligations under this Agreement and the consummation of the transactions contemplated hereunder will not (i) constitute or result in a breach of its organizational documents or the provisions of any material contract to which it is a party or by which it is bound or (ii) result in the violation of any law, regulation, judgment, decree or governmental order applicable to it; and (c) all approvals and authorizations required to permit the execution, delivery, performance and consummation of this Agreement and the transactions contemplated hereunder have been obtained.

16. Other Agreements. For so long as this Agreement remains in effect, transactions involving the Pledged Account shall be subject, except to the extent inconsistent herewith, to the provisions of such deposit account agreements, disclosures, and fee schedules as are in effect from time to time for accounts like the Pledged Account.

17. **Successors and Assigns**. The provisions of this Agreement shall be binding upon and inure to the benefit of Bank, Creditor and Debtor and their respective successors and assigns, provided, however that Debtor may not assign or transfer its interests or rights hereunder (whether by operation of law or otherwise) without prior written consent of Creditor and Bank, and Creditor may not assign or delegate any of its rights hereunder without giving written notice thereof to Bank. Creditor reserves the right to sell, assign, transfer negotiate or grant participations in all or any part of, or any interest in, Creditor's rights and benefits hereunder and under each of the other Loan Documents as defined therein. In connection therewith, Creditor may disclose all documents and information which Creditor now has or hereafter may acquire relating to any credit accommodation subject hereto, Debtor or its business, or any collateral pledged to secure the obligations evidenced hereby.

18. **Interpretation**. In this Agreement, unless the parties hereto otherwise agree in writing, (a) the singular includes the plural and the plural the singular; (b) references to statutes are to be construed as including all statutory provisions consolidating, amending or replacing the statute referred to; (c) the word "or" shall be deemed to include "and/or", the words "including", "includes" and "include" shall be deemed to be followed by the words "without limitation"; (d) references to sections or exhibits are to those of this Agreement; (e) terms defined in Article 9 of the UCC and not otherwise defined in this Agreement are used as defined in such Article; (f) references to any amount as on deposit or outstanding on any particular date means such amount at the close of business on such day; (g) the words "hereof," "herein" and "hereunder" and words of similar import refer to this Agreement (or the certificate or other document in which they are used) as a whole and not to any particular provision of this Agreement (or such certificate or document); (h) references to any Section, Schedule or Exhibit are references to Sections, Schedules and Exhibits in or to this Agreement (or the certificate or other document in which the reference is made), and references to any paragraph, subsection, clause or other subdivision within any Section or definition refer to such paragraph, subsection, clause or other subdivision of such Section or definition; (i) references to any agreement refer to that agreement as from time to time amended or supplemented or as the terms of such agreement are waived or modified in accordance with its terms; (j) references to any person include that person's successors and assigns; and (k) terms in one gender include the parallel terms in the neuter and opposite gender. Section headings in this Agreement are included for convenience of reference only and shall not constitute a part of this Agreement for any other purpose.

19. **Notices**. All notices, requests and demands which any party is required or may desire to give to any other party under any provision of this Agreement must be in writing delivered to each party at its address as shown on the signature pages hereto, or to such other address as any party may designate by written notice to all other parties. Each such notice, request and demand shall be deemed given or made as follows: (a) if sent by hand delivery, upon delivery; (b) if sent by mail, upon the earlier of the date of receipt or three (3) days after deposit in the U.S. mail, first class and postage prepaid; and (c) if sent by any other means, upon receipt. Without limiting the foregoing, first-class mail, facsimile transmission, electronic mail and commercial courier service are hereby agreed to as acceptable methods for giving notices hereunder.

20. **Venue; Jurisdiction**. EACH OF DEBTOR AND CREDITOR HEREBY IRREVOCABLY CONSENTS AND AGREES THAT ANY LEGAL SUIT, ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT SHALL BE INSTITUTED IN ANY STATE OR FEDERAL COURT IN THE STATE OF UTAH, WHICH SHALL HAVE EXCLUSIVE JURISDICTION IN ANY SUIT, ACTION OR PROCEEDING, AND DEBTOR AND CREDITOR WAIVE ANY OBJECTIONS WHICH EACH MAY NOW OR HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON CONVENIENS OF ANY SUCH SUIT, ACTION OR PROCEEDING, AND DEBTOR AND BANK HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT IN ANY SUIT, ACTION OR PROCEEDING.

21. **Governing Law**. THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS STATE OF UTAH (WITHOUT GIVING EFFECT TO ITS CONFLICT OF LAW RULES).

22. **Waiver of Jury Trial.** EACH OF THE PARTIES KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND IRREVOCABLY WAIVES EACH RIGHT IT MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO, AND IN, ANY ACTION OR OTHER LEGAL PROCEEDING OF ANY NATURE, RELATING TO (A) THIS AGREEMENT (B) ANY TRANSACTION CONTEMPLATED IN THIS AGREEMENT, OR (C) ANY NEGOTIATION, ADMINISTRATION, PERFORMANCE OR ENFORCEMENT OF THIS AGREEMENT, ANY OF THE OBLIGATIONS EVIDENCED HEREBY, ANY COLLATERAL THEREFORE.

23. Counterparts; Electronic Transmission. This Agreement may be executed in any number of counterparts, each of which, when so executed, shall be deemed to be an original and all of which, taken together, shall constitute one and the same Agreement. Delivery of any executed counterpart of this Agreement by electronic transmission shall be effective as delivery of a manually executed counterpart hereof. The Parties acknowledge that information and documents relating to this Agreement and the Pledged Account provided for herein may be transmitted through electronic means. This Agreement may be executed and authenticated by each party by electronic or digital means, and each party hereto expressly consents to the use of an electronic version of this agreement to embody the entire agreement and understanding between us. An authorized, electronically-affixed or digitally-affixed signature, when received shall be binding for all purposes as if an original signature.

IN WITNESS WHEREOF, intending to be legally bound hereby, the parties hereto have executed this Deposit Account Control Agreement (Springing Control) as of the date set forth above.

| **DEBTOR: ISLAND LAKE CAMPCO LLC** | | | |
|---|---|---|---|
| **Name:** | **DAVID ARTHUR SHABSELS** | **Signature:** | David Shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |
| **Name:** | **MICHAEL A SHABSELS** | **Signature:** | michael shabsels |
| **Title:** | Owner | **Date:** | 05/27/2026 |

| **CREDITOR : Funders App, LLC dba Funders West** | | | |
|---|---|---|---|
| **Name:** | | **Signature:** | |
| **Title:** | | **Date:** | |

| **BANK:** | | | |
|---|---|---|---|
| **Name:** | | **Signature:** | |
| **Title:** | | **Date:** | |

Funders West



 Owner / Guarantor Initial: DS | MS | ________

# Exhibit F

## Payment Schedule Addendum

| | |
|---|---|
| Week 1 | $2,250,000.00 |
| Week 2 | $2,250,000.00 |
| Week 3 | $1,125,000.00 |
| Week 4 | $38,793.10 |
| Week 5 | $38,793.10 |
| Week 6 | $38,793.10 |
| Week 7 | $38,793.10 |
| Week 8 | $38,793.10 |
| Week 9 | $38,793.10 |
| Week 10 | $38,793.10 |
| Week 11 | $38,793.10 |
| Week 12 | $38,793.10 |
| Week 13 | $38,793.10 |
| Week 14 | $38,793.10 |
| Week 15 | $38,793.10 |
| Week 16 | $38,793.10 |
| Week 17 | $38,793.10 |
| Week 18 | $38,793.10 |
| Week 19 | $38,793.10 |
| Week 20 | $38,793.10 |
| Week 21 | $38,793.10 |
| Week 22 | $38,793.10 |
| Week 23 | $38,793.10 |
| Week 24 | $38,793.10 |
| Week 25 | $38,793.10 |
| Week 26 | $38,793.10 |
| Week 27 | $38,793.10 |
| Week 28 | $38,793.10 |
| Week 29 | $38,793.10 |
| Week 30 | $38,793.10 |
| Week 31 | $38,793.10 |
| Week 32 | $38,793.10 |

FundsWest

 Owner / Guarantor Initial: DS | MS | ______

# Exhibit G

## ADDENDUM TO LOAN AGREEMENT

This Addendum ("Addendum") is entered into and made part of the Loan Agreement and all related documents (collectively, the "Agreement") between Funders App, LLC dba Funders West ("Lender") and ISLAND LAKE CAMPCO LLC ("Borrower"), dated as of 05/27/2026.

**1. Permitted Stacking**

Notwithstanding anything contained in the Agreement to the contrary, Lender acknowledges and agrees that Borrower may obtain additional financing, advances, loans, merchant cash advances, or other forms of funding from third parties during the term of the Agreement ("Permitted Additional Financing"). Such financing shall not constitute a default, breach, or event of default under the Agreement solely by reason of the existence of such additional financing.

**2. UCC Filing**

Lender agrees that it shall not file any UCC-1 Financing Statement or other lien or security filing against Borrower or Borrower's assets unless and until a Default of Payment, as defined under the Agreement, has occurred and is continuing. Upon the occurrence of a Default of Payment, Lender shall have the right to file any UCC-1 Financing Statement or other lien or security filing permitted under the Agreement and applicable law.

**3. Wiring Instructions**

Lender's wiring instructions for all payments due under the Agreement are attached hereto and incorporated herein as Exhibit A.





Owner / Guarantor Initial: DS | MS | ________

# Exhibit H

Confession of Judgment Form

Funders West



(PV-05272026 -V1)

Owner / Guarantor Initial: DS | MS | ________

**IN THE THIRD JUDICIAL DISTRICT COURT**

**IN AND FOR SALT LAKE COUNTY, STATE OF UTAH**

| | |
|---|---|
| FUNDERS APP LLC d/b/a FUNDERS WEST,<br><br>Plaintiff,<br><br>vs.<br><br>DAVID ARTHUR SHABSELS, individually and on behalf of ISLAND LAKE CAMPCO LLC, and 1000 ACRES HOLDINGS LLC, and 1101 EAST GLENDALE BOULEVARD REAL ESTATE LLC, and 1101 EAST GLENDALE BOULEVARD LEASING LLC, and 11200 WEST FLORISSANT AVENUE LEASING LLC, and 11200 WEST FLORISSANT AVE REALTY LLC, and 1133 NORTHWEST L STREET LEASING LLC, and 1133 NORTHWEST L STREET REAL ESTATE, and 1135 EAST CHOCOLATE AVENUE LEASING LLC, and 1135 EAST CHOCOLATE AVENUE REAL ESTATE LLC, and 12 CAMBRIDGE DRIVE LEASING LLC, and 12 CAMBRIDGE DRIVE REALTY LLC, and 1323 AUGUSTA | **CONFESSION OF JUDGMENT**<br><br>Case No.<br><br>Judge |

| | |
|---|---|
| WEST PARKWAY LEASING LLC, and 1323 AUGUSTA WEST PARKWAY REAL ESTATE LLC, and 1401 US HIGHWAY 498 REAL ESTATE LLC, and 149 EMERALD STREET LEASING LLC, and 149 EMERALD STREET REAL ESTATE LLC, and 1600 EASTCHASE PARKWAY LEASING LLC, and 1600 EASTCHASE PARKWAY REAL ESTATE LLC, and 1750 WELLS REAL ESTATE LLC, and 1800 & 4215 OKLAHOMA REALTY LLC, and 1912 MEMORIAL DRIVE REAL ESTATE LLC, and 194 WASHINGTON AVE. REAL ESTATE LLC, and 194 WASHINGTON AVENUE LEASING LLC, and 200 GREAT POND DRIVE LEASING LLC, and 200 GREAT POND DRIVE REAL ESTATE LLC, and 201 CENTRE DRIVE LEASING LLC, and 201 CENTRE DRIVE REAL ESTATE LLC, and 2195 HARLEM ROAD LEASING LLC, and 2195 HARLEM ROAD REAL ESTATE LLC, and 2203 GRAND CANAL BOULEVARD LEASING LLC, and 2203 GRAND CANAL BOULEVARD REAL ESTATE LLC, and 2302 WINDSONG DRIVE LEASING LLC, and 2434 SOUTH INTERSTATE 35E LEASING LLC, and | |

| | |
|---|---|
| 2434 SOUTH INTERSTATE 35E REAL ESTATE LLC, and 250 PROGRESSIVE LEASING LLC, and 250 PROGRESSIVE REAL ESTATE LLC, and 2547 BRINDLE DRIVE LEASING LLC, and 2547 BRINDLE DRIVE REAL ESTATE LLC, and 2974 COPPERCREEK ROAD LEASING LLC, and 2974 COPPERCREEK ROAD REAL ESTATE LLC, and 3385 NEWMARK DRIVE LLC, and 3413 TITTABAWASSEE ROAD LEASING LLC, and 3413 TITTABAWASSEE ROAD REAL ESTATE LLC, and 348 MORRIS AVENUE REAL ESTATE LLC, and 400 GREENS ROAD LEASING LLC, and 400 GREENS ROAD REAL ESTATE LLC, and 4328 BAY ROAD REAL ESTATE LLC, and 4328 BAY ROAD LEASING LLC, and 44 SOUTHPOINT DRIVE LEASING LLC, and 44 SOUTHPOINT DRIVE REAL ESTATE LLC, and 45 COMMERCE DRIVE LEASING LLC, and 45 COMMERCE DRIVE REAL ESTATE LLC, and 4650 WESTWAY PARK BOULEVARD LEASING LLC, and 4650 WESTWAY PARK BOULEVARD REAL ESTATE LLC, and 4800 USH 280 LEASING LLC, and 4800 USH 280 REAL ESTATE LLC, | |

| | |
|---|---|
| and 55 MERLINO DRIVE LEASING LLC, and 55 MERLINO DRIVE REAL ESTATE LLC, and 5707 MACCORCKLE AVENUE LEASING LLC, and 5707 MACCORKLE AVENUE REAL ESTATE LLC, and 635 GRAVOIS REAL ESTATE LLC, and 635 GRAVOIS ROAD LEASING LLC, and 7335 GLADIOLUS LLC, and 7650 FM 78 LEASING LLC, and 7650 FM 78 REAL ESTATE LLC, and 771 CORPORATE DRIVE LEASING LLC, and 771 CORPORATE DRIVE REAL ESTATE LLC, and 8014 BAYBERRY ROAD REAL ESTATE LLC, and 830 COUNTY ROAD 64 LEASING LLC, and 830 COUNTY ROAD 64 REAL ESTATE LLC, and 9 FARM SPRING LEASING LLC, and 9 FARM SPRING REAL ESTATE LLC, and 90 PLEASANT VALLEY STREET LEASING LLC, and 90 PLEASANT VALLEY STREET REAL ESTATE LLC, and ACHIM LANDCO LLC, and ACHIM OPERATINGCO LLC, and BAHS HOLDINGS LLC, and BAHS OPERATING INC, and BANNER LANDCO LLC, and BANNER OPERATINGCO LLC, and BAYBERRY WELLS LLC LEASING LLC, and BELGRADE LAKES SUMMER CAMP LLC, and | |

