**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**WIGGIN AND DANA LLP**
Susan M. Kennedy
50 S. 16th Street, Suite 2625
Philadelphia, Pennsylvania 19102
(215) 988-8320
skennedy@wiggin.com

Tamara Van Heel (admitted *pro hac vice*)
251 Royal Palm Way, Suite 601
Palm Beach, Florida 33480
(561) 910-6886
tvanheel@wiggin.com

*Counsel for creditors Mega Funworks, Inc., Tee Bar Corp. and Turk Real Estate Holdings, LLC*

| | |
|---|---|
| In re:<br><br>MICHAEL AARON SHABSELS,<br><br>Debtor. | Chapter 11<br><br>Case No. 26-16529-CMG |

**STATEMENT OF CREDITORS MEGA FUNWORKS, INC., TEE BAR CORP., AND TURK REAL ESTATE HOLDINGS, LLC IN SUPPORT OF CONVERSION TO CHAPTER 7 AND IN OPPOSITION TO DISMISSAL**

Creditors Mega Funworks, Inc., Tee Bar Corp., and Turk Real Estate Holdings, LLC (collectively, the "Creditors"), by and through their undersigned counsel, and as requested by the Court at the August 18, 2026 continued hearing on the Court's Order to Show Cause (the "Hearing"), respectfully submit this statement to memorialize their positions raised on the record at the Hearing in opposition to dismissal and in support of conversion of the above-captioned chapter 11 case to chapter 7.

## RELEVANT BACKGROUND

1. On June 4, 2026 (the "Petition Date"), Michael A. Shabsels (the "Debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court [Dkt. No 1].

2. On June 8, 2026, the Court entered an Order to Show Cause [Dkt. No. 5] ("OSC") why this case should not be dismissed due to the Debtor's failure to file bankruptcy schedules and a statement of financial affairs (collectively, "Schedules").

3. Debtor's prior counsel withdrew its appearance on behalf of the Debtor on June 30, 2026 [Dkt. No. 75], and the Debtor has since been proceeding *pro se*.

4. The OSC hearing was continued multiple times—from June 30, to July 14, to August 4, and finally to August 18, 2026—to give the Debtor additional time to retain new counsel and file his Schedules.

5. According to the claims register summary, over 200 claims have been filed against the Debtor to date, asserting over $900 million in total aggregate claims. The Creditors are the prior owners of the Rocking Horse Ranch Resort and Splashdown Beach Water Park located in New York, which are now debtors in the related chapter 11 cases of *In re DAMIS Holdings LLC, et al.*, Case No. 26-16439-CMG. The Creditors hold aggregate claims of no less than $8 million against the Debtor pursuant to certain promissory notes that Debtor and his brother, David A. Shabsels, executed in their individual capacities in connection with the purchase and sale of the ranch and waterpark businesses. *See* Claim Nos. 40 and 42.

6. At the August 4th continued OSC hearing, the Debtor indicated that he had not retained new counsel and believed his chapter 11 case should be dismissed. The Debtor argued that dismissal is appropriate because, among other things, he claims to have de minimis assets to repay the significant claims asserted against him, and creditors cannot draw blood from a stone. The Debtor further represented that he is rapidly expending the last money in his account, and that he has no income, no prospect of income, and no ability to fund a plan or reorganization, thus rendering this proceeding pointless. If the Court would not dismiss the case, the Debtor indicated

that he would continue to represent himself *pro se* in chapter 11 and hopefully find an attorney to eventually represent him.

7. At the August 18th continued OSC Hearing, the Debtor once again asked the Court to dismiss his chapter 11 case for similar reasons. Both the U.S. Trustee ("UST") and the Creditors opposed dismissal for the reasons stated on the record at the Hearing. The Creditors further argued that cause exists to convert this case to chapter 7 under section 1112(b) of the Bankruptcy Code, and that conversion rather than dismissal was in the best interest of creditors and the estate. The Creditors requested that the Court set a firm deadline for the Debtor to file his Schedules and if the Debtor did not comply, that the case be immediately converted to chapter 7.

8. Ultimately, the Court vacated its OSC, declined to dismiss this case, and ordered the Debtor to file Schedules by September 1, 2026. The Court has also scheduled a hearing on this date to determine the status of filing of the Schedules and the production of documentary proofs requested by the UST at the Hearing, and has indicated that it "will consider conversion of the case to Chapter 7 in the event no progress is made."

9. The Court further requested that the Creditors submit a writing on the record memorializing their positions taken at the Hearing. The Creditors file this Statement to reflect and elaborate on their arguments in support of conversion and in opposition to dismissal as raised at the Hearing.