| | |
|---|---|
| BLUESTAR LANDCO LLC, and BLUESTAR OPERATINGCO LLC, and CAMP MED-O-LARK INC, and CHATEAUGAY CAMPCO LLC, and CHATEAUGAY LANDCO LLC, and CLUB GETAWAY LANDCO LLC, and CLUB GETAWAY OPERATINGCO LLC, and COUNTRY ROADS LANDCO LLC, and COUNTRY ROADS OPERATINGCO LLC, and DAMIS HOLDINGS LLC, and EAGLE'S LANDING DAY CAMP LLC, and EAST HARTFORD PROPERTIES LEASING LLC, and EAST HARTFORD PROPERTIES REAL ESTATE LLC, and FAIRPLAIN PLAZA LEASING LLC, and FAIRPLAIN PLAZA REAL ESTATE LLC, and GREEN LANE LANDCO LLC, and GREEN LANE OPERATINGCO LLC, and GREENVILLELAND LLC, and IAFALANDCO LLC, and IAFAOPERATINGCO LLC, and ISLAND LAKE CAMPCO LLC, and ISLAND LAKE LANDCO LLC, and KIWI LANDCO LLC, and KIWI OPERATINGCO LLC, and LAVCO LLC, and LAVLAND LLC, and MAINE WEKEELA CO LLC, and MALKA OPERATINGCO LLC, and MATTESON CENTER LEASING LLC, and MATTESON | |

| | |
|---|---|
| CENTER REAL ESTATE LLC, and MEADOWBROOK LANDCO LLC, and MEADOWBROOK OPERATINGCO LLC, and MESORAHCO LLC, and MESORAHLAND LLC, and MILL ROAD LOANDCO LLC, and MOGENAVCO LLC, and MOGENAVLAND LLC, and MOHAWK COUNTRY HOME SCHOOL INC, and MOHAWKCAMPCO LLC, and MOHAWKLAND LLC, and OKLAHOMA WILSHIRE LOFTS LEASING LLC, and OKLAHOMA WILSHIRE LOFTS REAL ESTATE LLC, and PINE FOREST CAMPCO LLC, and PINE FOREST LANDCO LLC, and POLAND LANDCO LLC DBA CAMP NORTH STAR, and POLAND LANDCO LLC, and RDM CAMPS LLC, and ROCKING HORSE RANCH LANDCO LLC, and ROCKING HORSE RANCH OPERATINGCO LLC, and ROLLING HILLS LANDCO LLC, and ROLLING HILLS OPERATINGCO LLC, and SIMAD HOLDINGS LLC, and SHAB HOLDINGS LLC, and SHAB OPERATING INC, and SOUTH LOOP WEST LEASING LLC, and SOUTH LOOP WEST REAL ESTATE LLC, and SPLASHDOWN BEACH LANDCO LLC, and SPLASHDOWN | |

| | |
|---|---|
| BEACH OPERATINGCO LLC, and STONY CREEK OPERATING CO LLC, and SUMMIT CAMP LLC, and TURNPIKE ROAD HOLDINGS LLC, and WASHINGTON LAKE LLC, and WAUKEELA LANDCO LLC, and WAUKEELA OPERATINGCO LLC, and WEKEELAND LLC, and WILLOW LAKE DAY CAMP LLC, and WILLOW LAKE LAND CORP, and WILLOW LAKE LAND CORP, and WM CAMP LLC, and WM LAND LLC, and WOODLANDS EAGLE TIMBER LEASING LLC, and WOODLANDS EAGLE TIMBER REAL ESTATE LLC Defendants, | |

Pursuant to Utah Code Ann. § 78B-5-205, § 78B-23-102, and Rule 58(A)(i) of the Utah Rules of Civil Procedure, defendants ISLAND LAKE CAMPCO LLC, and 1000 ACRES HOLDINGS LLC, and 1101 EAST GLENDALE BOULEVARD REAL ESTATE LLC, and 1101 EAST GLENDALE BOULEVARD LEASING LLC, and 11200 WEST FLORISSANT AVENUE LEASING LLC, and 11200 WEST FLORISSANT AVE REALTY LLC, and 1133 NORTHWEST L STREET LEASING LLC, and 1133 NORTHWEST L STREET REAL ESTATE, and 1135 EAST CHOCOLATE AVENUE LEASING LLC, and 1135 EAST CHOCOLATE AVENUE REAL ESTATE LLC, and 12 CAMBRIDGE DRIVE LEASING LLC, and 12 CAMBRIDGE DRIVE REALTY LLC, and 1323 AUGUSTA WEST PARKWAY LEASING LLC, and 1323 AUGUSTA WEST PARKWAY REAL ESTATE LLC, and 1401 US HIGHWAY 498 REAL ESTATE LLC, and 149 EMERALD STREET LEASING LLC, and 149

EMERALD STREET REAL ESTATE LLC, and 1600 EASTCHASE PARKWAY LEASING LLC, and 1600 EASTCHASE PARKWAY REAL ESTATE LLC, and 1750 WELLS REAL ESTATE LLC, and 1800 & 4215 OKLAHOMA REALTY LLC, and 1912 MEMORIAL DRIVE REAL ESTATE LLC, and 194 WASHINGTON AVE. REAL ESTATE LLC, and 194 WASHINGTON AVENUE LEASING LLC, and 200 GREAT POND DRIVE LEASING LLC, and 200 GREAT POND DRIVE REAL ESTATE LLC, and 201 CENTRE DRIVE LEASING LLC, and 201 CENTRE DRIVE REAL ESTATE LLC, and 2195 HARLEM ROAD LEASING LLC, and 2195 HARLEM ROAD REAL ESTATE LLC, and 2203 GRAND CANAL BOULEVARD LEASING LLC, and 2203 GRAND CANAL BOULEVARD REAL ESTATE LLC, and 2302 WINDSONG DRIVE LEASING LLC, and 2434 SOUTH INTERSTATE 35E LEASING LLC, and 2434 SOUTH INTERSTATE 35E REAL ESTATE LLC, and 250 PROGRESSIVE LEASING LLC, and 250 PROGRESSIVE REAL ESTATE LLC, and 2547 BRINDLE DRIVE LEASING LLC, and 2547 BRINDLE DRIVE REAL ESTATE LLC, and 2974 COPPERCREEK ROAD LEASING LLC, and 2974 COPPERCREEK ROAD REAL ESTATE LLC, and 3385 NEWMARK DRIVE LLC, and 3413 TITTABAWASSEE ROAD LEASING LLC, and 3413 TITTABAWASSEE ROAD REAL ESTATE LLC, and 348 MORRIS AVENUE REAL ESTATE LLC, and 400 GREENS ROAD LEASING LLC, and 400 GREENS ROAD REAL ESTATE LLC, and 4328 BAY ROAD REAL ESTATE LLC, and 4328 BAY ROAD LEASING LLC, and 44 SOUTHPOINT DRIVE LEASING LLC, and 44 SOUTHPOINT DRIVE REAL ESTATE LLC, and 45 COMMERCE DRIVE LEASING LLC, and 45 COMMERCE DRIVE REAL ESTATE LLC, and 4650 WESTWAY PARK BOULEVARD LEASING LLC, and 4650 WESTWAY PARK BOULEVARD REAL ESTATE LLC, and 4800 USH 280 LEASING LLC, and 4800 USH 280 REAL ESTATE LLC, and 55 MERLINO DRIVE LEASING LLC, and 55 MERLINO DRIVE REAL ESTATE LLC, and 5707 MACCORCKLE AVENUE LEASING LLC, and 5707 MACCORKLE AVENUE REAL ESTATE LLC, and 635 GRAVOIS REAL ESTATE LLC, and 635 GRAVOIS ROAD LEASING LLC, and 7335 GLADIOLUS LLC, and 7650 FM 78 LEASING LLC, and 7650 FM 78 REAL ESTATE LLC, and 771 CORPORATE DRIVE LEASING LLC, and 771 CORPORATE DRIVE REAL ESTATE LLC, and 8014 BAYBERRY ROAD REAL ESTATE LLC, and 830 COUNTY ROAD 64

LEASING LLC, and 830 COUNTY ROAD 64 REAL ESTATE LLC, and 9 FARM SPRING LEASING LLC, and 9 FARM SPRING REAL ESTATE LLC, and 90 PLEASANT VALLEY STREET LEASING LLC, and 90 PLEASANT VALLEY STREET REAL ESTATE LLC, and ACHIM LANDCO LLC, and ACHIM OPERATINGCO LLC, and BAHS HOLDINGS LLC, and BAHS OPERATING INC, and BANNER LANDCO LLC, and BANNER OPERATINGCO LLC, and BAYBERRY WELLS LLC LEASING LLC, and BELGRADE LAKES SUMMER CAMP LLC, and BLUESTAR LANDCO LLC, and BLUESTAR OPERATINGCO LLC, and CAMP MED-O-LARK INC, and CHATEAUGAY CAMPCO LLC, and CHATEAUGAY LANDCO LLC, and CLUB GETAWAY LANDCO LLC, and CLUB GETAWAY OPERATINGCO LLC, and COUNTRY ROADS LANDCO LLC, and COUNTRY ROADS OPERATINGCO LLC, and DAMIS HOLDINGS LLC, and EAGLE'S LANDING DAY CAMP LLC, and EAST HARTFORD PROPERTIES LEASING LLC, and EAST HARTFORD PROPERTIES REAL ESTATE LLC, and FAIRPLAIN PLAZA LEASING LLC, and FAIRPLAIN PLAZA REAL ESTATE LLC, and GREEN LANE LANDCO LLC, and GREEN LANE OPERATINGCO LLC, and GREENVILLELAND LLC, and IAFALANDCO LLC, and IAFAOPERATINGCO LLC, and ISLAND LAKE CAMPCO LLC, and ISLAND LAKE LANDCO LLC, and KIWI LANDCO LLC, and KIWI OPERATINGCO LLC, and LAVCO LLC, and LAVLAND LLC, and MAINE WEKEELA CO LLC, and MALKA OPERATINGCO LLC, and MATTESON CENTER LEASING LLC, and MATTESON CENTER REAL ESTATE LLC, and MEADOWBROOK LANDCO LLC, and MEADOWBROOK OPERATINGCO LLC, and MESORAHCO LLC, and MESORAHLAND LLC, and MILL ROAD LOANDCO LLC, and MOGENAVCO LLC, and MOGENAVLAND LLC, and MOHAWK COUNTRY HOME SCHOOL INC, and MOHAWKCAMPCO LLC, and MOHAWKLAND LLC, and OKLAHOMA WILSHIRE LOFTS LEASING LLC, and OKLAHOMA WILSHIRE LOFTS REAL ESTATE LLC, and PINE FOREST CAMPCO LLC, and PINE FOREST LANDCO LLC, and POLAND LANDCO LLC DBA CAMP NORTH STAR, and POLAND LANDCO LLC, and RDM CAMPS LLC, and ROCKING HORSE RANCH LANDCO LLC, and ROCKING HORSE RANCH OPERATINGCO LLC, and ROLLING HILLS LANDCO LLC, and ROLLING HILLS OPERATINGCO LLC, and SIMAD HOLDINGS LLC, and SHAB

HOLDINGS LLC, and SHAB OPERATING INC, and SOUTH LOOP WEST LEASING LLC, and SOUTH LOOP WEST REAL ESTATE LLC, and SPLASHDOWN BEACH LANDCO LLC, and SPLASHDOWN BEACH OPERATINGCO LLC, and STONY CREEK OPERATING CO LLC, and SUMMIT CAMP LLC, and TURNPIKE ROAD HOLDINGS LLC, and WASHINGTON LAKE LLC, and WAUKEELA LANDCO LLC, and WAUKEELA OPERATINGCO LLC, and WEKEELAND LLC, and WILLOW LAKE DAY CAMP LLC, and WILLOW LAKE LAND CORP, and WILLOW LAKE LAND CORP, and WM CAMP LLC, and WM LAND LLC, and WOODLANDS EAGLE TIMBER LEASING LLC, and WOODLANDS EAGLE TIMBER REAL ESTATE LLC, and DAVID ARTHUR SHABSELS, and MICHAEL A SHABSELS (collectively "Confessors") verify, stipulate, and confess to judgment as follows:

1. On or about 05/27/2026 Confessors entered into a Business Loan and Security Agreement / Agreement for the Purchase and Sale of Future Receipts (the "Agreement") with FUNDERS APP LLC d/b/a FUNDERS WEST, ("Plaintiff"), whereby $6,750,000.00 would become due by 01/07/2026.