**CREDITORS' STATEMENT IN SUPPORT OF CONVERSION TO CHAPTER 7 AND IN OPPOSITION OF DISMISSAL**

10. Section 1112(b)(1) of the Bankruptcy Code provides that "on request of a party in interest, and after notice and a hearing, the court ***shall*** convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, unless the court determines that the appointment under section 1104(a)

of a trustee or an examiner is in the best interests of creditors and the estate." 11 U.S.C. § 1112(b)(1) (emphasis added). Ample cause exists to require conversion of this case to a case under chapter 7, and conversion, rather than dismissal or appointment of a chapter 11 trustee or examiner, is in the best interests of creditors and the estate.

**I. Cause Exists to Convert this Case to Chapter 7**

11. Section 1112(b)(4) lists various examples of "cause" to support conversion, including but not limited to: "(A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation", "(F) unexcused failure to satisfy timely any filing or reporting requirement established by the Bankruptcy Code or Rules", and "(J) failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court". 11 U.S.C. § 1112(b)(4). The factors listed in section 1112(b) are non-exhaustive, and a bankruptcy court has wide discretion to use its equitable powers to make an appropriate disposition of the case. *In re Am. Cap. Equip., LLC*, 688 F.3d 145, 163 (3d Cir. 2012). Various forms of cause exist here that require conversion of this case to chapter 7.

12. First, cause exists under section 1112(b)(4)(A) ("substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation") to support conversion. The Debtor admitted at the August 4th continued OSC hearing that since filing this case in early June, he is rapidly expending his last funds, which demonstrates a continuing loss to and diminution of the estate. He also conceded that he does not currently have any income, does not expect to have any income to fund a plan, and that there is no likelihood of reorganization. Where a plan cannot be funded and liquidation is the only viable path forward there is no "reasonable likelihood of rehabilitation" to justify continuation in chapter 11. *See In re Wen-Kev Mgmt., Inc.*, No. 13-36463 GD, 2014 WL 7370050, at *4 (D.N.J. Dec. 29, 2014) (finding that

rehabilitation in this context "signifies that the debtor will be reestablished on a secured financial basis, which implies establishing a cash flow from which its current obligations can be met", and affirming conversion to chapter 7 where debtors did not seek to reorganize, maintained no hope for a financially sound rehabilitation, and where liquidation was only viable path forward).

13. For these reasons, cause similarly exists under section 1112(b)(4)(J) ("failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court"), because it is highly unlikely that the Debtor will ever be able to confirm a plan within the timeframes required under the Bankruptcy Code. Allowing this case to remain in chapter 11, as the Debtor has indicated is his secondary preference to dismissal, is not a viable long-term solution where there is no possibility of an effective reorganization. *See In re Am. Cap. Equip., LLC*, 688 F.3d at 163 (affirming conversion of chapter 11 case to chapter 7 where "no future plan would be able to be effectuated under Chapter 11" and "neither creditors nor the estate could conceivably benefit if a Chapter 11 plan could never be effectuated"); *Johnston v. Jem Dev. Co. (In re Johnston)*, 149 B.R. 158, 162 (B.A.P. 9th Cir. 1992) (affirming bankruptcy court's conversion of case to chapter 7 less than four months after chapter 11 petition was filed, and recognizing that "where there is no reasonable possibility of an effective reorganization, the bankruptcy court is not compelled to wait a certain period of time, to the detriment of creditors, before ordering conversion of the case"). Nor would allowing the Debtor to remain in chapter 11 serve the basic purposes of chapter 11, which are to preserve going concerns and maximize property available to satisfy creditors.

14. Moreover, cause exists under section 1112(b)(4)(F) ("unexcused failure to satisfy timely any filing or reporting requirement established by the Bankruptcy Code or Rules") because the Debtor has continuously failed to file Schedules as required by Fed. R. Bankr. P. 1007, despite

various extensions provided by the Court. The Debtor has indicated that his repeated failure to file Schedules has been due in part to his inability to secure replacement counsel, which he attributes in part to not wanting to pay an attorney retainer, despite having paid his brother's, David Shabsels', bankruptcy attorneys' fees. *See* Disclosure of Compensation of Attorney for Debtor B2030 (Form 2030), *In re David Arthur Shasbels*, Case No. 26-26530-CMG [Dkt. No 107] at p. 116 (indicating that Michael Shabsels paid David Shabsels' counsel $120,234.26). The Debtor has been given numerous opportunities to secure replacement counsel and his repeated failure to do so should not excuse him from timely filing Schedules, which has prevented this case from moving forward and has deprived creditors of information and transparency required by the Bankruptcy Code.