2. DAVID ARTHUR SHABSELS, and MICHAEL A SHABSELS, hereby guarantees, warrants, and represents that they have the authority to act on behalf of ISLAND LAKE CAMPCO LLC, and 1000 ACRES HOLDINGS LLC, and 1101 EAST GLENDALE BOULEVARD REAL ESTATE LLC, and 1101 EAST GLENDALE BOULEVARD LEASING LLC, and 11200 WEST FLORISSANT AVENUE LEASING LLC, and 11200 WEST FLORISSANT AVE REALTY LLC, and 1133 NORTHWEST L STREET LEASING LLC, and 1133 NORTHWEST L STREET REAL ESTATE, and 1135 EAST CHOCOLATE AVENUE LEASING LLC, and 1135 EAST CHOCOLATE AVENUE REAL ESTATE LLC, and 12 CAMBRIDGE DRIVE LEASING LLC, and 12 CAMBRIDGE DRIVE REALTY LLC, and 1323 AUGUSTA WEST PARKWAY LEASING LLC, and 1323 AUGUSTA WEST PARKWAY REAL ESTATE LLC, and 1401 US HIGHWAY 498 REAL ESTATE LLC, and 149 EMERALD STREET LEASING LLC, and 149 EMERALD STREET REAL ESTATE LLC, and 1600 EASTCHASE PARKWAY LEASING LLC, and 1600 EASTCHASE PARKWAY REAL ESTATE LLC,

and 1750 WELLS REAL ESTATE LLC, and 1800 & 4215 OKLAHOMA REALTY LLC, and 1912 MEMORIAL DRIVE REAL ESTATE LLC, and 194 WASHINGTON AVE. REAL ESTATE LLC, and 194 WASHINGTON AVENUE LEASING LLC, and 200 GREAT POND DRIVE LEASING LLC, and 200 GREAT POND DRIVE REAL ESTATE LLC, and 201 CENTRE DRIVE LEASING LLC, and 201 CENTRE DRIVE REAL ESTATE LLC, and 2195 HARLEM ROAD LEASING LLC, and 2195 HARLEM ROAD REAL ESTATE LLC, and 2203 GRAND CANAL BOULEVARD LEASING LLC, and 2203 GRAND CANAL BOULEVARD REAL ESTATE LLC, and 2302 WINDSONG DRIVE LEASING LLC, and 2434 SOUTH INTERSTATE 35E LEASING LLC, and 2434 SOUTH INTERSTATE 35E REAL ESTATE LLC, and 250 PROGRESSIVE LEASING LLC, and 250 PROGRESSIVE REAL ESTATE LLC, and 2547 BRINDLE DRIVE LEASING LLC, and 2547 BRINDLE DRIVE REAL ESTATE LLC, and 2974 COPPERCREEK ROAD LEASING LLC, and 2974 COPPERCREEK ROAD REAL ESTATE LLC, and 3385 NEWMARK DRIVE LLC, and 3413 TITTABAWASSEE ROAD LEASING LLC, and 3413 TITTABAWASSEE ROAD REAL ESTATE LLC, and 348 MORRIS AVENUE REAL ESTATE LLC, and 400 GREENS ROAD LEASING LLC, and 400 GREENS ROAD REAL ESTATE LLC, and 4328 BAY ROAD REAL ESTATE LLC, and 4328 BAY ROAD LEASING LLC, and 44 SOUTHPOINT DRIVE LEASING LLC, and 44 SOUTHPOINT DRIVE REAL ESTATE LLC, and 45 COMMERCE DRIVE LEASING LLC, and 45 COMMERCE DRIVE REAL ESTATE LLC, and 4650 WESTWAY PARK BOULEVARD LEASING LLC, and 4650 WESTWAY PARK BOULEVARD REAL ESTATE LLC, and 4800 USH 280 LEASING LLC, and 4800 USH 280 REAL ESTATE LLC, and 55 MERLINO DRIVE LEASING LLC, and 55 MERLINO DRIVE REAL ESTATE LLC, and 5707 MACCORCKLE AVENUE LEASING LLC, and 5707 MACCORKLE AVENUE REAL ESTATE LLC, and 635 GRAVOIS REAL ESTATE LLC, and 635 GRAVOIS ROAD LEASING LLC, and 7335 GLADIOLUS LLC, and 7650 FM 78 LEASING LLC, and 7650 FM 78 REAL ESTATE LLC, and 771 CORPORATE DRIVE LEASING LLC, and 771 CORPORATE DRIVE REAL ESTATE LLC, and 8014 BAYBERRY ROAD REAL ESTATE LLC, and 830 COUNTY ROAD 64 LEASING LLC, and 830 COUNTY ROAD 64 REAL ESTATE LLC, and 9 FARM SPRING LEASING LLC, and 9 FARM SPRING REAL ESTATE LLC, and

90 PLEASANT VALLEY STREET LEASING LLC, and 90 PLEASANT VALLEY STREET REAL ESTATE LLC, and ACHIM LANDCO LLC, and ACHIM OPERATINGCO LLC, and BAHS HOLDINGS LLC, and BAHS OPERATING INC, and BANNER LANDCO LLC, and BANNER OPERATINGCO LLC, and BAYBERRY WELLS LLC LEASING LLC, and BELGRADE LAKES SUMMER CAMP LLC, and BLUESTAR LANDCO LLC, and BLUESTAR OPERATINGCO LLC, and CAMP MED-O-LARK INC, and CHATEAUGAY CAMPCO LLC, and CHATEAUGAY LANDCO LLC, and CLUB GETAWAY LANDCO LLC, and CLUB GETAWAY OPERATINGCO LLC, and COUNTRY ROADS LANDCO LLC, and COUNTRY ROADS OPERATINGCO LLC, and DAMIS HOLDINGS LLC, and EAGLE'S LANDING DAY CAMP LLC, and EAST HARTFORD PROPERTIES LEASING LLC, and EAST HARTFORD PROPERTIES REAL ESTATE LLC, and FAIRPLAIN PLAZA LEASING LLC, and FAIRPLAIN PLAZA REAL ESTATE LLC, and GREEN LANE LANDCO LLC, and GREEN LANE OPERATINGCO LLC, and GREENVILLELAND LLC, and IAFALANDCO LLC, and IAFAOPERATINGCO LLC, and ISLAND LAKE CAMPCO LLC, and ISLAND LAKE LANDCO LLC, and KIWI LANDCO LLC, and KIWI OPERATINGCO LLC, and LAVCO LLC, and LAVLAND LLC, and MAINE WEKEELA CO LLC, and MALKA OPERATINGCO LLC, and MATTESON CENTER LEASING LLC, and MATTESON CENTER REAL ESTATE LLC, and MEADOWBROOK LANDCO LLC, and MEADOWBROOK OPERATINGCO LLC, and MESORAHCO LLC, and MESORAHLAND LLC, and MILL ROAD LOANDCO LLC, and MOGENAVCO LLC, and MOGENAVLAND LLC, and MOHAWK COUNTRY HOME SCHOOL INC, and MOHAWKCAMPCO LLC, and MOHAWKLAND LLC, and OKLAHOMA WILSHIRE LOFTS LEASING LLC, and OKLAHOMA WILSHIRE LOFTS REAL ESTATE LLC, and PINE FOREST CAMPCO LLC, and PINE FOREST LANDCO LLC, and POLAND LANDCO LLC DBA CAMP NORTH STAR, and POLAND LANDCO LLC, and RDM CAMPS LLC, and ROCKING HORSE RANCH LANDCO LLC, and ROCKING HORSE RANCH OPERATINGCO LLC, and ROLLING HILLS LANDCO LLC, and ROLLING HILLS OPERATINGCO LLC, and SIMAD HOLDINGS LLC, and SHAB HOLDINGS LLC, and SHAB OPERATING INC, and SOUTH LOOP WEST LEASING LLC, and SOUTH LOOP WEST REAL ESTATE LLC, and

SPLASHDOWN BEACH LANDCO LLC, and SPLASHDOWN BEACH OPERATINGCO LLC, and STONY CREEK OPERATING CO LLC, and SUMMIT CAMP LLC, and TURNPIKE ROAD HOLDINGS LLC, and WASHINGTON LAKE LLC, and WAUKEELA LANDCO LLC, and WAUKEELA OPERATINGCO LLC, and WEKEELAND LLC, and WILLOW LAKE DAY CAMP LLC, and WILLOW LAKE LAND CORP, and WILLOW LAKE LAND CORP, and WM CAMP LLC, and WM LAND LLC, and WOODLANDS EAGLE TIMBER LEASING LLC, and WOODLANDS EAGLE TIMBER REAL ESTATE LLC (Guarantor Entities) after – similar to the way Confessors is defined above including sign the Agreement and this Confession of Judgment on behalf of ISLAND LAKE CAMPCO LLC and bind 1000 ACRES HOLDINGS LLC, and 1101 EAST GLENDALE BOULEVARD REAL ESTATE LLC, and 1101 EAST GLENDALE BOULEVARD LEASING LLC, and 11200 WEST FLORISSANT AVENUE LEASING LLC, and 11200 WEST FLORISSANT AVE REALTY LLC, and 1133 NORTHWEST L STREET LEASING LLC, and 1133 NORTHWEST L STREET REAL ESTATE, and 1135 EAST CHOCOLATE AVENUE LEASING LLC, and 1135 EAST CHOCOLATE AVENUE REAL ESTATE LLC, and 12 CAMBRIDGE DRIVE LEASING LLC, and 12 CAMBRIDGE DRIVE REALTY LLC, and 1323 AUGUSTA WEST PARKWAY LEASING LLC, and 1323 AUGUSTA WEST PARKWAY REAL ESTATE LLC, and 1401 US HIGHWAY 498 REAL ESTATE LLC, and 149 EMERALD STREET LEASING LLC, and 149 EMERALD STREET REAL ESTATE LLC, and 1600 EASTCHASE PARKWAY LEASING LLC, and 1600 EASTCHASE PARKWAY REAL ESTATE LLC, and 1750 WELLS REAL ESTATE LLC, and 1800 & 4215 OKLAHOMA REALTY LLC, and 1912 MEMORIAL DRIVE REAL ESTATE LLC, and 194 WASHINGTON AVE. REAL ESTATE LLC, and 194 WASHINGTON AVENUE LEASING LLC, and 200 GREAT POND DRIVE LEASING LLC, and 200 GREAT POND DRIVE REAL ESTATE LLC, and 201 CENTRE DRIVE LEASING LLC, and 201 CENTRE DRIVE REAL ESTATE LLC, and 2195 HARLEM ROAD LEASING LLC, and 2195 HARLEM ROAD REAL ESTATE LLC, and 2203 GRAND CANAL BOULEVARD LEASING LLC, and 2203 GRAND CANAL BOULEVARD REAL ESTATE LLC, and 2302 WINDSONG DRIVE LEASING LLC, and 2434 SOUTH INTERSTATE 35E LEASING LLC, and 2434 SOUTH INTERSTATE 35E REAL

ESTATE LLC, and 250 PROGRESSIVE LEASING LLC, and 250 PROGRESSIVE REAL ESTATE LLC, and 2547 BRINDLE DRIVE LEASING LLC, and 2547 BRINDLE DRIVE REAL ESTATE LLC, and 2974 COPPERCREEK ROAD LEASING LLC, and 2974 COPPERCREEK ROAD REAL ESTATE LLC, and 3385 NEWMARK DRIVE LLC, and 3413 TITTABAWASSEE ROAD LEASING LLC, and 3413 TITTABAWASSEE ROAD REAL ESTATE LLC, and 348 MORRIS AVENUE REAL ESTATE LLC, and 400 GREENS ROAD LEASING LLC, and 400 GREENS ROAD REAL ESTATE LLC, and 4328 BAY ROAD REAL ESTATE LLC, and 4328 BAY ROAD LEASING LLC, and 44 SOUTHPOINT DRIVE LEASING LLC, and 44 SOUTHPOINT DRIVE REAL ESTATE LLC, and 45 COMMERCE DRIVE LEASING LLC, and 45 COMMERCE DRIVE REAL ESTATE LLC, and 4650 WESTWAY PARK BOULEVARD LEASING LLC, and 4650 WESTWAY PARK BOULEVARD REAL ESTATE LLC, and 4800 USH 280 LEASING LLC, and 4800 USH 280 REAL ESTATE LLC, and 55 MERLINO DRIVE LEASING LLC, and 55 MERLINO DRIVE REAL ESTATE LLC, and 5707 MACCORCKLE AVENUE LEASING LLC, and 5707 MACCORKLE AVENUE REAL ESTATE LLC, and 635 GRAVOIS REAL ESTATE LLC, and 635 GRAVOIS ROAD LEASING LLC, and 7335 GLADIOLUS LLC, and 7650 FM 78 LEASING LLC, and 7650 FM 78 REAL ESTATE LLC, and 771 CORPORATE DRIVE LEASING LLC, and 771 CORPORATE DRIVE REAL ESTATE LLC, and 8014 BAYBERRY ROAD REAL ESTATE LLC, and 830 COUNTY ROAD 64 LEASING LLC, and 830 COUNTY ROAD 64 REAL ESTATE LLC, and 9 FARM SPRING LEASING LLC, and 9 FARM SPRING REAL ESTATE LLC, and 90 PLEASANT VALLEY STREET LEASING LLC, and 90 PLEASANT VALLEY STREET REAL ESTATE LLC, and ACHIM LANDCO LLC, and ACHIM OPERATINGCO LLC, and BAHS HOLDINGS LLC, and BAHS OPERATING INC, and BANNER LANDCO LLC, and BANNER OPERATINGCO LLC, and BAYBERRY WELLS LLC LEASING LLC, and BELGRADE LAKES SUMMER CAMP LLC, and BLUESTAR LANDCO LLC, and BLUESTAR OPERATINGCO LLC, and CAMP MED-O-LARK INC, and CHATEAUGAY CAMPCO LLC, and CHATEAUGAY LANDCO LLC, and CLUB GETAWAY LANDCO LLC, and CLUB GETAWAY OPERATINGCO LLC, and COUNTRY ROADS LANDCO LLC, and COUNTRY ROADS OPERATINGCO LLC, and DAMIS HOLDINGS LLC, and

EAGLE'S LANDING DAY CAMP LLC, and EAST HARTFORD PROPERTIES LEASING LLC, and EAST HARTFORD PROPERTIES REAL ESTATE LLC, and FAIRPLAIN PLAZA LEASING LLC, and FAIRPLAIN PLAZA REAL ESTATE LLC, and GREEN LANE LANDCO LLC, and GREEN LANE OPERATINGCO LLC, and GREENVILLELAND LLC, and IAFALANDCO LLC, and IAFAOPERATINGCO LLC, and ISLAND LAKE CAMPCO LLC, and ISLAND LAKE LANDCO LLC, and KIWI LANDCO LLC, and KIWI OPERATINGCO LLC, and LAVCO LLC, and LAVLAND LLC, and MAINE WEKEELA CO LLC, and MALKA OPERATINGCO LLC, and MATTESON CENTER LEASING LLC, and MATTESON CENTER REAL ESTATE LLC, and MEADOWBROOK LANDCO LLC, and MEADOWBROOK OPERATINGCO LLC, and MESORAHCO LLC, and MESORAHLAND LLC, and MILL ROAD LOANDCO LLC, and MOGENAVCO LLC, and MOGENAVLAND LLC, and MOHAWK COUNTRY HOME SCHOOL INC, and MOHAWKCAMPCO LLC, and MOHAWKLAND LLC, and OKLAHOMA WILSHIRE LOFTS LEASING LLC, and OKLAHOMA WILSHIRE LOFTS REAL ESTATE LLC, and PINE FOREST CAMPCO LLC, and PINE FOREST LANDCO LLC, and POLAND LANDCO LLC DBA CAMP NORTH STAR, and POLAND LANDCO LLC, and RDM CAMPS LLC, and ROCKING HORSE RANCH LANDCO LLC, and ROCKING HORSE RANCH OPERATINGCO LLC, and ROLLING HILLS LANDCO LLC, and ROLLING HILLS OPERATINGCO LLC, and SIMAD HOLDINGS LLC, and SHAB HOLDINGS LLC, and SHAB OPERATING INC, and SOUTH LOOP WEST LEASING LLC, and SOUTH LOOP WEST REAL ESTATE LLC, and SPLASHDOWN BEACH LANDCO LLC, and SPLASHDOWN BEACH OPERATINGCO LLC, and STONY CREEK OPERATING CO LLC, and SUMMIT CAMP LLC, and TURNPIKE ROAD HOLDINGS LLC, and WASHINGTON LAKE LLC, and WAUKEELA LANDCO LLC, and WAUKEELA OPERATINGCO LLC, and WEKEELAND LLC, and WILLOW LAKE DAY CAMP LLC, and WILLOW LAKE LAND CORP, and WILLOW LAKE LAND CORP, and WM CAMP LLC, and WM LAND LLC, and WOODLANDS EAGLE TIMBER LEASING LLC, and WOODLANDS EAGLE TIMBER REAL ESTATE LLC to the Agreement as well as this Confession of Judgment.