15. As counsel for the Creditors indicated at the Hearing, the Debtor's ongoing failure to file Schedules and continued postponement of the 341 meeting of creditors has been prejudicial to the Creditors by preventing them from obtaining information from the Debtor regarding his lack of ownership interests in the Creditor entities Tee Bar Corp. and Mega Funworks, Inc. As noted at the Hearing, the Debtor appears to have signed various agreements purportedly on behalf of these Creditor entities without any authority to do so, which has resulted in a lawsuit being filed against Tee Bar Corp. and Mega Funworks, Inc. in the Supreme Court of the State of New York, County of Clinton (*BLOC Funding v. Kiwi Landco LLC et al.*, Index No. 2026-00027402), and the filing of numerous unauthorized UCC financing statements against Tee Bar Corp. and Mega Funworks, Inc. At the Hearing, the Debtor conceded that he did not have any ownership interests in or authority to bind Tee Bar Corp. and Mega Funworks, Inc. and agreed to execute a sworn statement to that effect. On August 25, 2026, the Creditors provided the Debtor with such an

affirmation for execution to assist them in seeking dismissal of the lawsuit and termination of the various unauthorized UCC filings and have requested the Debtor's prompt cooperation.

## II. Conversion to Chapter 7 Is in the Best Interests of Creditors and the Estate

16. As for the second prong of the section 1112(b) inquiry, conversion of this case to chapter 7, rather than dismissal or the appointment of a chapter 11 trustee or examiner, is in the best interests of creditors and the estate. Prompt conversion and appointment of a chapter 7 trustee will finally move this case forward after nearly three months of inactivity, will promote greater transparency into the Debtor's assets and financial affairs, will better preserve and protect estate assets, and will maximize the value of the estate and creditor recoveries.

17. Conversion of this case to chapter 7 will place property of the estate under the supervision and control of a chapter 7 trustee, which will help preserve the estate and prevent any improper post-petition transfers or dissipation of assets. The Debtor has indicated that he is rapidly spending his last funds, and this post-petition spending and diminution of estate property must be monitored and accounted for. Moreover, although the Debtor has represented to the Court that he has no meaningful assets or ability to repay his many creditors, such unsworn allegations should be tested by an independent chapter 7 trustee, who can investigate the Debtor's assets, liabilities, financial affairs, and prepetition activities and transfers to identify all potential sources of recovery for creditors and ensure that turnover or avoidance actions are adequately investigated and pursued.

18. By contrast, dismissal would be contrary to the best interests of creditors and the estate. Upon dismissal, the hundreds of creditors who have filed claims in this case must pursue their claims against the Debtor on a piecemeal basis outside of bankruptcy and would be left to state-law creditor remedies. In bankruptcy, creditors will benefit from the centralized

administration of their claims and the bankruptcy court's oversight, which will promote fairness and equality of distributions among creditors. Creditors will also benefit from the transparency into the Debtor's financial affairs that the bankruptcy process requires, and the enhanced avoidance tools available to a chapter 7 trustee, who will be charged with preserving and maximizing the estate for the benefit of creditors. Alternatively, allowing the Debtor to remain in possession in chapter 11 is not appropriate where, among other things, there is no likelihood of reorganization and where the Debtor is unlikely to pursue avoidance or turnover transactions as vigorously as an independent third-party fiduciary would. Appointment of a chapter 11 trustee or examiner is also not a viable solution given the absence of any likelihood of reorganization and the increased costs attendant to a chapter 11 proceeding.

19. Accordingly, the Creditors respectfully request that the Court convert this case to chapter 7 for the reasons stated on the record at the Hearing and the reasons addressed herein.

**RESERVATION OF RIGHTS**

The Creditors submit this Statement to memorialize their positions taken at the Hearing, as requested by the Court, and reserve all rights to file a motion seeking conversion or any other relief at any point in this proceeding, and to raise further arguments in support of conversion or any other appropriate relief at the September 1, 2026 hearing or otherwise.

[*Signature Page to Follow*]

Dated: August 27, 2026

Respectfully submitted,

**WIGGIN AND DANA LLP**
By: */s/ Susan M. Kennedy*
Susan M. Kennedy
50 S. 16th Street, Suite 2625
Philadelphia, Pennsylvania 19102
(215) 988-8320
skennedy@wiggin.com

Tamara Van Heel (admitted *pro hac vice*)
251 Royal Palm Way, Suite 601
Palm Beach, Florida 33480
(561) 910-6886
tvanheel@wiggin.com

*Counsel for creditors Mega Funworks, Inc., Tee Bar Corp. and Turk Real Estate Holdings, LLC*