3. Confessors agree and consent that, if Confessors default under the Agreement, Plaintiff may, in Plaintiff's sole discretion and without further notice to Confessors, file this Confession of Judgment and obtain a judgment against Confessors for the full amount listed on paragraph 3 of this Confession of Judgment. Plaintiff agrees not to enter or otherwise file this Confession of Judgment so long as the Confessors remits to Plaintiff in accordance with the terms of the Agreement entered by the parties.

4. Confessors agree and consent that the Court may enter a judgment (the "Judgment") in favor of Plaintiff and against Confessors, jointly and severally, in the amount of $6,750,000.00 (the "Judgment Amount"), plus post-judgment interest and reasonable attorneys' fees and costs incurred by Plaintiff to obtain and enforce the Judgment.

5. The Judgment shall be automatically entered in the above amount without any further notice to Confessors.

6. Plaintiff agrees that, within seven (7) days of the Court's entry of Judgment, it will file a Partial Satisfaction of Judgment setting forth the full amount of any remittances made by Confessors prior to such default.

7. Confessors specifically consent to the entering of this Confession of Judgment and any Judgment sought pursuant to the terms herein, in the Third Judicial District Court, Salt Lake County, State of Utah, and agree that this Confession of Judgment shall be interpreted under the laws of the State of Utah.

8. Moreover, Confessors specifically consent to the entering or docketing of this Confession of Judgment and any Judgment in any court of Utah or any other court (state and/or federal) that can exercise jurisdiction over Confessors and/or their assets for the purpose of collecting the Judgment Amount in the event of default by Confessors.

9. Confessors hereby acknowledge that the Judgment may be entered against Confessors without further notice or opportunity to object.

10. Confessors hereby acknowledge that Confessors had the opportunity to consult with an attorney regarding the legal effect of the provisions of this Confession of Judgment.

11. The parties shall execute all other documents reasonably necessary in order to carry out the intent of this Confession of Judgment, including but not limited to any necessary pleadings.

*I declare under criminal penalty under the law of Utah that the foregoing is true and correct.*

Signed on the ____________ at ______________________________
*Date* *City or other location, and state or country*

**DAVID ARTHUR SHABSELS** individually and on behalf of 1000 ACRES HOLDINGS LLC, and 1101 EAST GLENDALE BOULEVARD REAL ESTATE LLC, and 1101 EAST GLENDALE BOULEVARD LEASING LLC, and 11200 WEST FLORISSANT AVENUE LEASING LLC, and 11200 WEST FLORISSANT AVE REALTY LLC, and 1133 NORTHWEST L STREET LEASING LLC, and 1133 NORTHWEST L STREET REAL ESTATE, and 1135 EAST CHOCOLATE AVENUE LEASING LLC, and 1135 EAST CHOCOLATE AVENUE REAL ESTATE LLC, and 12 CAMBRIDGE DRIVE LEASING LLC, and 12 CAMBRIDGE DRIVE REALTY LLC, and 1323 AUGUSTA WEST PARKWAY LEASING LLC, and 1323 AUGUSTA WEST PARKWAY REAL ESTATE LLC, and 1401 US HIGHWAY 498 REAL ESTATE LLC, and 149 EMERALD STREET LEASING LLC, and 149 EMERALD STREET REAL ESTATE LLC, and 1600 EASTCHASE PARKWAY LEASING LLC, and 1600 EASTCHASE PARKWAY REAL ESTATE LLC, and 1750 WELLS REAL ESTATE LLC, and 1800 & 4215 OKLAHOMA REALTY LLC, and 1912 MEMORIAL DRIVE REAL ESTATE LLC, and 194 WASHINGTON AVE. REAL ESTATE LLC, and 194 WASHINGTON AVENUE LEASING LLC, and 200 GREAT POND DRIVE LEASING LLC, and 200 GREAT POND DRIVE REAL ESTATE LLC, and 201 CENTRE DRIVE LEASING LLC, and 201 CENTRE DRIVE REAL ESTATE LLC, and 2195 HARLEM ROAD LEASING LLC, and 2195 HARLEM ROAD REAL ESTATE LLC, and 2203 GRAND CANAL BOULEVARD LEASING LLC, and 2203 GRAND CANAL BOULEVARD REAL ESTATE LLC, and 2302 WINDSONG DRIVE LEASING LLC, and 2434 SOUTH INTERSTATE 35E LEASING LLC, and 2434 SOUTH INTERSTATE 35E REAL ESTATE LLC, and 250 PROGRESSIVE LEASING LLC, and 250 PROGRESSIVE REAL ESTATE LLC, and 2547 BRINDLE DRIVE LEASING LLC, and 2547 BRINDLE DRIVE REAL ESTATE LLC, and 2974 COPPERCREEK ROAD LEASING LLC, and 2974 COPPERCREEK ROAD REAL ESTATE LLC, and 3385 NEWMARK DRIVE LLC, and 3413 TITTABAWASSEE ROAD LEASING LLC, and 3413 TITTABAWASSEE ROAD REAL ESTATE LLC, and 348 MORRIS AVENUE REAL ESTATE LLC, and 400 GREENS ROAD LEASING LLC, and 400 GREENS ROAD REAL ESTATE LLC, and 4328 BAY ROAD REAL ESTATE LLC, and 4328 BAY ROAD LEASING LLC, and 44 SOUTHPOINT DRIVE LEASING LLC, and 44 SOUTHPOINT DRIVE REAL ESTATE LLC, and 45 COMMERCE DRIVE LEASING LLC, and 45 COMMERCE DRIVE REAL ESTATE LLC, and 4650 WESTWAY PARK BOULEVARD LEASING LLC, and 4650 WESTWAY PARK BOULEVARD REAL ESTATE LLC, and 4800 USH 280 LEASING LLC, and 4800 USH 280 REAL ESTATE LLC, and 55 MERLINO DRIVE LEASING LLC, and 55 MERLINO DRIVE REAL ESTATE LLC, and 5707 MACCORCKLE AVENUE LEASING LLC, and 5707 MACCORKLE

AVENUE REAL ESTATE LLC, and 635 GRAVOIS REAL ESTATE LLC, and 635 GRAVOIS ROAD LEASING LLC, and 7335 GLADIOLUS LLC, and 7650 FM 78 LEASING LLC, and 7650 FM 78 REAL ESTATE LLC, and 771 CORPORATE DRIVE LEASING LLC, and 771 CORPORATE DRIVE REAL ESTATE LLC, and 8014 BAYBERRY ROAD REAL ESTATE LLC, and 830 COUNTY ROAD 64 LEASING LLC, and 830 COUNTY ROAD 64 REAL ESTATE LLC, and 9 FARM SPRING LEASING LLC, and 9 FARM SPRING REAL ESTATE LLC, and 90 PLEASANT VALLEY STREET LEASING LLC, and 90 PLEASANT VALLEY STREET REAL ESTATE LLC, and ACHIM LANDCO LLC, and ACHIM OPERATINGCO LLC, and BAHS HOLDINGS LLC, and BAHS OPERATING INC, and BANNER LANDCO LLC, and BANNER OPERATINGCO LLC, and BAYBERRY WELLS LLC LEASING LLC, and BELGRADE LAKES SUMMER CAMP LLC, and BLUESTAR LANDCO LLC, and BLUESTAR OPERATINGCO LLC, and CAMP MED-O-LARK INC, and CHATEAUGAY CAMPCO LLC, and CHATEAUGAY LANDCO LLC, and CLUB GETAWAY LANDCO LLC, and CLUB GETAWAY OPERATINGCO LLC, and COUNTRY ROADS LANDCO LLC, and COUNTRY ROADS OPERATINGCO LLC, and DAMIS HOLDINGS LLC, and EAGLE'S LANDING DAY CAMP LLC, and EAST HARTFORD PROPERTIES LEASING LLC, and EAST HARTFORD PROPERTIES REAL ESTATE LLC, and FAIRPLAIN PLAZA LEASING LLC, and FAIRPLAIN PLAZA REAL ESTATE LLC, and GREEN LANE LANDCO LLC, and GREEN LANE OPERATINGCO LLC, and GREENVILLELAND LLC, and IAFALANDCO LLC, and IAFAOPERATINGCO LLC, and ISLAND LAKE CAMPCO LLC, and ISLAND LAKE LANDCO LLC, and KIWI LANDCO LLC, and KIWI OPERATINGCO LLC, and LAVCO LLC, and LAVLAND LLC, and MAINE WEKEELA CO LLC, and MALKA OPERATINGCO LLC, and MATTESON CENTER LEASING LLC, and MATTESON CENTER REAL ESTATE LLC, and MEADOWBROOK LANDCO LLC, and MEADOWBROOK OPERATINGCO LLC, and MESORAHCO LLC, and MESORAHLAND LLC, and MILL ROAD LOANDCO LLC, and MOGENAVCO LLC, and MOGENAVLAND LLC, and MOHAWK COUNTRY HOME SCHOOL INC, and MOHAWKCAMPCO LLC, and MOHAWKLAND LLC, and OKLAHOMA WILSHIRE LOFTS LEASING LLC, and OKLAHOMA WILSHIRE LOFTS REAL ESTATE LLC, and PINE FOREST CAMPCO LLC, and PINE FOREST LANDCO LLC, and POLAND LANDCO LLC DBA CAMP NORTH STAR, and POLAND LANDCO LLC, and RDM CAMPS LLC, and ROCKING HORSE RANCH LANDCO LLC, and ROCKING HORSE RANCH OPERATINGCO LLC, and ROLLING HILLS LANDCO LLC, and ROLLING HILLS OPERATINGCO LLC, and SIMAD HOLDINGS LLC, and SHAB HOLDINGS LLC, and SHAB OPERATING INC, and SOUTH LOOP WEST LEASING LLC, and SOUTH LOOP WEST REAL ESTATE LLC, and SPLASHDOWN BEACH LANDCO LLC, and SPLASHDOWN BEACH OPERATINGCO LLC, and STONY CREEK OPERATING CO LLC, and SUMMIT CAMP LLC, and TURNPIKE ROAD HOLDINGS LLC, and WASHINGTON LAKE LLC, and WAUKEELA LANDCO LLC, and WAUKEELA OPERATINGCO LLC, and WEKEELAND LLC, and WILLOW LAKE DAY CAMP LLC, and WILLOW LAKE LAND CORP, and WILLOW LAKE LAND CORP, and WM CAMP LLC, and WM LAND LLC, and WOODLANDS EAGLE TIMBER LEASING LLC, and WOODLANDS EAGLE TIMBER REAL ESTATE LLC

**IN THE THIRD JUDICIAL DISTRICT COURT**

**IN AND FOR SALT LAKE COUNTY, STATE OF UTAH**

| | |
|---|---|
| FUNDERS APP LLC d/b/a FUNDERS WEST,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL A SHABSELS, individually and on behalf of ISLAND LAKE CAMPCO LLC, and 1000 ACRES HOLDINGS LLC, and 1101 EAST GLENDALE BOULEVARD REAL ESTATE LLC, and 1101 EAST GLENDALE BOULEVARD LEASING LLC, and 11200 WEST FLORISSANT AVENUE LEASING LLC, and 11200 WEST FLORISSANT AVE REALTY LLC, and 1133 NORTHWEST L STREET LEASING LLC, and 1133 NORTHWEST L STREET REAL ESTATE, and 1135 EAST CHOCOLATE AVENUE LEASING LLC, and 1135 EAST CHOCOLATE AVENUE REAL ESTATE LLC, and 12 CAMBRIDGE DRIVE LEASING LLC, and 12 CAMBRIDGE DRIVE REALTY LLC, and 1323 AUGUSTA | **CONFESSION OF JUDGMENT**<br><br>Case No.<br><br>Judge |

| | |
|---|---|
| WEST PARKWAY LEASING LLC, and 1323 AUGUSTA WEST PARKWAY REAL ESTATE LLC, and 1401 US HIGHWAY 498 REAL ESTATE LLC, and 149 EMERALD STREET LEASING LLC, and 149 EMERALD STREET REAL ESTATE LLC, and 1600 EASTCHASE PARKWAY LEASING LLC, and 1600 EASTCHASE PARKWAY REAL ESTATE LLC, and 1750 WELLS REAL ESTATE LLC, and 1800 & 4215 OKLAHOMA REALTY LLC, and 1912 MEMORIAL DRIVE REAL ESTATE LLC, and 194 WASHINGTON AVE. REAL ESTATE LLC, and 194 WASHINGTON AVENUE LEASING LLC, and 200 GREAT POND DRIVE LEASING LLC, and 200 GREAT POND DRIVE REAL ESTATE LLC, and 201 CENTRE DRIVE LEASING LLC, and 201 CENTRE DRIVE REAL ESTATE LLC, and 2195 HARLEM ROAD LEASING LLC, and 2195 HARLEM ROAD REAL ESTATE LLC, and 2203 GRAND CANAL BOULEVARD LEASING LLC, and 2203 GRAND CANAL BOULEVARD REAL ESTATE LLC, and 2302 WINDSONG DRIVE LEASING LLC, and 2434 SOUTH INTERSTATE 35E LEASING LLC, and | |

| | |
|---|---|
| 2434 SOUTH INTERSTATE 35E REAL ESTATE LLC, and 250 PROGRESSIVE LEASING LLC, and 250 PROGRESSIVE REAL ESTATE LLC, and 2547 BRINDLE DRIVE LEASING LLC, and 2547 BRINDLE DRIVE REAL ESTATE LLC, and 2974 COPPERCREEK ROAD LEASING LLC, and 2974 COPPERCREEK ROAD REAL ESTATE LLC, and 3385 NEWMARK DRIVE LLC, and 3413 TITTABAWASSEE ROAD LEASING LLC, and 3413 TITTABAWASSEE ROAD REAL ESTATE LLC, and 348 MORRIS AVENUE REAL ESTATE LLC, and 400 GREENS ROAD LEASING LLC, and 400 GREENS ROAD REAL ESTATE LLC, and 4328 BAY ROAD REAL ESTATE LLC, and 4328 BAY ROAD LEASING LLC, and 44 SOUTHPOINT DRIVE LEASING LLC, and 44 SOUTHPOINT DRIVE REAL ESTATE LLC, and 45 COMMERCE DRIVE LEASING LLC, and 45 COMMERCE DRIVE REAL ESTATE LLC, and 4650 WESTWAY PARK BOULEVARD LEASING LLC, and 4650 WESTWAY PARK BOULEVARD REAL ESTATE LLC, and 4800 USH 280 LEASING LLC, and 4800 USH 280 REAL ESTATE LLC, | |

| | |
|---|---|
| and 55 MERLINO DRIVE LEASING LLC, and 55 MERLINO DRIVE REAL ESTATE LLC, and 5707 MACCORCKLE AVENUE LEASING LLC, and 5707 MACCORKLE AVENUE REAL ESTATE LLC, and 635 GRAVOIS REAL ESTATE LLC, and 635 GRAVOIS ROAD LEASING LLC, and 7335 GLADIOLUS LLC, and 7650 FM 78 LEASING LLC, and 7650 FM 78 REAL ESTATE LLC, and 771 CORPORATE DRIVE LEASING LLC, and 771 CORPORATE DRIVE REAL ESTATE LLC, and 8014 BAYBERRY ROAD REAL ESTATE LLC, and 830 COUNTY ROAD 64 LEASING LLC, and 830 COUNTY ROAD 64 REAL ESTATE LLC, and 9 FARM SPRING LEASING LLC, and 9 FARM SPRING REAL ESTATE LLC, and 90 PLEASANT VALLEY STREET LEASING LLC, and 90 PLEASANT VALLEY STREET REAL ESTATE LLC, and ACHIM LANDCO LLC, and ACHIM OPERATINGCO LLC, and BAHS HOLDINGS LLC, and BAHS OPERATING INC, and BANNER LANDCO LLC, and BANNER OPERATINGCO LLC, and BAYBERRY WELLS LLC LEASING LLC, and BELGRADE LAKES SUMMER CAMP LLC, and | |

| | |
|---|---|
| BLUESTAR LANDCO LLC, and BLUESTAR OPERATINGCO LLC, and CAMP MED-O-LARK INC, and CHATEAUGAY CAMPCO LLC, and CHATEAUGAY LANDCO LLC, and CLUB GETAWAY LANDCO LLC, and CLUB GETAWAY OPERATINGCO LLC, and COUNTRY ROADS LANDCO LLC, and COUNTRY ROADS OPERATINGCO LLC, and DAMIS HOLDINGS LLC, and EAGLE'S LANDING DAY CAMP LLC, and EAST HARTFORD PROPERTIES LEASING LLC, and EAST HARTFORD PROPERTIES REAL ESTATE LLC, and FAIRPLAIN PLAZA LEASING LLC, and FAIRPLAIN PLAZA REAL ESTATE LLC, and GREEN LANE LANDCO LLC, and GREEN LANE OPERATINGCO LLC, and GREENVILLELAND LLC, and IAFALANDCO LLC, and IAFAOPERATINGCO LLC, and ISLAND LAKE CAMPCO LLC, and ISLAND LAKE LANDCO LLC, and KIWI LANDCO LLC, and KIWI OPERATINGCO LLC, and LAVCO LLC, and LAVLAND LLC, and MAINE WEKEELA CO LLC, and MALKA OPERATINGCO LLC, and MATTESON CENTER LEASING LLC, and MATTESON | |

| | |
|---|---|
| CENTER REAL ESTATE LLC, and MEADOWBROOK LANDCO LLC, and MEADOWBROOK OPERATINGCO LLC, and MESORAHCO LLC, and MESORAHLAND LLC, and MILL ROAD LOANDCO LLC, and MOGENAVCO LLC, and MOGENAVLAND LLC, and MOHAWK COUNTRY HOME SCHOOL INC, and MOHAWKCAMPCO LLC, and MOHAWKLAND LLC, and OKLAHOMA WILSHIRE LOFTS LEASING LLC, and OKLAHOMA WILSHIRE LOFTS REAL ESTATE LLC, and PINE FOREST CAMPCO LLC, and PINE FOREST LANDCO LLC, and POLAND LANDCO LLC DBA CAMP NORTH STAR, and POLAND LANDCO LLC, and RDM CAMPS LLC, and ROCKING HORSE RANCH LANDCO LLC, and ROCKING HORSE RANCH OPERATINGCO LLC, and ROLLING HILLS LANDCO LLC, and ROLLING HILLS OPERATINGCO LLC, and SIMAD HOLDINGS LLC, and SHAB HOLDINGS LLC, and SHAB OPERATING INC, and SOUTH LOOP WEST LEASING LLC, and SOUTH LOOP WEST REAL ESTATE LLC, and SPLASHDOWN BEACH LANDCO LLC, and SPLASHDOWN | |

| | |
|---|---|
| BEACH OPERATINGCO LLC, and STONY CREEK OPERATING CO LLC, and SUMMIT CAMP LLC, and TURNPIKE ROAD HOLDINGS LLC, and WASHINGTON LAKE LLC, and WAUKEELA LANDCO LLC, and WAUKEELA OPERATINGCO LLC, and WEKEELAND LLC, and WILLOW LAKE DAY CAMP LLC, and WILLOW LAKE LAND CORP, and WILLOW LAKE LAND CORP, and WM CAMP LLC, and WM LAND LLC, and WOODLANDS EAGLE TIMBER LEASING LLC, and WOODLANDS EAGLE TIMBER REAL ESTATE LLC<br>Defendants, | |

Pursuant to Utah Code Ann. § 78B-5-205, § 78B-23-102, and Rule 58(A)(i) of the Utah Rules of Civil Procedure, defendants ISLAND LAKE CAMPCO LLC, and 1000 ACRES HOLDINGS LLC, and 1101 EAST GLENDALE BOULEVARD REAL ESTATE LLC, and 1101 EAST GLENDALE BOULEVARD LEASING LLC, and 11200 WEST FLORISSANT AVENUE LEASING LLC, and 11200 WEST FLORISSANT AVE REALTY LLC, and 1133 NORTHWEST L STREET LEASING LLC, and 1133 NORTHWEST L STREET REAL ESTATE, and 1135 EAST CHOCOLATE AVENUE LEASING LLC, and 1135 EAST CHOCOLATE AVENUE REAL ESTATE LLC, and 12 CAMBRIDGE DRIVE LEASING LLC, and 12 CAMBRIDGE DRIVE REALTY LLC, and 1323 AUGUSTA WEST PARKWAY LEASING LLC, and 1323 AUGUSTA WEST PARKWAY REAL ESTATE LLC, and 1401 US

HIGHWAY 498 REAL ESTATE LLC, and 149 EMERALD STREET LEASING LLC, and 149 EMERALD STREET REAL ESTATE LLC, and 1600 EASTCHASE PARKWAY LEASING LLC, and 1600 EASTCHASE PARKWAY REAL ESTATE LLC, and 1750 WELLS REAL ESTATE LLC, and 1800 & 4215 OKLAHOMA REALTY LLC, and 1912 MEMORIAL DRIVE REAL ESTATE LLC, and 194 WASHINGTON AVE. REAL ESTATE LLC, and 194 WASHINGTON AVENUE LEASING LLC, and 200 GREAT POND DRIVE LEASING LLC, and 200 GREAT POND DRIVE REAL ESTATE LLC, and 201 CENTRE DRIVE LEASING LLC, and 201 CENTRE DRIVE REAL ESTATE LLC, and 2195 HARLEM ROAD LEASING LLC, and 2195 HARLEM ROAD REAL ESTATE LLC, and 2203 GRAND CANAL BOULEVARD LEASING LLC, and 2203 GRAND CANAL BOULEVARD REAL ESTATE LLC, and 2302 WINDSONG DRIVE LEASING LLC, and 2434 SOUTH INTERSTATE 35E LEASING LLC, and 2434 SOUTH INTERSTATE 35E REAL ESTATE LLC, and 250 PROGRESSIVE LEASING LLC, and 250 PROGRESSIVE REAL ESTATE LLC, and 2547 BRINDLE DRIVE LEASING LLC, and 2547 BRINDLE DRIVE REAL ESTATE LLC, and 2974 COPPERCREEK ROAD LEASING LLC, and 2974 COPPERCREEK ROAD REAL ESTATE LLC, and 3385 NEWMARK DRIVE LLC, and 3413 TITTABAWASSEE ROAD LEASING LLC, and 3413 TITTABAWASSEE ROAD REAL ESTATE LLC, and 348 MORRIS AVENUE REAL ESTATE LLC, and 400 GREENS ROAD LEASING LLC, and 400 GREENS ROAD REAL ESTATE LLC, and 4328 BAY ROAD REAL ESTATE LLC, and 4328 BAY ROAD LEASING LLC, and 44 SOUTHPOINT DRIVE LEASING LLC, and 44 SOUTHPOINT DRIVE REAL ESTATE LLC, and 45 COMMERCE DRIVE LEASING LLC, and 45 COMMERCE DRIVE REAL ESTATE LLC, and 4650 WESTWAY PARK BOULEVARD LEASING LLC, and 4650 WESTWAY PARK BOULEVARD REAL ESTATE LLC, and 4800 USH 280 LEASING LLC, and 4800 USH 280 REAL ESTATE LLC, and 55 MERLINO DRIVE LEASING LLC, and 55 MERLINO DRIVE REAL ESTATE LLC, and 5707 MACCORCKLE AVENUE LEASING LLC, and 5707 MACCORKLE AVENUE REAL ESTATE LLC, and 635 GRAVOIS REAL ESTATE LLC, and 635 GRAVOIS ROAD LEASING LLC, and 7335 GLADIOLUS LLC, and 7650 FM 78 LEASING LLC, and 7650 FM 78 REAL ESTATE LLC, and 771 CORPORATE DRIVE LEASING LLC, and 771 CORPORATE DRIVE REAL

ESTATE LLC, and 8014 BAYBERRY ROAD REAL ESTATE LLC, and 830 COUNTY ROAD 64 LEASING LLC, and 830 COUNTY ROAD 64 REAL ESTATE LLC, and 9 FARM SPRING LEASING LLC, and 9 FARM SPRING REAL ESTATE LLC, and 90 PLEASANT VALLEY STREET LEASING LLC, and 90 PLEASANT VALLEY STREET REAL ESTATE LLC, and ACHIM LANDCO LLC, and ACHIM OPERATINGCO LLC, and BAHS HOLDINGS LLC, and BAHS OPERATING INC, and BANNER LANDCO LLC, and BANNER OPERATINGCO LLC, and BAYBERRY WELLS LLC LEASING LLC, and BELGRADE LAKES SUMMER CAMP LLC, and BLUESTAR LANDCO LLC, and BLUESTAR OPERATINGCO LLC, and CAMP MED-O-LARK INC, and CHATEAUGAY CAMPCO LLC, and CHATEAUGAY LANDCO LLC, and CLUB GETAWAY LANDCO LLC, and CLUB GETAWAY OPERATINGCO LLC, and COUNTRY ROADS LANDCO LLC, and COUNTRY ROADS OPERATINGCO LLC, and DAMIS HOLDINGS LLC, and EAGLE'S LANDING DAY CAMP LLC, and EAST HARTFORD PROPERTIES LEASING LLC, and EAST HARTFORD PROPERTIES REAL ESTATE LLC, and FAIRPLAIN PLAZA LEASING LLC, and FAIRPLAIN PLAZA REAL ESTATE LLC, and GREEN LANE LANDCO LLC, and GREEN LANE OPERATINGCO LLC, and GREENVILLELAND LLC, and IAFALANDCO LLC, and IAFAOPERATINGCO LLC, and ISLAND LAKE CAMPCO LLC, and ISLAND LAKE LANDCO LLC, and KIWI LANDCO LLC, and KIWI OPERATINGCO LLC, and LAVCO LLC, and LAVLAND LLC, and MAINE WEKEELA CO LLC, and MALKA OPERATINGCO LLC, and MATTESON CENTER LEASING LLC, and MATTESON CENTER REAL ESTATE LLC, and MEADOWBROOK LANDCO LLC, and MEADOWBROOK OPERATINGCO LLC, and MESORAHCO LLC, and MESORAHLAND LLC, and MILL ROAD LOANDCO LLC, and MOGENAVCO LLC, and MOGENAVLAND LLC, and MOHAWK COUNTRY HOME SCHOOL INC, and MOHAWKCAMPCO LLC, and MOHAWKLAND LLC, and OKLAHOMA WILSHIRE LOFTS LEASING LLC, and OKLAHOMA WILSHIRE LOFTS REAL ESTATE LLC, and PINE FOREST CAMPCO LLC, and PINE FOREST LANDCO LLC, and POLAND LANDCO LLC DBA CAMP NORTH STAR, and POLAND LANDCO LLC, and RDM CAMPS LLC, and ROCKING HORSE RANCH LANDCO LLC, and ROCKING HORSE RANCH OPERATINGCO LLC, and ROLLING HILLS

LANDCO LLC, and ROLLING HILLS OPERATINGCO LLC, and SIMAD HOLDINGS LLC, and SHAB HOLDINGS LLC, and SHAB OPERATING INC, and SOUTH LOOP WEST LEASING LLC, and SOUTH LOOP WEST REAL ESTATE LLC, and SPLASHDOWN BEACH LANDCO LLC, and SPLASHDOWN BEACH OPERATINGCO LLC, and STONY CREEK OPERATING CO LLC, and SUMMIT CAMP LLC, and TURNPIKE ROAD HOLDINGS LLC, and WASHINGTON LAKE LLC, and WAUKEELA LANDCO LLC, and WAUKEELA OPERATINGCO LLC, and WEKEELAND LLC, and WILLOW LAKE DAY CAMP LLC, and WILLOW LAKE LAND CORP, and WILLOW LAKE LAND CORP, and WM CAMP LLC, and WM LAND LLC, and WOODLANDS EAGLE TIMBER LEASING LLC, and WOODLANDS EAGLE TIMBER REAL ESTATE LLC, and DAVID ARTHUR SHABSELS, and MICHAEL A SHABSELS (collectively "Confessors") verify, stipulate, and confess to judgment as follows:

12. On or about 05/27/2026 Confessors entered into a Business Loan and Security Agreement / Agreement for the Purchase and Sale of Future Receipts (the "Agreement") with FUNDERS APP LLC d/b/a FUNDERS WEST, ("Plaintiff"), whereby $6,750,000.00 would become due by 01/07/2026.

13. DAVID ARTHUR SHABSELS, and MICHAEL A SHABSELS, hereby guarantees, warrants, and represents that they have the authority to act on behalf of ISLAND LAKE CAMPCO LLC, and 1000 ACRES HOLDINGS LLC, and 1101 EAST GLENDALE BOULEVARD REAL ESTATE LLC, and 1101 EAST GLENDALE BOULEVARD LEASING LLC, and 11200 WEST FLORISSANT AVENUE LEASING LLC, and 11200 WEST FLORISSANT AVE REALTY LLC, and 1133 NORTHWEST L STREET LEASING LLC, and 1133 NORTHWEST L STREET REAL ESTATE, and 1135 EAST CHOCOLATE AVENUE LEASING LLC, and 1135 EAST CHOCOLATE AVENUE REAL ESTATE LLC, and 12 CAMBRIDGE DRIVE LEASING LLC, and 12 CAMBRIDGE DRIVE REALTY LLC, and 1323 AUGUSTA WEST PARKWAY LEASING LLC, and 1323 AUGUSTA WEST PARKWAY REAL ESTATE LLC, and 1401 US HIGHWAY 498 REAL ESTATE LLC, and 149 EMERALD STREET LEASING LLC, and 149 EMERALD STREET REAL ESTATE LLC, and 1600

EASTCHASE PARKWAY LEASING LLC, and 1600 EASTCHASE PARKWAY REAL ESTATE LLC, and 1750 WELLS REAL ESTATE LLC, and 1800 & 4215 OKLAHOMA REALTY LLC, and 1912 MEMORIAL DRIVE REAL ESTATE LLC, and 194 WASHINGTON AVE. REAL ESTATE LLC, and 194 WASHINGTON AVENUE LEASING LLC, and 200 GREAT POND DRIVE LEASING LLC, and 200 GREAT POND DRIVE REAL ESTATE LLC, and 201 CENTRE DRIVE LEASING LLC, and 201 CENTRE DRIVE REAL ESTATE LLC, and 2195 HARLEM ROAD LEASING LLC, and 2195 HARLEM ROAD REAL ESTATE LLC, and 2203 GRAND CANAL BOULEVARD LEASING LLC, and 2203 GRAND CANAL BOULEVARD REAL ESTATE LLC, and 2302 WINDSONG DRIVE LEASING LLC, and 2434 SOUTH INTERSTATE 35E LEASING LLC, and 2434 SOUTH INTERSTATE 35E REAL ESTATE LLC, and 250 PROGRESSIVE LEASING LLC, and 250 PROGRESSIVE REAL ESTATE LLC, and 2547 BRINDLE DRIVE LEASING LLC, and 2547 BRINDLE DRIVE REAL ESTATE LLC, and 2974 COPPERCREEK ROAD LEASING LLC, and 2974 COPPERCREEK ROAD REAL ESTATE LLC, and 3385 NEWMARK DRIVE LLC, and 3413 TITTABAWASSEE ROAD LEASING LLC, and 3413 TITTABAWASSEE ROAD REAL ESTATE LLC, and 348 MORRIS AVENUE REAL ESTATE LLC, and 400 GREENS ROAD LEASING LLC, and 400 GREENS ROAD REAL ESTATE LLC, and 4328 BAY ROAD REAL ESTATE LLC, and 4328 BAY ROAD LEASING LLC, and 44 SOUTHPOINT DRIVE LEASING LLC, and 44 SOUTHPOINT DRIVE REAL ESTATE LLC, and 45 COMMERCE DRIVE LEASING LLC, and 45 COMMERCE DRIVE REAL ESTATE LLC, and 4650 WESTWAY PARK BOULEVARD LEASING LLC, and 4650 WESTWAY PARK BOULEVARD REAL ESTATE LLC, and 4800 USH 280 LEASING LLC, and 4800 USH 280 REAL ESTATE LLC, and 55 MERLINO DRIVE LEASING LLC, and 55 MERLINO DRIVE REAL ESTATE LLC, and 5707 MACCORCKLE AVENUE LEASING LLC, and 5707 MACCORKLE AVENUE REAL ESTATE LLC, and 635 GRAVOIS REAL ESTATE LLC, and 635 GRAVOIS ROAD LEASING LLC, and 7335 GLADIOLUS LLC, and 7650 FM 78 LEASING LLC, and 7650 FM 78 REAL ESTATE LLC, and 771 CORPORATE DRIVE LEASING LLC, and 771 CORPORATE DRIVE REAL ESTATE LLC, and 8014 BAYBERRY ROAD REAL ESTATE LLC, and 830 COUNTY ROAD 64 LEASING LLC, and 830 COUNTY ROAD 64 REAL

ESTATE LLC, and 9 FARM SPRING LEASING LLC, and 9 FARM SPRING REAL ESTATE LLC, and 90 PLEASANT VALLEY STREET LEASING LLC, and 90 PLEASANT VALLEY STREET REAL ESTATE LLC, and ACHIM LANDCO LLC, and ACHIM OPERATINGCO LLC, and BAHS HOLDINGS LLC, and BAHS OPERATING INC, and BANNER LANDCO LLC, and BANNER OPERATINGCO LLC, and BAYBERRY WELLS LLC LEASING LLC, and BELGRADE LAKES SUMMER CAMP LLC, and BLUESTAR LANDCO LLC, and BLUESTAR OPERATINGCO LLC, and CAMP MED-O-LARK INC, and CHATEAUGAY CAMPCO LLC, and CHATEAUGAY LANDCO LLC, and CLUB GETAWAY LANDCO LLC, and CLUB GETAWAY OPERATINGCO LLC, and COUNTRY ROADS LANDCO LLC, and COUNTRY ROADS OPERATINGCO LLC, and DAMIS HOLDINGS LLC, and EAGLE'S LANDING DAY CAMP LLC, and EAST HARTFORD PROPERTIES LEASING LLC, and EAST HARTFORD PROPERTIES REAL ESTATE LLC, and FAIRPLAIN PLAZA LEASING LLC, and FAIRPLAIN PLAZA REAL ESTATE LLC, and GREEN LANE LANDCO LLC, and GREEN LANE OPERATINGCO LLC, and GREENVILLELAND LLC, and IAFALANDCO LLC, and IAFAOPERATINGCO LLC, and ISLAND LAKE CAMPCO LLC, and ISLAND LAKE LANDCO LLC, and KIWI LANDCO LLC, and KIWI OPERATINGCO LLC, and LAVCO LLC, and LAVLAND LLC, and MAINE WEKEELA CO LLC, and MALKA OPERATINGCO LLC, and MATTESON CENTER LEASING LLC, and MATTESON CENTER REAL ESTATE LLC, and MEADOWBROOK LANDCO LLC, and MEADOWBROOK OPERATINGCO LLC, and MESORAHCO LLC, and MESORAHLAND LLC, and MILL ROAD LOANDCO LLC, and MOGENAVCO LLC, and MOGENAVLAND LLC, and MOHAWK COUNTRY HOME SCHOOL INC, and MOHAWKCAMPCO LLC, and MOHAWKLAND LLC, and OKLAHOMA WILSHIRE LOFTS LEASING LLC, and OKLAHOMA WILSHIRE LOFTS REAL ESTATE LLC, and PINE FOREST CAMPCO LLC, and PINE FOREST LANDCO LLC, and POLAND LANDCO LLC DBA CAMP NORTH STAR, and POLAND LANDCO LLC, and RDM CAMPS LLC, and ROCKING HORSE RANCH LANDCO LLC, and ROCKING HORSE RANCH OPERATINGCO LLC, and ROLLING HILLS LANDCO LLC, and ROLLING HILLS OPERATINGCO LLC, and SIMAD HOLDINGS LLC, and SHAB HOLDINGS LLC, and SHAB OPERATING INC, and

SOUTH LOOP WEST LEASING LLC, and SOUTH LOOP WEST REAL ESTATE LLC, and SPLASHDOWN BEACH LANDCO LLC, and SPLASHDOWN BEACH OPERATINGCO LLC, and STONY CREEK OPERATING CO LLC, and SUMMIT CAMP LLC, and TURNPIKE ROAD HOLDINGS LLC, and WASHINGTON LAKE LLC, and WAUKEELA LANDCO LLC, and WAUKEELA OPERATINGCO LLC, and WEKEELAND LLC, and WILLOW LAKE DAY CAMP LLC, and WILLOW LAKE LAND CORP, and WILLOW LAKE LAND CORP, and WM CAMP LLC, and WM LAND LLC, and WOODLANDS EAGLE TIMBER LEASING LLC, and WOODLANDS EAGLE TIMBER REAL ESTATE LLC (Guarantor Entities) after – similar to the way Confessors is defined above including sign the Agreement and this Confession of Judgment on behalf of ISLAND LAKE CAMPCO LLC and bind 1000 ACRES HOLDINGS LLC, and 1101 EAST GLENDALE BOULEVARD REAL ESTATE LLC, and 1101 EAST GLENDALE BOULEVARD LEASING LLC, and 11200 WEST FLORISSANT AVENUE LEASING LLC, and 11200 WEST FLORISSANT AVE REALTY LLC, and 1133 NORTHWEST L STREET LEASING LLC, and 1133 NORTHWEST L STREET REAL ESTATE, and 1135 EAST CHOCOLATE AVENUE LEASING LLC, and 1135 EAST CHOCOLATE AVENUE REAL ESTATE LLC, and 12 CAMBRIDGE DRIVE LEASING LLC, and 12 CAMBRIDGE DRIVE REALTY LLC, and 1323 AUGUSTA WEST PARKWAY LEASING LLC, and 1323 AUGUSTA WEST PARKWAY REAL ESTATE LLC, and 1401 US HIGHWAY 498 REAL ESTATE LLC, and 149 EMERALD STREET LEASING LLC, and 149 EMERALD STREET REAL ESTATE LLC, and 1600 EASTCHASE PARKWAY LEASING LLC, and 1600 EASTCHASE PARKWAY REAL ESTATE LLC, and 1750 WELLS REAL ESTATE LLC, and 1800 & 4215 OKLAHOMA REALTY LLC, and 1912 MEMORIAL DRIVE REAL ESTATE LLC, and 194 WASHINGTON AVE. REAL ESTATE LLC, and 194 WASHINGTON AVENUE LEASING LLC, and 200 GREAT POND DRIVE LEASING LLC, and 200 GREAT POND DRIVE REAL ESTATE LLC, and 201 CENTRE DRIVE LEASING LLC, and 201 CENTRE DRIVE REAL ESTATE LLC, and 2195 HARLEM ROAD LEASING LLC, and 2195 HARLEM ROAD REAL ESTATE LLC, and 2203 GRAND CANAL BOULEVARD LEASING LLC, and 2203 GRAND CANAL BOULEVARD REAL ESTATE LLC, and 2302 WINDSONG DRIVE LEASING LLC,

and 2434 SOUTH INTERSTATE 35E LEASING LLC, and 2434 SOUTH INTERSTATE 35E REAL ESTATE LLC, and 250 PROGRESSIVE LEASING LLC, and 250 PROGRESSIVE REAL ESTATE LLC, and 2547 BRINDLE DRIVE LEASING LLC, and 2547 BRINDLE DRIVE REAL ESTATE LLC, and 2974 COPPERCREEK ROAD LEASING LLC, and 2974 COPPERCREEK ROAD REAL ESTATE LLC, and 3385 NEWMARK DRIVE LLC, and 3413 TITTABAWASSEE ROAD LEASING LLC, and 3413 TITTABAWASSEE ROAD REAL ESTATE LLC, and 348 MORRIS AVENUE REAL ESTATE LLC, and 400 GREENS ROAD LEASING LLC, and 400 GREENS ROAD REAL ESTATE LLC, and 4328 BAY ROAD REAL ESTATE LLC, and 4328 BAY ROAD LEASING LLC, and 44 SOUTHPOINT DRIVE LEASING LLC, and 44 SOUTHPOINT DRIVE REAL ESTATE LLC, and 45 COMMERCE DRIVE LEASING LLC, and 45 COMMERCE DRIVE REAL ESTATE LLC, and 4650 WESTWAY PARK BOULEVARD LEASING LLC, and 4650 WESTWAY PARK BOULEVARD REAL ESTATE LLC, and 4800 USH 280 LEASING LLC, and 4800 USH 280 REAL ESTATE LLC, and 55 MERLINO DRIVE LEASING LLC, and 55 MERLINO DRIVE REAL ESTATE LLC, and 5707 MACCORCKLE AVENUE LEASING LLC, and 5707 MACCORKLE AVENUE REAL ESTATE LLC, and 635 GRAVOIS REAL ESTATE LLC, and 635 GRAVOIS ROAD LEASING LLC, and 7335 GLADIOLUS LLC, and 7650 FM 78 LEASING LLC, and 7650 FM 78 REAL ESTATE LLC, and 771 CORPORATE DRIVE LEASING LLC, and 771 CORPORATE DRIVE REAL ESTATE LLC, and 8014 BAYBERRY ROAD REAL ESTATE LLC, and 830 COUNTY ROAD 64 LEASING LLC, and 830 COUNTY ROAD 64 REAL ESTATE LLC, and 9 FARM SPRING LEASING LLC, and 9 FARM SPRING REAL ESTATE LLC, and 90 PLEASANT VALLEY STREET LEASING LLC, and 90 PLEASANT VALLEY STREET REAL ESTATE LLC, and ACHIM LANDCO LLC, and ACHIM OPERATINGCO LLC, and BAHS HOLDINGS LLC, and BAHS OPERATING INC, and BANNER LANDCO LLC, and BANNER OPERATINGCO LLC, and BAYBERRY WELLS LLC LEASING LLC, and BELGRADE LAKES SUMMER CAMP LLC, and BLUESTAR LANDCO LLC, and BLUESTAR OPERATINGCO LLC, and CAMP MED-O-LARK INC, and CHATEAUGAY CAMPCO LLC, and CHATEAUGAY LANDCO LLC, and CLUB GETAWAY LANDCO LLC, and CLUB GETAWAY OPERATINGCO LLC, and COUNTRY ROADS

LANDCO LLC, and COUNTRY ROADS OPERATINGCO LLC, and DAMIS HOLDINGS LLC, and EAGLE'S LANDING DAY CAMP LLC, and EAST HARTFORD PROPERTIES LEASING LLC, and EAST HARTFORD PROPERTIES REAL ESTATE LLC, and FAIRPLAIN PLAZA LEASING LLC, and FAIRPLAIN PLAZA REAL ESTATE LLC, and GREEN LANE LANDCO LLC, and GREEN LANE OPERATINGCO LLC, and GREENVILLELAND LLC, and IAFALANDCO LLC, and IAFAOPERATINGCO LLC, and ISLAND LAKE CAMPCO LLC, and ISLAND LAKE LANDCO LLC, and KIWI LANDCO LLC, and KIWI OPERATINGCO LLC, and LAVCO LLC, and LAVLAND LLC, and MAINE WEKEELA CO LLC, and MALKA OPERATINGCO LLC, and MATTESON CENTER LEASING LLC, and MATTESON CENTER REAL ESTATE LLC, and MEADOWBROOK LANDCO LLC, and MEADOWBROOK OPERATINGCO LLC, and MESORAHCO LLC, and MESORAHLAND LLC, and MILL ROAD LOANDCO LLC, and MOGENAVCO LLC, and MOGENAVLAND LLC, and MOHAWK COUNTRY HOME SCHOOL INC, and MOHAWKCAMPCO LLC, and MOHAWKLAND LLC, and OKLAHOMA WILSHIRE LOFTS LEASING LLC, and OKLAHOMA WILSHIRE LOFTS REAL ESTATE LLC, and PINE FOREST CAMPCO LLC, and PINE FOREST LANDCO LLC, and POLAND LANDCO LLC DBA CAMP NORTH STAR, and POLAND LANDCO LLC, and RDM CAMPS LLC, and ROCKING HORSE RANCH LANDCO LLC, and ROCKING HORSE RANCH OPERATINGCO LLC, and ROLLING HILLS LANDCO LLC, and ROLLING HILLS OPERATINGCO LLC, and SIMAD HOLDINGS LLC, and SHAB HOLDINGS LLC, and SHAB OPERATING INC, and SOUTH LOOP WEST LEASING LLC, and SOUTH LOOP WEST REAL ESTATE LLC, and SPLASHDOWN BEACH LANDCO LLC, and SPLASHDOWN BEACH OPERATINGCO LLC, and STONY CREEK OPERATING CO LLC, and SUMMIT CAMP LLC, and TURNPIKE ROAD HOLDINGS LLC, and WASHINGTON LAKE LLC, and WAUKEELA LANDCO LLC, and WAUKEELA OPERATINGCO LLC, and WEKEELAND LLC, and WILLOW LAKE DAY CAMP LLC, and WILLOW LAKE LAND CORP, and WILLOW LAKE LAND CORP, and WM CAMP LLC, and WM LAND LLC, and WOODLANDS EAGLE TIMBER LEASING LLC, and WOODLANDS EAGLE TIMBER REAL ESTATE LLC to the Agreement as well as this Confession of Judgment.

14. Confessors agree and consent that, if Confessors default under the Agreement, Plaintiff may, in Plaintiff's sole discretion and without further notice to Confessors, file this Confession of Judgment and obtain a judgment against Confessors for the full amount listed on paragraph 3 of this Confession of Judgment. Plaintiff agrees not to enter or otherwise file this Confession of Judgment so long as the Confessors remits to Plaintiff in accordance with the terms of the Agreement entered by the parties.

15. Confessors agree and consent that the Court may enter a judgment (the "Judgment") in favor of Plaintiff and against Confessors, jointly and severally, in the amount of $6,750,000.00 (the "Judgment Amount"), plus post-judgment interest and reasonable attorneys' fees and costs incurred by Plaintiff to obtain and enforce the Judgment.

16. The Judgment shall be automatically entered in the above amount without any further notice to Confessors.

17. Plaintiff agrees that, within seven (7) days of the Court's entry of Judgment, it will file a Partial Satisfaction of Judgment setting forth the full amount of any remittances made by Confessors prior to such default.

18. Confessors specifically consent to the entering of this Confession of Judgment and any Judgment sought pursuant to the terms herein, in the Third Judicial District Court, Salt Lake County, State of Utah, and agree that this Confession of Judgment shall be interpreted under the laws of the State of Utah.

19. Moreover, Confessors specifically consent to the entering or docketing of this Confession of Judgment and any Judgment in any court of Utah or any other court (state and/or federal) that can exercise jurisdiction over Confessors and/or their assets for the purpose of collecting the Judgment Amount in the event of default by Confessors.

20. Confessors hereby acknowledge that the Judgment may be entered against Confessors without further notice or opportunity to object.

21. Confessors hereby acknowledge that Confessors had the opportunity to consult with an attorney regarding the legal effect of the provisions of this Confession of Judgment.

22. The parties shall execute all other documents reasonably necessary in order to carry out the intent of this Confession of Judgment, including but not limited to any necessary pleadings.

---

*I declare under criminal penalty under the law of Utah that the foregoing is true and correct.*

Signed on the ____________ at ______________________________________________
*Date* *City or other location, and state or country*

**MICHAEL A SHABSELS** individually and on behalf of 1000 ACRES HOLDINGS LLC, and 1101 EAST GLENDALE BOULEVARD REAL ESTATE LLC, and 1101 EAST GLENDALE BOULEVARD LEASING LLC, and 11200 WEST FLORISSANT AVENUE LEASING LLC, and 11200 WEST FLORISSANT AVE REALTY LLC, and 1133 NORTHWEST L STREET LEASING LLC, and 1133 NORTHWEST L STREET REAL ESTATE, and 1135 EAST CHOCOLATE AVENUE LEASING LLC, and 1135 EAST CHOCOLATE AVENUE REAL ESTATE LLC, and 12 CAMBRIDGE DRIVE LEASING LLC, and 12 CAMBRIDGE DRIVE REALTY LLC, and 1323 AUGUSTA WEST PARKWAY LEASING LLC, and 1323 AUGUSTA WEST PARKWAY REAL ESTATE LLC, and 1401 US HIGHWAY 498 REAL ESTATE LLC, and 149 EMERALD STREET LEASING LLC, and 149 EMERALD STREET REAL ESTATE LLC, and 1600 EASTCHASE PARKWAY LEASING LLC, and 1600 EASTCHASE PARKWAY REAL ESTATE LLC, and 1750 WELLS REAL ESTATE LLC, and 1800 & 4215 OKLAHOMA REALTY LLC, and 1912 MEMORIAL DRIVE REAL ESTATE LLC, and 194 WASHINGTON AVE. REAL ESTATE LLC, and 194 WASHINGTON AVENUE LEASING LLC, and 200 GREAT POND DRIVE LEASING LLC, and 200 GREAT POND DRIVE REAL ESTATE LLC, and 201 CENTRE DRIVE LEASING LLC, and 201 CENTRE DRIVE REAL ESTATE LLC, and 2195 HARLEM ROAD LEASING LLC, and 2195 HARLEM ROAD REAL ESTATE LLC, and 2203 GRAND CANAL BOULEVARD LEASING LLC, and 2203 GRAND CANAL BOULEVARD REAL ESTATE LLC, and 2302 WINDSONG DRIVE LEASING LLC, and 2434 SOUTH INTERSTATE 35E LEASING LLC, and 2434 SOUTH INTERSTATE 35E REAL ESTATE LLC, and 250 PROGRESSIVE LEASING LLC, and 250 PROGRESSIVE REAL ESTATE LLC, and 2547 BRINDLE DRIVE LEASING LLC, and 2547 BRINDLE DRIVE REAL ESTATE LLC, and 2974 COPPERCREEK ROAD LEASING LLC, and 2974 COPPERCREEK ROAD REAL ESTATE LLC, and 3385 NEWMARK DRIVE LLC, and 3413 TITTABAWASSEE ROAD LEASING LLC, and 3413 TITTABAWASSEE ROAD REAL ESTATE LLC, and 348 MORRIS AVENUE REAL ESTATE LLC, and 400 GREENS ROAD LEASING LLC, and 400 GREENS ROAD REAL ESTATE LLC, and 4328 BAY ROAD REAL ESTATE LLC, and 4328 BAY ROAD LEASING LLC, and 44 SOUTHPOINT DRIVE LEASING LLC, and 44 SOUTHPOINT DRIVE REAL ESTATE LLC, and 45 COMMERCE DRIVE LEASING LLC, and 45 COMMERCE DRIVE REAL ESTATE LLC, and 4650 WESTWAY PARK BOULEVARD LEASING LLC, and 4650 WESTWAY PARK BOULEVARD REAL ESTATE LLC, and 4800 USH 280 LEASING LLC, and 4800 USH 280 REAL ESTATE LLC, and 55 MERLINO DRIVE LEASING LLC, and 55 MERLINO DRIVE REAL ESTATE LLC, and 5707 MACCORCKLE AVENUE LEASING LLC, and 5707 MACCORKLE

AVENUE REAL ESTATE LLC, and 635 GRAVOIS REAL ESTATE LLC, and 635 GRAVOIS ROAD LEASING LLC, and 7335 GLADIOLUS LLC, and 7650 FM 78 LEASING LLC, and 7650 FM 78 REAL ESTATE LLC, and 771 CORPORATE DRIVE LEASING LLC, and 771 CORPORATE DRIVE REAL ESTATE LLC, and 8014 BAYBERRY ROAD REAL ESTATE LLC, and 830 COUNTY ROAD 64 LEASING LLC, and 830 COUNTY ROAD 64 REAL ESTATE LLC, and 9 FARM SPRING LEASING LLC, and 9 FARM SPRING REAL ESTATE LLC, and 90 PLEASANT VALLEY STREET LEASING LLC, and 90 PLEASANT VALLEY STREET REAL ESTATE LLC, and ACHIM LANDCO LLC, and ACHIM OPERATINGCO LLC, and BAHS HOLDINGS LLC, and BAHS OPERATING INC, and BANNER LANDCO LLC, and BANNER OPERATINGCO LLC, and BAYBERRY WELLS LLC LEASING LLC, and BELGRADE LAKES SUMMER CAMP LLC, and BLUESTAR LANDCO LLC, and BLUESTAR OPERATINGCO LLC, and CAMP MED-O-LARK INC, and CHATEAUGAY CAMPCO LLC, and CHATEAUGAY LANDCO LLC, and CLUB GETAWAY LANDCO LLC, and CLUB GETAWAY OPERATINGCO LLC, and COUNTRY ROADS LANDCO LLC, and COUNTRY ROADS OPERATINGCO LLC, and DAMIS HOLDINGS LLC, and EAGLE'S LANDING DAY CAMP LLC, and EAST HARTFORD PROPERTIES LEASING LLC, and EAST HARTFORD PROPERTIES REAL ESTATE LLC, and FAIRPLAIN PLAZA LEASING LLC, and FAIRPLAIN PLAZA REAL ESTATE LLC, and GREEN LANE LANDCO LLC, and GREEN LANE OPERATINGCO LLC, and GREENVILLELAND LLC, and IAFALANDCO LLC, and IAFAOPERATINGCO LLC, and ISLAND LAKE CAMPCO LLC, and ISLAND LAKE LANDCO LLC, and KIWI LANDCO LLC, and KIWI OPERATINGCO LLC, and LAVCO LLC, and LAVLAND LLC, and MAINE WEKEELA CO LLC, and MALKA OPERATINGCO LLC, and MATTESON CENTER LEASING LLC, and MATTESON CENTER REAL ESTATE LLC, and MEADOWBROOK LANDCO LLC, and MEADOWBROOK OPERATINGCO LLC, and MESORAHCO LLC, and MESORAHLAND LLC, and MILL ROAD LOANDCO LLC, and MOGENAVCO LLC, and MOGENAVLAND LLC, and MOHAWK COUNTRY HOME SCHOOL INC, and MOHAWKCAMPCO LLC, and MOHAWKLAND LLC, and OKLAHOMA WILSHIRE LOFTS LEASING LLC, and OKLAHOMA WILSHIRE LOFTS REAL ESTATE LLC, and PINE FOREST CAMPCO LLC, and PINE FOREST LANDCO LLC, and POLAND LANDCO LLC DBA CAMP NORTH STAR, and POLAND LANDCO LLC, and RDM CAMPS LLC, and ROCKING HORSE RANCH LANDCO LLC, and ROCKING HORSE RANCH OPERATINGCO LLC, and ROLLING HILLS LANDCO LLC, and ROLLING HILLS OPERATINGCO LLC, and SIMAD HOLDINGS LLC, and SHAB HOLDINGS LLC, and SHAB OPERATING INC, and SOUTH LOOP WEST LEASING LLC, and SOUTH LOOP WEST REAL ESTATE LLC, and SPLASHDOWN BEACH LANDCO LLC, and SPLASHDOWN BEACH OPERATINGCO LLC, and STONY CREEK OPERATING CO LLC, and SUMMIT CAMP LLC, and TURNPIKE ROAD HOLDINGS LLC, and WASHINGTON LAKE LLC, and WAUKEELA LANDCO LLC, and WAUKEELA OPERATINGCO LLC, and WEKEELAND LLC, and WILLOW LAKE DAY CAMP LLC, and WILLOW LAKE LAND CORP, and WILLOW LAKE LAND CORP, and WM CAMP LLC, and WM LAND LLC, and WOODLANDS EAGLE TIMBER LEASING LLC, and WOODLANDS EAGLE TIMBER REAL ESTATE LLC

**VERIFICATION**

STATE OF )

:ss

COUNTY OF )

On this day of , , before me,

a undersigned notary, personally appeared individually and on behalf of who proved on the basis of satisfactory evidence to be the person whose name is subscribed to this instrument and acknowledged (he/she/they) executed the same.

Witness my hand and official seal.

(Notary Signature) (Seal)

Valley

Valley is committed to giving people and businesses the power to succeed. For over 90 years our customers have trusted us with their most important investments and we have worked hard to earn their confidence every day. When originating an ACH or Wire Transfer to a Valley customer, our process is simple and easy; we work hard so you don't have to. Below are the simple requirements to originate an ACH or Wire Transfer to our valued customer.

**ACH and/or Wire Transfer Final Credit:**
**Valley Customer Account Number:** 7609499506
**Valley Customer Name:**Funders West
**Valley Customer Address:**3323 NE 163rd ST, Suit 401 N Miami Beach, FL 33160

**ACH Origination Information:**

Routing/ABA# 021201383
Valley National Bank
1455 Valley Road
Wayne, NJ 07470

**Wire Transfer Origination Information: (For USD wires, use either ABA # OR SWIFT code. Do not use both.)**

**For Fedwire Transactions:**

| Currency | Benef c ary Bank: |
|---|---|
| US Do ars (USD) | ABA/ ROUTING # 021201383<br>Va ey Nat ona Bank<br>1455 Va ey Rd.<br>Wayne, NJ 07470 |

**For SWIFT Transactions:**

| Currency | Correspondent Bank Name & BIC / SWIFT Code | For Further Cred t to Benef c ary Bank |
|---|---|---|
| US Do ars (USD) | Deutsche Bank Trust Co. Amer cas BIC/SWIFT Code: BKTRUS33 | Va ey Nat ona Bank BIC/SWIFT Code: MBNYUS33 |
| OR | We s Fargo Bank BIC/SWIFT Code: PNBPUS3NNYC | Va ey Nat ona Bank BIC/SWIFT Code: MBNYUS33 |
| OR | JP Morgan Chase Bank BIC/SWIFT Code: CHASUS33 | Va ey Nat ona Bank BIC/SWIFT Code: MBNYUS33 |
| Euro (EUR) | Deutsche Bank AG, Frankfurt BIC/SWIFT Code: DEUTDEFF | Va ey Nat ona Bank BIC/SWIFT Code: MBNYUS33 |
| Great Br t sh Pounds (GBP) | Deutsche Bank AG, London BIC/SWIFT Code: DEUTGB2L | Va ey Nat ona Bank BIC/SWIFT Code: MBNYUS33 |
| Sw ss Francs (CHF) | Deutsche Bank A, Frankfurt BIC/SWIFT Code: DEUTDEFF | Va ey Nat ona Bank BIC/SWIFT Code: MBNYUS33 |
| Canad an Do ars (CAD) | Roya Bank of Canada, Toronto BIC/SWIFT Code: ROYCCAT2 | Va ey Nat ona Bank BIC/SWIFT Code: MBNYUS33 |

800.522.4100
1455 Va ey Road
Wayne, NJ 07470
va ey.com

© 2022 Va ey Nat ona Bank Member FD C Equa Opportun ty Lender A R ghts Reserved

signNow

## Document History

SignNow E Signature Audit Log

All dates expressed in MM/DD/YYYY (US)

**Document name:** Funders West Loan Contract - ISLAND LAKE CAMPCO LLC
**Document created:** 05/27/2026 18:18:09
**Document pages:** 103
**Document ID:** 1c52189176ce4b18b4eda49a537e2dc5c2bb52a2
**Document Sent:** 05/27/2026 20:08:58 UTC
**Document Status:** S gned
05/27/2026 22:15:47UTC

---

**Sender:** contracts@fundersapp.com
**Signers:** dshabse s@gma .com, mshabse s@gma .com
**CC:** jav er@fundersapp.com, p.vega@fundersapp.com, mark@fundersapp.com

| Client | Event | By | Server Time | Client Time | IP Address |
|---|---|---|---|---|---|
| SignNow Web Application | Uploaded the Document | contracts@fundersapp com | 05/2 /2026 18 18 09 pm UTC | 05/2 /2026 18 1 49 pm UTC | 180 190 243 4 |
| SignNow Web Application | Viewed the Document | contracts@fundersapp com | 05/2 /2026 18 18 19 pm UTC | 05/2 /2026 18 18 1 pm UTC | 180 190 243 4 |
| SignNow Web Application | Document Saved | contracts@fundersapp com | 05/2 /2026 18 46 22 pm UTC | 05/2 /2026 18 46 05 pm UTC | 180 190 243 4 |
| SignNow Web Application | Viewed the Document | contracts@fundersapp com | 05/2 /2026 18 4 45 pm UTC | 05/2 /2026 18 4 44 pm UTC | 180 190 243 4 |
| SignNow Web Application | Document Saved | contracts@fundersapp com | 05/2 /2026 18 51 45 pm UTC | 05/2 /2026 18 51 32 pm UTC | 180 190 243 4 |
| SignNow Web Application | Invite Sent to dshabsels@gmail com, mshabsels@gmail com | contracts@fundersapp com | 05/2 /2026 18 52 40 pm UTC | 05/2 /2026 18 52 32 pm UTC | 180 190 243 4 |
| SignNow Web Application | Document Downloaded | contracts@fundersapp com | 05/2 /2026 18 53 29 pm UTC | 05/2 /2026 18 52 51 pm UTC | 180 190 243 4 |
| SignNow Web Application | Viewed the Document | [redacted] | 05/2 /2026 19 22 5 pm UTC | 05/2 /2026 19 22 56 pm UTC | 38 96 1 1 82 |
| SignNow Web Application | Viewed the Document | [redacted] | 05/2 /2026 19 24 41 pm UTC | 05/2 /2026 19 24 41 pm UTC | 38 96 1 1 82 |
| SignNow Web Application | Document Downloaded | [redacted] | 05/2 /2026 19 25 36 pm UTC | 05/2 /2026 19 24 51 pm UTC | 38 96 1 1 82 |
| SignNow Web Application | Viewed the Document | [redacted] | 05/2 /2026 19 44 5 pm UTC | 05/2 /2026 19 44 55 pm UTC | 32 218 122 195 |
| SignNow Web Application | Document Downloaded | [redacted] | 05/2 /2026 19 45 08 pm UTC | 05/2 /2026 19 45 04 pm UTC | 32 218 122 195 |
| SignNow Web Application | Invite Canceled for dshabsels@gmail com, mshabsels@gmail com | contracts@fundersapp com | 05/2 /2026 20 06 15 pm UTC | 05/2 /2026 20 06 10 pm UTC | 180 190 243 4 |
| SignNow Web Application | Viewed the Document | contracts@fundersapp com | 05/2 /2026 20 06 1 pm UTC | 05/2 /2026 20 06 55 pm UTC | 180 190 243 4 |
| SignNow Web Application | Document Saved | contracts@fundersapp com | 05/2 /2026 20 0 58 pm UTC | 05/2 /2026 20 0 39 pm UTC | 180 190 243 4 |
| SignNow Web Application | Invite Sent to dshabsels@gmail com, mshabsels@gmail com | contracts@fundersapp com | 05/2 /2026 20 09 06 pm UTC | 05/2 /2026 20 08 56 pm UTC | 180 190 243 4 |
| SignNow Web Application | Viewed the Document | [redacted] | 05/2 /2026 20 34 13 pm UTC | 05/2 /2026 20 34 11 pm UTC | 32 218 122 195 |
| SignNow Web Application | Document Downloaded | [redacted] | 05/2 /2026 20 36 08 pm UTC | 05/2 /2026 20 34 1 pm UTC | 32 218 122 195 |
| SignNow Web Application | Viewed the Document | [redacted] | 05/2 /2026 20 36 09 pm UTC | 05/2 /2026 20 36 0 pm UTC | 32 218 122 195 |
| SignNow Web Application | Viewed the Document | [redacted] | 05/2 /2026 20 54 35 pm UTC | 05/2 /2026 20 54 35 pm UTC | 32 218 122 195 |
| SignNow Web Application | Unfinished Document | [redacted] | 05/2 /2026 20 54 4 pm UTC | 05/2 /2026 20 54 45 pm UTC | 32 218 122 195 |
| SignNow Web Application | Unfinished Document | [redacted] | 05/2 /2026 20 54 54 pm UTC | 05/2 /2026 20 54 52 pm UTC | 32 218 122 195 |
| SignNow Web Application | Unfinished Document | [redacted] | 05/2 /2026 20 55 01 pm UTC | 05/2 /2026 20 54 59 pm UTC | 32 218 122 195 |
| SignNow Web Application | Unfinished Document | [redacted] | 05/2 /2026 20 55 08 pm UTC | 05/2 /2026 20 55 0 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 14 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 14 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 14 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 14 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 14 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 14 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 14 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 14 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 14 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 14 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 14 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 14 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 14 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 14 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 14 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 14 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 14 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |

| | | | | | |
|---|---|---|---|---|---|
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 14 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 14 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 14 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 14 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 14 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 14 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 14 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 14 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 14 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 14 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 14 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 14 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 14 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 14 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 14 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 14 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 15 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Document Saved | [redacted] | 05/2 /2026 20 55 15 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 15 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 15 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 15 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 15 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 15 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 15 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 15 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 15 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 15 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 15 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 15 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 15 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 15 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 15 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 15 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 15 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 15 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 15 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 15 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 15 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 15 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 15 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 15 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 15 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 15 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 15 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 15 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 15 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 15 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 15 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 15 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 15 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 20 55 15 pm UTC | 05/2 /2026 20 55 10 pm UTC | 32 218 122 195 |
| SignNow Web Application | Document Downloaded | [redacted] | 05/2 /2026 20 55 36 pm UTC | 05/2 /2026 20 55 30 pm UTC | 32 218 122 195 |
| SignNow Web Application | Resent invite for the Document | [redacted] | 05/2 /2026 21 34 5 pm UTC | 05/2 /2026 21 34 56 pm UTC | 180 190 243 4 |
| SignNow Web Application | Viewed the Document | [redacted] | 05/2 /2026 21 54 46 pm UTC | 05/2 /2026 21 54 46 pm UTC | 32 218 122 195 |
| SignNow Web Application | Unfinished Document | [redacted] | 05/2 /2026 21 55 08 pm UTC | 05/2 /2026 21 55 0 pm UTC | 32 218 122 195 |
| SignNow Web Application | Viewed the Document | [redacted] | 05/2 /2026 22 01 25 pm UTC | 05/2 /2026 22 01 24 pm UTC | 180 190 243 4 |
| SignNow Web Application | Unfinished Document | [redacted] | 05/2 /2026 22 15 08 pm UTC | 05/2 /2026 22 15 03 pm UTC | 32 218 122 195 |
| SignNow Web Application | Unfinished Document | [redacted] | 05/2 /2026 22 15 12 pm UTC | 05/2 /2026 22 15 11 pm UTC | 32 218 122 195 |
| SignNow Web Application | Unfinished Document | [redacted] | 05/2 /2026 22 15 18 pm UTC | 05/2 /2026 22 15 1 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 40 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 40 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 40 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 40 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 40 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 40 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 40 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 40 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 40 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 40 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |

| | | | | | |
|---|---|---|---|---|---|
| SignNow Web Application | Signed the Document | [redacted] | [illegible] | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 40 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 40 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 40 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 40 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 40 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 40 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 40 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 40 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 40 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 40 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 40 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 40 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 40 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 40 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 40 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 40 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 40 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 40 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 40 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 40 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 40 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 40 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 40 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 40 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 40 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 40 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 40 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 40 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 40 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 40 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 40 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 40 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 40 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 41 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 41 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 41 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 41 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 41 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 41 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 41 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 41 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 41 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 41 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 41 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 41 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 41 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 41 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 41 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 41 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 41 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 41 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 41 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 41 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 41 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 41 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 41 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 41 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 41 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 41 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 41 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 41 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 41 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 41 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 41 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 41 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 41 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 41 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 41 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |

| | | | | | |
|---|---|---|---|---|---|
| SignNow Web Application | Signed the Document | [redacted] | [illegible] | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 41 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 41 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 41 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 41 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 41 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 41 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 41 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 41 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 41 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 41 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 41 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 41 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 41 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 41 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 41 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 41 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 41 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 41 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 41 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |

| | | | | | |
|---|---|---|---|---|---|
| SignNow Web Application | Signed the Document | [redacted] | [illegible] | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 42 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 43 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |

| | | | | | |
|---|---|---|---|---|---|
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 44 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 45 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 45 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 45 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 45 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 45 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 45 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 45 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 45 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 45 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 45 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 45 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 45 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 45 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 45 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 45 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 45 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 45 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |

| | | | | | |
|---|---|---|---|---|---|
| SignNow Web Application | Signed the Document | [redacted] | [illegible] | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 45 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 45 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 45 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 45 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 45 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 45 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 45 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 45 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 45 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 45 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 45 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 45 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 45 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 45 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 45 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 45 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 45 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 45 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 45 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 45 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 45 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 45 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 45 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 45 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 45 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 45 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 45 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 45 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 45 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 45 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 45 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 45 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 45 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 45 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 46 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 46 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 46 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 46 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 46 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 46 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 46 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Added a Text | [redacted] | 05/2 /2026 22 15 46 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 46 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 46 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 46 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 46 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 46 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 46 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 46 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 46 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 46 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 46 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 46 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 46 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 46 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 46 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 46 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 46 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 46 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 46 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 46 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 46 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 46 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 46 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 46 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 46 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 46 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 46 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |

| | | | | | |
|---|---|---|---|---|---|
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 46 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 46 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 46 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 46 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 46 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Added a Text | [redacted] | 05/2 /2026 22 15 46 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 46 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 46 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 46 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 46 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 46 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 46 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 46 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 46 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 46 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 46 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 46 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signed the Document | [redacted] | 05/2 /2026 22 15 46 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Document Saved | [redacted] | 05/2 /2026 22 15 4 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signer mshabsels@gmail com received a signed document copy | [redacted] | 05/2 /2026 22 16 0 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Sender contracts@fundersapp com received a signed document copy | contracts@fundersapp com | 05/2 /2026 22 16 0 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| SignNow Web Application | Signer dshabsels@gmail com received a signed document copy | [redacted]m | 05/2 /2026 22 16 0 pm UTC | 05/2 /2026 22 15 25 pm UTC | 32 218 122 195 |
| FundersApp | Document Downloaded | contracts@fundersapp com | 05/2 /2026 22 16 0 pm UTC | | 129 213 148 220 |
| SignNow Web Application | Document Downloaded | shabsels@gmail com | 05/2 /2026 22 16 24 pm UTC | 05/2 /2026 22 15 52 pm UTC | 32 218 122 195 |

# EXHIBIT C

# ISLAND LAKE CAMPCO LLC

## 51020

## Financials

| | |
|---|---|
| Purchase Price | $2,000,000.00 |
| Receivables Purchased | $2,998,000.00 |
| Cleared Remittances | $749,500.00 |
| Balance | $2,248,500.00 |
| NSF Fees | $35.00 |
| Default Percentage | 25% |
| Default Fee | $562,125.00 |
| **TOTAL OUTSTANDING** | **$2,810,660.00** |

`

| Amount | Due On | Remitted On | Notes |
|---|---|---|---|
| -$93,687.50 | 06/09/2026 | 06/09/2026 | R29 |
| $93,687.50 | 06/02/2026 | | |
| $93,687.50 | 05/26/2026 | | |
| $93,687.50 | 05/19/2026 | | |
| $93,687.50 | 05/12/2026 | | |
| $93,687.50 | 05/05/2026 | | |
| $93,687.50 | 04/28/2026 | | |
| $93,687.50 | 04/21/2026 | | |
| $93,687.50 | 04/14/2026 | | |

| Amount | Effective Entry Date | Date Returi | Return Coc | Payment Note |
|---|---|---|---|---|
| ($93,687.50) | 6/9/2026 | 6/9/2026 | R29 | NA |
| $93,687.50 | 6/2/2026 | | | NA |
| $93,687.50 | 5/26/2026 | | | NA |
| $93,687.50 | 5/19/2026 | | | NA |
| $93,687.50 | 5/12/2026 | | | NA |
| $93,687.50 | 5/5/2026 | | | NA |
| $93,687.50 | 4/28/2026 | | | NA |
| $93,687.50 | 4/21/2026 | | | NA |
| $93,687.50 | 4/14/2026 | | | NA |

**ISLAND LAKE CAMPCO LLC**

**53066**

## Financials

| | |
|---|---|
| Purchase Price | $4,500,000.00 |
| Receivables Purchased | $6,750,000.00 |
| Cleared Remittances | $0.00 |
| Balance | $6,750,000.00 |
| NSF Fees | $0.00 |
| Default Percentage | 25% |
| Default Fee | $1,687,500.00 |
| **TOTAL OUTSTANDING** | **$8,437,500.00** |

`

| Amount | Due On | Remitted On | Notes |
|---|---|---|---|